**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | : No: **1:05-CR-00264** |
| **v.** | : **CAPITAL § 2555** |
| | : **PROCEEDINGS** |
| **THOMAS MOROCCO HAGER,** | : |
| **Defendant.** | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISQUALIFY JUDGE**

Defendant Thomas Morocco Hager, through undersigned counsel, filed on April 27, 2015, a Motion to Vacate, Set Aside, or Correct Sentence and for a New Trial Pursuant to 28 U.S.C. § 2255 ("the Section 2255 Motion"). That motion includes among its claims numerous factually supported allegations of ineffective assistance by trial counsel in their representation of Mr. Hager in this capital case. The Honorable T.S. Ellis, III, selected and appointed trial counsel and presided over Mr. Hager's trial, which resulted in a sentence of death. At the conclusion of the trial, Judge Ellis made remarks, detailed below, about trial counsel's performance. Those remarks were not made in order to decide any matter pending before the court. Those remarks prejudge significant claims in the Section 2255 Motion. A reasonable lay person, knowing of those remarks, knowing their context, and knowing the claims in Mr. Hager's Section 2255 Motion, would question Judge Ellis's ability to be impartial in proceedings regarding the Section 2255 Motion. That is all that is required for disqualification under 28 U.S.C. § 455(a). And that is why counsel for Mr. Hager have filed a motion to disqualify Judge Ellis. This memorandum is submitted in support of Mr. Hager's motion to disqualify.

**RELEVANT BACKGROUND**

After convicting Mr. Hager of an intentional killing while engaged in a drug conspiracy, the jury returned a penalty verdict of death.  After taking the jury's verdict, the Court chose immediately to impose the death sentence, which the Court described as "not one that I have any difficulty imposing" for "as heinous a crime as I have ever been advised of."  Trial Tr. Vol. 18 35:6-10 (excerpt attached as Exhibit A).  The Court then went on to "say one thing further" of no relevance to the proceedings at hand (which had been completed) but which pronounced an anticipatory judgment on the post-conviction challenge to that verdict and sentence now before the Court.

> And that is, this Court's view—and it's a view which I held before this result, and that is that this defendant has been fully, zealously and effectively represented by Mr. McCarthy and Mr. Kiyonaga.  I want you, Mr. Kiyonaga, Mr. McCarthy, to advise the Court— there were a number of things that were under seal, ex parte, that related to your efforts, which were, in my view prodigious and substantial.  I certainly found no stone unturned.  But it seems to me that those requests and the like ought now to be a part of the public record.  And I'll give you a week to think about that.  *But I'm inclined to put all of that now on the public record, because it may be grist for some future litigation about this case*.  But I wanted to record my unequivocal view that what the two of you did on behalf of Mr. Hager was zealous and effective.

*Id*. at 36:7-37:1 (emphasis added) (excerpt attached as Exhibit A).  In other words, the Court chose explicitly to state a conclusion about the effectiveness of Mr. Hager's representation—a question the Court surely knew would come before it pursuant to 28 U.S.C. § 2255—precisely *because of* the prospect of "future litigation" over that question.  The Court then went on explicitly to link the performance of Mr. Hager's trial counsel to the Court's own ability and judgment:  "I didn't expect any less, because I took great care in deciding whom to appoint to this very, very difficult case, difficult for both sides."  *Id*. at 37:1-3.

**ARGUMENT**

**I.    DISQUALIFICATION IS REQUIRED UNDER THE OBJECTIVE STANDARD OF 28 U.S.C. § 455(A).**

28 U.S.C. § 455(a) applies an objective standard, requiring a federal judge to recuse whenever his "impartiality might reasonably be questioned." *See Liteky v. United States*, 510 U.S. 540, 548 (1994). The purpose of this rule is to ensure "not only actual impartiality but also the appearance of impartiality." *United States v. Carmichael*, 726 F.2d 158, 160 (4th Cir. 1984) (citation omitted). This is an "objective standard," asking "not whether the judge is impartial in fact," but rather "whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances." *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998) (citations omitted). Congress implemented this standard in 1974, "abolish[ing] the rule that courts should resolve close questions of disqualification in favor of a judge's so-called 'duty to sit.'" *Id*. at 286-87 (citation omitted). The rule today, by contrast, is that close questions should be decided in favor of disqualification. *See, e.g.*, *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998); *In re Chevron U.S.A., Inc.*, 121 F.3d 163, 165 (5th Cir. 1997); *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir. 1989).

