UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | **Criminal No. 1:05-cr-00264 (LMB)** |
| v. | : | **Civil Action No. 1:15-cv-00551** |
| | : | |
| THOMAS MOROCCO HAGER, | : | **CAPITAL § 2255 PROCEEDINGS** |
| | : | |
| Defendant. | : | |
| | : | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
### MOTION FOR PARTIAL RECONSIDERATION

On April 27, 2015, Defendant Thomas Morocco Hager, through undersigned counsel, filed a timely Motion to Vacate, Set Aside, or Correct Sentence and for a New Trial Pursuant to 28 U.S.C. § 2255 (the "Section 2255 Motion"). ECF No. 529. Before the Court-imposed deadline for its response to the Section 2255 Motion, the government moved for extensive discovery from trial counsel and habeas counsel, including the production by habeas counsel of all portions of trial counsel's files as to which the attorney-client privilege or other claim of confidentiality has been waived, arguing that it could not respond adequately to Mr. Hager's claims without access to this material (the "Motion"). *See* Motion, ECF No. 541. On August 6, 2015, this Court granted the Motion and ordered, *inter alia*, that "habeas counsel provide the government forthwith with all files obtained from trial counsel" (the "Order"). *See* Order 1, ECF No. 547.[1]

---

[1] Over our objection, the Order also required habeas counsel to provide the government with an appendix and documentation of all allegations contained in the Section 2255 Motion by October 16, 2015, and the Clerk to provide the government with trial counsel's under seal *ex parte* filings and the government and habeas counsel with trial counsel's CJA vouchers and records relating to their representation of Mr. Hager. Order 1. Mr. Hager is not, in this Motion, seeking reconsideration of these other portions of the Order.

Mr. Hager respectfully submits that the Court erred in requiring the production of trial counsel's files in their entirety. The Order is based on the erroneous finding that Mr. Hager, by asserting ineffective assistance of counsel claims in the Section 2255 Motion, categorically waived his attorney-client privilege, attorney work product protection, and right to confidentiality as to each and every aspect of his prior representation. For the reasons stated below, the Court should vacate the portion of the Order directing the production of all of trial counsel's files and enter an amended order that limits the scope of the waiver to documents relevant to Mr. Hager's ineffective assistance claims as alleged in Parts I-III of the Section 2255 Motion. The amended order should require habeas counsel to conduct a privilege review of the documents they obtained from trial counsel and to produce only those documents that are non-privileged or privileged but within the scope of the waiver engendered by the ineffective assistance claims.

## RELEVANT BACKGROUND

The Section 2255 Motion seeks to vacate Mr. Hager's conviction and sentence of death for the intentional killing of Barbara White while engaged in a drug conspiracy. *See* Section 2255 Motion. The Section 2255 Motion asserts five claims for relief: Mr. Hager's trial counsel rendered constitutionally ineffective assistance at the guilt phase of trial, at the penalty phase with respect to the government's presentation of aggravating evidence, and at the penalty phase with respect to the presentation of mitigating evidence; the government's conduct violated Mr. Hager's right to a fair trial; and Mr. Hager is ineligible for a sentence of death because he is a person with intellectual disability. *Id.* Mr. Hager's ineffective assistance claims, though broadly-captioned, do not challenge every decision that trial counsel made during the guilt and penalty phases of Mr. Hager's trial. For example, the Section 2255 Motion raises no claims

concerning the constitutional effectiveness of trial counsel's performance relating to, among other things:

- Jury selection, including voir dire, the use of and challenges to strikes for cause, and the use of and challenges to peremptory strikes;

- Plea discussions with the government;

- Possible cooperation with the government in an unrelated criminal matter;

- Unadjudicated homicides that were identified in the government's Notice of Intent to Seek a Death Sentence but ultimately not introduced as non-statutory aggravators at trial;

- The use and presentation of expert testimony on subjects other than the government's allegation that the murder caused a grave risk of death to another, certain aspects of the mitigation case, and Mr. Hager's intellectual disability;

- The cross-examination of numerous government witnesses, including, but not limited to, James R. Gogan, Mark A. Garman (at the guilt phase), Frances P. Field, Claudia E. Jones-Hunt, David Jennifer, Jason Shannon, Randy Ryland, Milton White, and Brenda Clarke;

- The non-statutory aggravating factor that Mr. Hager committed the murder of Londell Duvall;

- Testimony from government witnesses concerning weapons found in Mr. Hager's cells at USP Pollock and the Northern Neck Regional Jail; and

- Numerous aspects of trial counsel's pretrial investigation that did not result in the presentation of evidence at trial.