The Fourth Circuit has emphasized that "the hypothetical reasonable observer is not the judge himself or a judicial colleague but a person outside the judicial system." *DeTemple*, 162 F.3d at 287. Along those lines, it has warned that "[j]udges, accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would." *Id*. Similarly, the Supreme Court has observed "that people who have not

3

served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges," and that the "very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864-65 (1988) (citations omitted).

**A.    The Court's Made an Unnecessary Predetermination of Significant Issues Raised in the Section 2255 Motion.**

In this case, the Court's unnecessary predetermination of an issue—the effectiveness of trial counsel—that was highly likely to come before it in the future meets the standard for disqualification mandated by section 455(a). *First*, the statements were not made in connection with any ruling related to Mr. Hager's trial or sentencing; rather, they were explicitly made in anticipation of future challenges to the verdict and sentence. Thus, their only function was to communicate a predetermination of an issue likely to arise in the future. *Second*, the statements were explicitly oriented towards a public defense of the verdict and sentence; the Court stated that it was inclined to place certain ex parte matters on the public record, suggesting an interest in the favorable (to the verdict and sentence) resolution of "future litigation about this case." *Third*, the Court linked its assessment of counsel's performance to the wisdom of its judgment in making the appointment. *Fourth*, the Court's conclusion that counsel were "zealous and effective" was "unequivocal," reflecting certainty in the absolute correctness of its decision. *Fifth*, the predetermined issue has now come before the Court in the Section 2255 Motion.

**B.    There is No "Extrajudicial Source" Requirement Precluding Recusal Based On an Unnecessary Statement About a Likely Future Ruling.**

The Court's statement at the conclusion of the trial concerned a likely future ruling, not a ruling on a matter then before it. In *Liteky*, the Supreme Court explained that "there is not much" to the "extrajudicial source doctrine." 510 U.S. at 554. Rather than an absolute requirement, "it would be better to speak of the existence of a significant (and often determinative) 'extrajudicial

4

source' factor, than of an 'extrajudicial source' *doctrine*, in recusal jurisprudence." *Id.* at 554-55. Although the Court expected that such cases would be rare, the opinion was explicit that "predispositions developed during the course of a trial" may suffice for recusal. *Id.* at 554. *See Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011) (quoting *Liteky* and noting "the Court was careful to not make the extrajudicial source limitation an ironclad rule" and collecting cases). It follows that opinions about the effectiveness of trial counsel developed through a combination of trial proceedings and judicial oversight of ex parte matters related to trial preparation may also be a basis for recusal if the judge's impartiality "might reasonably be questioned."

Unlike a judicial ruling, which "almost never constitute[s] a valid basis for a bias or partiality motion," the Court's forward-looking comments about Mr. Hager's trial counsel were not "proper grounds for appeal." *Id.* at 575 (citation omitted). The Court's assessment of a future ineffectiveness claim did not, and could not have come before the Fourth Circuit on Mr. Hager's direct appeal. Thus, this is not a case where prejudgment about a future ruling must be inferred from a prior ruling. The only meaning of the statement is a prejudgment of a future ruling. At a minimum, it shows that Mr. Hager does not begin the process on level ground, but rather that he must fight the uphill battle to convince the Court to disavow the assessment it has already pronounced on the public record. That is what it means to reasonably question the Court's impartiality.