The government's Motion sought a broad array of discovery from both trial counsel and habeas counsel. Among other materials, the government sought the production of all materials in trial counsel's files "relating to the issues raised in the motion on which Hager has waived any privilege or other claim of confidentiality or which are not otherwise subject to a claim of privilege or confidentiality." Motion 4-5. The government argued that the "scope and breadth of [Mr. Hager's] allegations" meant that he had "waived the attorney-client privilege with respect to almost all issues in both the guilt and penalty phases of the trial." *Id.* at 2. Mr. Hager opposed the government's request for these documents on multiple grounds including that the

government's characterization of any purported privilege or confidentiality waiver was "grossly overbroad and flatly inconsistent with the law," and proposed that the parties consult to try to reach an agreement on the scope of any waiver. *See* Opp'n 4, ECF No. 544. Mr. Hager further argued that the government's request for documents generally was overbroad and a fishing expedition, and did not satisfy the "good cause" requirement for discovery in a section 2255 proceeding. *See id.* at 6-7.

The Court held a hearing on the Motion on August 6. Addressing the government's request for trial counsel's files, the Court stated that Mr. Hager's Section 2255 Motion "essentially opened the door to everything [trial counsel] did." Hr'g Tr. 6:10-11, Aug. 6, 2015. The Court noted that in order for the government to have a "fair chance of fully evaluating the universe in which [trial counsel] w[as] functioning," the government needed all of the materials in trial counsel's files to "determine whether the decisions they made were reasonable under the circumstances." *Id.* at 16:20-24. In reaching its decision, the Court remarked that the time that trial counsel spent on issues that Mr. Hager did not raise in the Section 2255 Motion was relevant to "the evaluation of whether their conduct under the *Strickland* standard and the decisions they made as to how to approach the case were reasonable and within the realm of . . . proper professionalism." *Id.* at 7:13-16. The Court then granted the Motion and ordered habeas counsel to produce the documents they had obtained from trial counsel in their entirety. Order 1. By abandoning any requirement that the disclosures be limited to those documents as to which applicable privileges have been waived, the Court's Order is even broader in scope than that which the government sought in its Motion.

## ARGUMENT

I.    **THE ORDER REQUIRING HABEAS COUNSEL TO PRODUCE ALL FILES OBTAINED FROM TRIAL COUNSEL IS CLEARLY ERRONEOUS AND MUST BE VACATED.**

Federal Rule of Civil Procedure 54(b) provides that interlocutory orders that resolve fewer than all of the claims or the rights and liabilities of fewer than all of the parties "may be revised at any time before the entry of a [final] judgment." Fed. R. Civ. P. 54(b). A district court "retains the power to reconsider and modify its interlocutory judgments," and that power "is committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) (citations omitted). The court "may exercise its discretion to afford relief from [its] interlocutory orders 'as justice requires.'" *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 463 (E.D. Va. 2011) (quoting *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1473 (4th Cir. 1991)). The clearly erroneous nature of an earlier ruling is sufficient to justify reconsideration. *Touchcom*, 790 F. Supp. 2d at 463 (citing *Am. Canoe*, 326 F.3d at 515). For the reasons set forth below, the Order is a clear error of law and should be vacated in part.[2]

   A.    **The Order Rests on an Incorrect and Overbroad Interpretation of the Scope of the Waiver Resulting From the Claims in the Section 2255 Motion and Should be Vacated.**

The Court's decision rests on the determination that Mr. Hager's ineffective assistance of counsel claims are so broad in scope that by asserting them Mr. Hager has waived his right to withhold from disclosure any and all materials in trial counsel's files that are otherwise subject to the attorney-client privilege or attorney work product doctrine, or are confidential. Mr. Hager

---

[2] Although it is not clear that a movant in a section 2255 proceeding is required to satisfy the standard for reconsideration under Federal Rule of Civil Procedure 54(b), Mr. Hager has met that standard here.

respectfully submits that the Court has misinterpreted the reach of his ineffective assistance claims and misapplied the law concerning the scope of the waiver.