C. **A Reasonable Observer Would Interpret the Court's Statements to Reflect a Personal Goal to Prevent a Successful Collateral Attack on the Sentence.**

In context, the Court's statements indicate that the Court's goal was to defend the verdict and sentence against an anticipated collateral attack. In *United States v. Antar*, 53 F.3d 568 (3d Cir. 1995), the Third Circuit ordered recusal of the trial judge on the basis of statements (made at the time of sentencing) that showed that the  trial judge's goal during the trial was to enforce an

order entered in a related civil proceeding.  The court of appeals focused "on the reaction of the reasonable observer" to the judge's words, and concluded that such an observer was entitled to take them at face value as indicating an objective inconsistent with impartiality.  *Id.* at 576.  Just as the judge's embrace of a goal to enforce a civil judgment in *Antar* would lead a reasonable observer to question his impartiality, so too this Court's attempt to weigh in on the viability of a challenge to trial counsel's effectiveness would lead a reasonable observer to question the Court's impartiality in adjudicating just such an ineffectiveness claim.  Similarly, in *In re IBM, Corp.*, 45 F.3d 641, 642-43 (2d Cir. 1995), the Second Circuit ordered the recusal of a judge assigned to oversee an antitrust consent decree in light of his prior criticisms of the Justice Department's dismissal of a separate antitrust case (also assigned to the judge).  Although the court of appeals was "prepared to assume that the Judge's subjective disposition is one of impartiality concerning both IBM and the issue of terminating the decree" in the second case, it concluded that a fully-informed objective observer would nonetheless question the judge's impartiality on the pending issue in light of the earlier statements.  *Id.* at 644.

The objective standard of section 455(a) is satisfied here.  The statute requires disqualification.

## II.   DISQUALIFICATION IS REQUIRED BY THE CONSTITUTION.

As the Supreme Court recently explained in sustaining a disqualification demand in a civil case based on the Due Process Clause, constitutional standards for disqualification also are objective:

> The difficulties of inquiring into actual bias, and the fact that the inquiry is often a private one, simply underscore the need for objective rules.  Otherwise there may be no adequate protection against a judge who simply misreads or misapprehends the real motives at work in deciding the case.  The judge's own inquiry into actual bias, then, is not one that the law can easily superintend or review, though actual bias, if disclosed, no doubt would be

6

> grounds for appropriate relief.  In lieu of exclusive reliance on that personal inquiry, or on appellate review of the judge's determination respecting actual bias, the Due Process Clause has been implemented by objective standards that do not require proof of actual bias.

*Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009) (citations omitted).  Those objective judgments must be based on "a realistic appraisal of psychological tendencies and human weakness," that pose a *risk* "of actual bias or prejudgment."  *Id.* at 883-84 (citation omitted).

For the same reasons as those set forth *supra* in Section I, the Due Process Clause requires disqualification.  The fact that this is a capital case magnifies the importance of impartiality and the appearance of impartiality.  Death is fundamentally different in kind from any other punishment.  *See Furman v. Georgia*, 408 U.S. 238, 286-91 (1972) (Brennan, J., concurring).  Procedural safeguards, which are important in any criminal case, assume even greater significance in capital cases. *See Ring v. Arizona*, 536 U.S. 584, 614 (2002) (Breyer, J., concurring).  One of the most important safeguards in a capital case is the fairness of the fact-finder.  The impartiality of the finder of fact is essential to the protection of the defendant's rights under the Constitution. *See Morgan v. Illinois*, 504 U.S. 719, 726-27 (1992).  Actual impartiality and the appearance of impartiality are essential to the public perception of fairness in capital proceedings.  In the circumstances presented in this case, the Constitution as well as section 455(a), requires disqualification.

Dated: April 28, 2015                    Respectfully submitted,


                                         _____/s/Blair G. Brown_____
                                         Blair G. Brown, Va. Bar No. 29706
                                         ZUCKERMAN SPAEDER LLP
                                         1800 M Street, NW, Suite 1000
                                         Washington, DC 20036
                                         (202) 778-1829 (telephone)
                                         (202) 822-8106 (facsimile)
                                         bbrown@zuckerman.com

                                         *Counsel for Defendant Thomas Morocco Hager*


                                         _____/s/ Julie Brain_____
                                         Julie Brain
                                         916 South 2nd Street
                                         Philadelphia, PA  19147
                                         (267) 639-0417 (telephone)
                                         Juliebrain1@yahoo.com

                                         *Counsel for Defendant Thomas Morocco Hager*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2015, I have caused a copy of the

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISQUALIFY JUDGE** to be served on the following by electronically filing it on the court's

ECF system:

> James L. Trump
> United States Attorney's Office
> Eastern District of Virginia
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> jim.trump@usdoj.gov

> /s/ Blair G. Brown
> Blair G. Brown