Allegations of ineffective assistance of counsel create a "waiver by implication," which "differ[s] materially from the more traditional express waivers" in terms of its scope. *Bittaker v. Woodford*, 331 F.3d 715, 719-20 (9th Cir. 2003). As the Ninth Circuit held in *Bittaker*, under the doctrine of implied waiver:

> the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it. Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose. Courts . . . that have imposed waivers under the fairness principle have therefore closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question.

*Id.* at 720 (citations omitted).[3] Other courts have reached similar conclusions. *See, e.g.*, *In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005) ("Implied waivers are consistently construed narrowly"; finding on mandamus review that district court had clearly erred in finding an implied waiver of the privilege); *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) (holding that when a habeas petitioner claims ineffective assistance of counsel he impliedly waives the privilege "with respect to communications with his attorney *necessary* to prove or disprove his claim") (emphasis added); *United States v. Juan*, 48 F. Supp. 3d 853, 859-60 (E.D. Va. 2014) (applying *Bittaker* to restrict the scope of the privilege waiver); *see also Hernandez v. Tanninen*, 604 F.3d 1095, 1101 (9th Cir. 2010) (finding on mandamus review of decision regarding scope of privilege waiver that district court had clearly erred in finding a blanket waiver). These cases stand for the proposition that when a defendant alleges ineffective assistance of counsel, the scope of the implied waiver must be narrowly tailored so as not to exceed the scope of the

---

[3] The *Bittaker* court made clear that its holding regarding the limited scope of the waiver also applied to materials protected by the attorney work product doctrine. 331 F.3d at 722 n.6.

6

relevant ineffective assistance allegations. *See Bittaker*, 331 F.3d at 722 ("[W]e can conceive of no federal interest in enlarging the scope of the waiver beyond what is needed to litigate the claim of ineffective assistance of counsel in federal court.").

The applicable legal ethics rules also support a narrow waiver. The Virginia Rules of Professional Conduct generally prohibit an attorney from revealing information protected by the attorney-client privilege or attorney work product doctrine, or that is otherwise confidential. Va. Rules Prof'l Conduct R. 1.6(a) & Rule 1.6  cmt. ¶ 3. While the Rules permit a lawyer to disclose privileged or confidential information to the extent he reasonably believes necessary to respond to allegations concerning the lawyer's representation of the client, Va. Rules of Prof'l Conduct R. 1.6(b)(2), that disclosure "should be no greater than the lawyer reasonably believes is necessary to vindicate innocence," *see* Va. Rules of Prof'l Conduct R. 1.6 cmt. ¶ 10.

In light of this precedent prescribing a narrow waiver, the Court's Order is correct only if Mr. Hager's ineffective assistance of counsel claims are so broad that they encompass the entirety of trial counsel's performance. But Mr. Hager's ineffective assistance claims are much narrower than that. As described in further detail *supra* p. 3, Mr. Hager has not challenged the constitutional effectiveness of a wide array of trial counsel's performance relating to matters and issues ranging from jury selection to unadjudicated homicides identified in the government's Notice of Intent to the handling of certain government witnesses and evidence.

Where, as here, a court is faced with ineffective assistance claims that do not cover the waterfront of trial counsel's conduct and decision-making, it must limit the implied waiver to information that is actually relevant to the claims asserted. For example, in *Mason v. Mitchell*, 293 F. Supp. 2d 819 (N.D. Ohio 2003), the petitioner asserted an ineffective assistance of counsel claim based on trial counsel's failure to present available mitigating evidence regarding

the petitioner's troubled childhood. *Id.* at 823-24. At trial, petitioner's counsel had simply relied upon a residual doubt argument at the penalty phase. *Id.* The respondent argued that the fact that trial counsel had pursued a residual doubt defense meant it was entitled to learn what the petitioner told his trial counsel regarding his involvement in the crime. *Id.* The court rejected this argument, finding that the petitioner's claim was about what counsel did *not* do, not about what they did do. *Id.* It held that the petitioner's statements to counsel about the crime were irrelevant to counsel's alleged failure to present mitigating evidence about his childhood, and so the respondent's request for that information was denied. *Id.* at 824. The petitioner in *Mason* also claimed that trial counsel was ineffective for relying on a particular expert to conduct their mitigation investigation. The Court found that while this claim impliedly waived work product protection regarding what the expert was asked to do, what investigation he actually conducted, and what he communicated to trial counsel, it did not waive work product as to the expert's conversations with the petitioner about the underlying crime. *Id.* at 825.

In *Juan*, an Eastern District of Virginia case that involved ineffective assistance allegations outside of the habeas context, the defendant backed out of a plea agreement mid-colloquy by asserting his innocence. 48 F. Supp. 3d at 858. When the government later sought to admit the statement of guilt he had signed in preparation for the plea against him at trial, the defendant opposed the request on the ground that his counsel at the time of the plea had rendered ineffective assistance by failing to adequately advise him regarding the plea agreement. The government then sought information from his former counsel regarding his discussions with his client. The Court found that by calling into question his counsel's performance of his duty the defendant had impliedly waived the privilege. *Id.* The Court, however, correctly recognized that the waiver was not boundless in scope. The government argued that the waiver should extend to

8

any protestation of innocence that the defendant made to his former counsel and any substantive defenses that client and counsel discussed. *Id.* at 860. The Court disagreed, finding the government's "framing of the issue to be overly broad," and instead limited the waiver to communications about the statement of facts in the plea agreement and the implications of one paragraph in particular. *Id.*

In contrast, this Court failed to narrowly tailor the privilege waiver to Mr. Hager's actual claims. As a result, the Court imposed an unlimited waiver that would require Mr. Hager to reveal to the government sensitive material that has no bearing whatsoever on any of the ineffective assistance claims in the Section 2255 Motion. Such material includes any attorney-client communications and attorney work product concerning three unadjudicated homicides that the government initially told Mr. Hager it intended to use as non-statutory aggravating factors at the penalty phase of his trial, but ultimately elected not to use. Trial counsel's communications with Mr. Hager about those incidents, and the fruits of any investigation they conducted into those incidents, is not information that should be disclosed to the government.[4] Nor will the government be prejudiced in its ability to defend against the ineffective assistance of counsel claims that Mr. Hager has asserted if it is denied access to this irrelevant information.

The Court's ruling is also wrong as matter of policy. A broad waiver of this nature, if widely adopted, would have deleterious consequences to attorney-client relationships in this district. It would inhibit frank communications between a criminal defendant and his attorney, and chill an attorney's willingness to investigate all angles and aspects of a case out of concern that if their client later asserts ineffective assistance of counsel claims against them, *all* communications with their client, and their entire case file, will be turned over to the

---

[4] That the Court might enter a protective order restricting the government's use of these materials is of no moment. Mr. Hager should not have to disclose privileged and confidential materials to the government when those materials do not relate to claims he has asserted.

government.  Courts have rejected broad waivers precisely because of these consequences.  *See Bittaker*, 331 F.3d at 722 ("A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.").

Accordingly, the portion of the Court's Order requiring the production of all documents in trial counsel's files is clearly erroneous and should be vacated.

> **B.**    **The Court Should Enter an Amended Order That Limits the Scope of the Waiver to Documents Relevant to Mr. Hager's Ineffective Assistance of Counsel Claims and Requires Habeas Counsel to Conduct a Privilege Review.**

Mr. Hager respectfully submits that the Court should correct its clearly erroneous Order requiring habeas counsel to produce all documents it obtained from trial counsel by entering an amended order that cabins the waiver of the attorney-client privilege, attorney work product doctrine, and client confidentiality to documents that are relevant to Mr. Hager's specific ineffective of counsel claims.  The waiver should be no larger than what is needed for the parties to litigate those claims.  *See Bittaker*, 331 F.3d at 722.  In other words, the waiver should be limited to attorney-client communications, attorney work product, and other confidential material that are relevant to the aspects of trial counsel's performance that Mr. Hager is actually challenging in the Section 2255 Motion.

Just by way of example, a properly-limited waiver would entitle the government to materials relating to trial counsel's decision to base Mr. Hager's defense on an insupportable legal theory, *see* Section 2255 Motion Part I, ¶¶ 1-13, and trial counsel's decisions concerning contesting the government's theories regarding the nexus between the drug conspiracy and the killing of Ms. White, *see id.* ¶¶ 14-27, but not to materials relating to the unadjudicated homicides or guilt-phase expert witnesses that were never called to testify.  The government also

would not be entitled to information regarding trial counsel's activities other than those directly related to the decisions to rely upon the baseless legal theory and not to contest the nexus theory. They would not, for example, be entitled to information regarding trial counsel's deliberative processes and decisions regarding other, unrelated potential defenses. And unless and until trial counsel assert that the reason they failed to contest the nexus theory was because they ran out of time to do so due to other aspects of the representation, the government would not be entitled to any further information concerning "the universe" in which trial counsel were operating. If, for example, counsel were to admit that they simply misunderstood the law, the time they spent on entirely unrelated matters would be completely irrelevant to the resolution of Mr. Hager's claim.

With a waiver that is narrowly tailored to Mr. Hager's ineffective assistance of counsel claims, habeas counsel will need to conduct a privilege review of the documents it received from trial counsel to ensure that privileged documents that fall outside the scope of the waiver are not produced to the government. Accordingly, the Court's amended order should require habeas counsel to conduct a privilege review of the documents it obtained from trial counsel and to produce all documents that are not privileged, as well as all documents that are privileged but fall within the scope of the waiver articulated by the Court.

### C.   The Court Should Enter an Interim Order Staying Production of Trial Counsel's Files Until This Motion is Decided.

Mr. Hager also respectfully requests that the Court enter an interim order staying habeas counsel's obligation to produce trial counsel's files while the Court considers this Motion. The Order requires habeas counsel to produce trial counsel's files to the government "forthwith." Order 1. In light of this Motion, complying with the Order would mean producing documents that habeas counsel believes the government is not entitled to receive. To avoid placing habeas counsel in the difficult position of having to choose between non-compliance and producing

11

privileged materials, Mr. Hager requests that the Court stay the portion of the Order requiring habeas counsel to produce documents until this Motion is decided.

## CONCLUSION

For the foregoing reasons, Mr. Hager respectfully requests that the portion of the Order requiring habeas counsel to provide the government with all files obtained from trial counsel be vacated, that the Court enter an amended order limiting the scope of the waiver and requiring habeas counsel to conduct a privilege review of the documents from trial counsel's files, and that the Court enter an interim order staying production of those documents until this Motion is decided.

Dated: August 21, 2015                             Respectfully submitted,


/s/ Blair G. Brown
Blair G. Brown (Va. Bar No. 29706)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
(202) 778-1829 (telephone)
(202) 822-8106 (facsimile)
bbrown@zuckerman.com

*Counsel for Defendant Thomas Morocco Hager*


/s/ Julie Brain
Julie Brain
916 South 2nd Street
Philadelphia, PA  19147
(267) 639-0417 (telephone)
Juliebrain1@yahoo.com

*Counsel for Defendant Thomas Morocco Hager*

12

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of August, 2015, I have caused a copy of the

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR PARTIAL RECONSIDERATION** to be served on the following by electronically filing it on

the court's ECF system:

> James L. Trump
> Christopher Catizone
> United States Attorney's Office
> Eastern District of Virginia
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> jim.trump@usdoj.gov
> christopher.catizone@usdoj.gov

>                    /s/ Blair G. Brown
>                    Blair G. Brown

13