IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:05-cr-264 (LMB) |
| THOMAS MOROCCO HAGER, | ) | |
| | ) | |
| Defendant. | ) | |

### RESPONSE OF THE UNITED STATES TO
### DEFENDANT'S MOTION TO RECONSIDER

The Court should deny the Motion to Reconsider (Dkt 553) filed by the Defendant,

Thomas Morocco Hager. Hager contends that "the Court has misinterpreted the reach of his

ineffective assistance claims and misapplied the law concerning the scope of the waiver." (Dkt

553 at 6.) He is wrong on both counts. As for the "reach of his ineffective assistance claims," the

Court correctly concluded that Hager's 202-page § 2255 petition "opened the door to everything

[trial counsel] did." As for Hager's claim that the Court "misapplied the law," Hager

misinterprets *Strickland v. Washington*, 466 U.S. 668 (1984), which emphasized the importance

of "circumstances" in evaluating a claim of ineffective assistance of counsel. He also seeks to

apply a deflated relevance standard and ignores the heavy burden he faces in establishing

privilege related to his habeas claims.

I.    **The Court Correctly Applied Principles of Ineffective Assistance, Relevance, and
      Privilege Waiver in Granting the Government's Motion for Discovery.**

Hager claims that the Court "misapplied the law" in ordering that he turn over to the

government all documents received from trial counsel relevant to his habeas claims. As an initial

matter, Hager openly misstates the Court's ruling when he contends that the Court "*abandon[ed]

any requirement* that the disclosures be limited to those documents as to which applicable

privileges have been waived" (Dkt 553 at 4 (emphasis added)), and when he contends that "the

Court imposed an *unlimited waiver* that would require Mr. Hager to reveal to the government sensitive material that has *no bearing whatsoever* on any of the ineffective assistance claims in the Section 2255 Motion" (Dkt 553 at 9 (emphases added)). The Court did no such thing. Rather, the Court concluded that broad discovery was appropriate given the breadth of Hager's habeas claims. The Court is on firm legal ground, under the *Strickland* standard and basic principles of relevance.

There is no dispute between Hager and the government about the standard governing his privilege waiver: privilege has been waived as to any materials relevant to Hager's broad habeas claims. *See Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967) ("[W]here, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue."). Evidence is relevant, of course, if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Hager does not challenge this relevance standard. Rather, he asks the Court to apply it in a wooden manner to his artificially compartmentalized habeas claims. Hager appears to criticize the Court for seeking to provide the government with an opportunity to "determine whether the decisions [trial counsel] made were reasonable under the circumstances," and for "remark[ing] that the time that trial counsel spent on issues that Mr. Hager did not raise in the Section 2255 Motion was relevant" to the *Strickland* inquiry (Dkt 553 at 4). But as *Strickland* makes clear, *this is exactly what the law requires the Court to consider.*

Under *Strickland*, the Court must ultimately determine whether trial counsel provided "reasonably effective assistance," 466 U.S. at 687, as measured by "an objective standard of reasonableness," *id.* at 688. Contrary to what Hager would have the Court believe, this

2

determination must be made in light of "the totality of the circumstances." *Lee v. United States*, 2011 WL 841441, at *4 (E.D. Va. 2011). That means that the Court must consider "whether counsel's assistance was reasonable *considering all the circumstances*" *id.* at 688 (emphasis added), recognizing the "*variety of circumstances* faced by defense counsel", "the *range of legitimate decisions* regarding how best to represent a criminal defendant," and the "wide latitude counsel must have in making tactical decisions," *id.* at 689 (emphases added). Indeed, precisely because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," the Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the *circumstances of counsel's challenged conduct*, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689 (emphases added).

This context-heavy inquiry applies to strategic and investigative decisions no less than legal ones. Indeed,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690–91. *See also, e.g.*, *Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987) (noting that counsel's "failure to move to strike, whether it was a deliberate decision or an oversight, cannot be said to have been unreasonable in light of the circumstances," and that "[c]ounsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another"). As the Supreme Court has recently recognized, "[a]n attorney can avoid activities that appear distractive

from more important duties," and counsel is "entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter,* 562 U.S. 86, 107 (2011) (internal quotations omitted).

In *United States v. Basham*, No. 02-992, 2012 WL 1130657 (D.S.C. Apr. 4, 2012), the court found that where the defendant filed a 169-page habeas petition, the government was "entitled to the entirety of his trial and appellate counsel's files" because the claims in the motion "reach nearly every part of his trial and span the course of extended pre-trial, trial, and sentencing phases. Such wide-ranging claims necessitate this court's finding that [petitioner] has waived his attorney-client and work product privileges in this case." *Id.*at *2–3. The *Basham* court then listed the 30 individual claims presented by the petitioner and concluded that "it is difficult to imagine a category of matters that are not encompassed by the claims raised in the § 2255 motion." *Id.* at *4.

In arguing for a narrower disclosure, Hager ignores *Strickland*'s teaching that, in evaluating effectiveness, the Court must consider issues faced by trial counsel beyond those *specifically targeted* in a § 2255 motion. Of course, that habeas counsel, nearly ten years after trial, can identify potentially meritorious issues does not mean that trial counsel was deficient for failing to identify those issues—especially considering the difference between trial counsel's all-encompassing focus on both the guilt and penalty phases, and habeas counsel's targeted role of finding one discrete issue that might lead to a new trial or sentence.[1] Hager likewise contends

---

[1] *See, e.g.*, *Harris v. United States*, 9 F. Supp. 2d 246, 282 (S.D.N.Y. 1998) ("While habeas counsel now profess that they would have pursued a different trial strategy, I am not persuaded that the strategy adopted by trial counsel was unsound or lacking in objective reasonableness."); *Sells v. Thaler*, No. 08-465-OG, 2012 WL 2562666, at *58 (W.D. Tex. June 28, 2012) (noting that mother's statements about drinking while pregnant with defendant "were apparently expressed for the first time ten years after petitioner's capital murder trial when she informed petitioner's federal habeas counsel" and "[defendant] has not alleged any facts, much less

that the Court erred in requiring Hager to turn over information relating to his own communications with trial counsel. (Dkt 553 at 9.) But *Strickland* makes clear that a defendant's directives to his lawyers are highly relevant to a habeas claim:

> Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. . . . [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable. *In short, inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions.*

*Id.* at 691 (emphasis added). *Strickland*'s logic applies with special force here, where Hager may have provided his trial counsel with information that could be directly relevant to several of his habeas claims, including (to name a few) his challenge to trial counsel's defense strategy, his challenges to trial counsel's cross-examination strategy, and his challenge to trial counsel's mitigation efforts—including his claim that trial counsel were ineffective for failing to argue that Hager is intellectually disabled. *See, e.g.*, *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) ("By alleging that his attorneys provided ineffective assistance of counsel in their choice of a defense strategy, Johnson put at issue—and thereby waived—any privilege that might apply

---

furnished any evidence, showing there any information made available to petitioner's trial counsel at or before the time of petitioner's trial which would have led petitioner's trial counsel to conclude that investigation into fetal alcohol syndrome was at that time a realistic option or potentially beneficial source of mitigating evidence"); *Exton v. United States*, No. 05-80273, 2009 WL 416068, at *7 (E.D. Mich. Feb. 19, 2009) ("It is true that trial counsel did not assert that theory of defense, but the mere fact that trial counsel's strategy diverged from that which habeas counsel would have pursued does not render trial counsel's performance ineffective."); *Ward v. Stephens*, No. 10- 2101, 2014 WL 887440, at *22 (N.D. Tex. Mar. 6, 2014) ("The mere fact that Ward's federal habeas counsel can find an expert whose opinion differs from that of the expert retained by his trial counsel does not make his trial counsel ineffective (or his trial expert wrong).").

to the contents of his conversations with those attorneys to the extent those conversations bore on his attorneys' strategic choices."); *id.* at 1179 ("[T]he communications between Johnson and his trial counsel clearly reveal the incompatibility between what Johnson told his lawyers at the time and the theory of defense that his present lawyers insist their predecessors should have advanced."); *Basham*, 2012 WL 1130657 at *5 (petitioner's claim that his trial counsel was ineffective for failing to challenge his competency to stand trial "implicate[s] all communications between Petitioner and his trial and appellate counsel").

At bottom, the Court cannot possibly make "every effort" to consider "all the circumstances" of trial counsel's performance if the government does not present a "comprehensive" analysis of trial counsel's performance; "i.e., not narrowly limited to a review of counsel's failings." And the government cannot possibly present a comprehensive analysis of trial counsel's performance if habeas counsel is permitted to pick and choose which trial documents to produce based on what *habeas counsel* determines to be relevant. Simply stated, the government's request for trial counsel' files seeks to obtain all information related to the "circumstances of counsel's challenged conduct." Hager's attempts to restrict this disclosure by compartmentalizing his habeas claims cannot be squared with *Strickland*'s requirement that any inquiry into trial counsel's effectiveness take into account all relevant "circumstances."[2] The Court's initial Order was correct, and Hager's Motion for Reconsideration should be denied.

---

[2] Hager does not attempt to show how he personally would be unfairly prejudiced by producing all relevant materials as the Court initially ordered (especially in the presence of a protective order). He contends, however, that the Court's existing order will have "deleterious consequences to attorney-client relationships in this district" and "chill an attorney's willingness to investigate all angles and aspects of a case." (Dkt 553 at 9.) Hager has it precisely backwards. His proposed standard would invite defendants to file the broadest possible habeas petitions in the hopes that discovery would be artificially limited. That standard would surely expand "[t]he availability of intrusive post-trial inquiry into attorney performance" and "would encourage the

## II.    Hager's Petition "Covers the Waterfront" of Trial Counsel's Conduct and Decision-Making.

As noted above, *Strickland* requires this Court to evaluate trial counsel's decisions objectively, in light of all of the surrounding circumstances as they existed as of the time when the actions were taken, eliminating the distorting effect of hindsight. *Strickland*, 466 U.S. at 689–91. This Court must, therefore, examine all aspects of trial counsel's pre-trial and trial performance given the sweeping nature of Hager's ineffective assistance claims. Hager's trial counsel are experienced attorneys, qualified to represent defendants in capital litigation, and they presumably arrived at and carried out a pre-determined defense strategy throughout the guilt phase of the trial and during sentencing proceedings. Hager now challenges that strategy and how it was implemented, calling into question all of trial counsels' tactical decisions. In the guilt phase, for example, Hager suggests that trial counsel should have pursued alternative theories of the crime and more aggressively cross-examined certain witnesses. Similarly, in questioning the reasonableness of trial counsel's representation during the penalty phase, Hager claims that trial counsel not only failed to challenge effectively the bulk of the government's evidence in aggravation but also failed to develop and present favorable physical and testimonial evidence in mitigation.

All of these issues, however, are related factually. They cannot be neatly parsed out and dealt with one at a time. As we noted during the August 6 hearing, had trial counsel pursued an alternative theory of the murder, drawing into question Hager's motive and intent in killing Barbara White, either through more aggressive cross-examination of the government's witnesses or the presentation of affirmative evidence, that line of defense may have opened the door to evidence of other crimes involving the defendant (including, for example, other intentional

proliferation of ineffectiveness challenges," affecting "[c]ounsel's performance and even willingness to serve." *Strickland*, 466 U.S. at 690.

killings and shootings, as well as additional evidence of other drug trafficking and gang activity, some of which was described in the death penalty notice). Indeed, any attempt to impeach government witnesses with evidence of the witnesses' involvement in other criminal activity could have implicated Hager. The testimony of Charles Johnson illustrated that point very clearly at trial. When the trial judge warned trial counsel that further exploration on cross examination of Johnson's other crimes might open the door to evidence of Hager's involvement in those same crimes, trial counsel wisely chose not to pursue that line of questioning. Similarly, an aggressive cross-examination of Shenita King as suggested by Hager in his Section 2255 motion, would have opened the door to other evidence of violence by Hager, including that Hager had nearly beaten King to death on one occasion and, on another, shot her.[3]

In the penalty phase, Hager's trial counsel apparently chose a strategy designed to minimize the presentation of evidence of other violent crimes to the jury.[4] That strategy would necessarily have been compromised had counsel pursued a more aggressive posture toward the government's guilt phase witnesses by exposing the jury to this evidence in that phase of the trial. Moreover, using Dr. Cunningham to describe mitigating evidence about Hager's childhood experiences and family history was consistent with this approach. Hager, though, criticizes trial counsels' decision in this regard and, for example, suggests they, alternatively, should have called Terrell Hager, the defendant's younger brother, as a mitigation witness, rather than relying

---

[3] Indeed, even Hager appears to recognize the factual overlap of his various ineffective assistance claims, stating, repeatedly, that "[s]eparately and cumulatively, those deficiencies in the investigation, preparation and presentation of the defense to the government's case at the guilt phase of trial require that Mr. Hager's conviction and sentence of death be vacated." (Dkt. 529 at 4.)

[4] We say "apparently" because, at this stage, we are not privy to the information in trial counsel's files nor have we had an opportunity to question trial counsel on their penalty phase strategy (precisely the reason the government, and the Court, need that information). Based on what transpired at trial, however, Hager's trial counsel did, in fact, successfully pursue a strategy that accomplished this goal.

on Dr. Cunningham. That strategy would most likely have backfired, as Terrell and Tommy Hager together committed many acts of violence, including murder, evidence of which the jury would have heard had Terrell testified for his brother as part of his mitigation case.

In his motion for reconsideration, Hager identifies nine categories of trial counsel's performance he says are unrelated to his claims of ineffective assistance. The list, however, belies the argument. All nine subject matters identified by Hager (except, possibly, jury selection), are matters related to the development and implementation of counsel's trial strategy. They cannot be divorced from the matters Hager now seizes on as attorney error. They all stem from the same investigation; they are all matters that either shaped trial counsel's strategy or were the product of it.  As discussed above, it is impossible to separate trial counsel's investigation of, and decisions about, other homicides and violent crimes from their other tactical decisions in the guilt and penalty phases. Similarly, communications and discussions with Hager about a possible plea agreement or cooperation certainly influenced counsel's trial strategy. Whether to challenge the aggravating factor that Hager killed Londell Duvall (deemed not ineffective) was presumably linked to counsels' decision not to challenge the aggravating factor that Hager killed Jerome Robinson (deemed ineffective). Likewise, it is hard to discern how Hager can claim that his counsels' decision not to challenge certain evidence that Hager possessed weapons at USP Pollack is unrelated to the extensive discussion of his counsel's poor performance relating to the government's other evidence of violent acts at USP Pollack. In short, all of trial counsels' many pretrial and trial decisions must be examined in their totality, and this Court cannot possibly examine trial counsels' performance objectively, in light of all of the surrounding circumstances as they existed as of the time when the actions were taken, without the benefit of information from counsels' files.

9

### III.    Hager's Proposed Order Is Inappropriate.

For all the reasons discussed above, the proposed order submitted by Hager is inappropriate as a matter of law. The proposed order is flawed for the additional reason that it leaves entirely to habeas counsel the determination as to which documents "are relevant to Mr. Hager's ineffective assistance of counsel claims." This proposed procedure misallocates the burden of establishing that privilege applies, and promises to create unnecessary labor for the parties and the Court in resolving continuing disputes about the scope of the privilege waiver.

Hager correctly notes that not all documents received from trial counsel are likely to be privileged. (Dkt 553 at 9.) He may well have added that the burden is on Hager to show that the privilege applies, *see, e.g.*, *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982), and that the Fourth Circuit has held that privilege is to be construed narrowly, *see, e.g.*, *United States v. Basham*, No. 02-992, 2012 WL 1130657, at *1 (D.S.C. Apr. 4, 2012) ("The Fourth Circuit has observed that because the attorney-client privilege 'impedes the full and free discovery of the truth, it must be narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" (quoting *In re Grand Jury Subpoena v. Under Seal*, 341 F.3d 331, 335 (4th Cir. 2003)).

Hager's Motion for Reconsideration does not attempt to satisfy this burden or provide any clarity about the documents that Hager believes should remain privileged; indeed, Hager does not describe *any* specific documents as to which he would claim that the privilege has not been waived. Again, considering the extremely broad claims raised by Hager, the expansive relevance standard, and *Strickland*'s requirement that the Court consider "all circumstances" in evaluating an ineffectiveness claim, the government believes that Hager has broadly waived his privilege and that all (or substantially all) of trial counsel's documents are likely to be relevant to

10

Hager's habeas claims. Even if that were not the case, however, the government should not be forced to fish through a privilege log in order to locate additional relevant documents.

Thus, to the extent that the Court grants any relief on Hager's Motion for Reconsideration—and, again, the government believes the Motion should be denied—the government opposes Hager's request "to conduct a privilege review of the documents it obtained from trial counsel and to produce all documents that are not privileged." Rather, the government requests that Hager submit any materials over which he claims privilege to a separate "taint team" of government attorneys. This taint team will be screened off from the undersigned counsel, and any documents produced to the taint team will not be produced to the undersigned counsel absent agreement from Hager's habeas counsel. If Hager's habeas counsel and the government taint team cannot reach agreement about any particular documents, these may be submitted in camera and under seal—out of view of undersigned counsel—to the Court so an informed decision can be made about their relevance and whether they are in fact privileged. The government believes that such a procedure—in addition to a protective order, as the Court has already contemplated—would eliminate any risk of unfair prejudice to Hager in the unlikely event that there exist privileged documents not relevant to his habeas claims.

## CONCLUSION

For the reasons stated above, Hager's Motion for Reconsideration (Dkt 553) should be denied in its entirety. In the alternative, Hager's request to conduct a unilateral, unsupervised privilege review should be denied, and Hager should be required to produce any documents which he believes are privileged and not relevant to a government "taint team" for review and resolution before the Court, if required.

11

Hager has not requested a hearing, and the government submits that the Court can resolve the Motion for Reconsideration without one.

Date: September 1, 2015

Respectfully submitted,

Dana J. Boente
United States Attorney


By: _____ /s/ _____

James L. Trump
Christopher Catizone
Assistant United States Attorneys
Eastern District of Virginia

The Justin W. Williams
        U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:          (703) 299-3700
Fax:            (703) 299-3980
jim.trump@usdoj.gov
christopher.catizone@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of September, 2015, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of

such filing (NEF) to all counsel of record.

Date: September 1, 2015                       Respectfully submitted,

                                              Dana J. Boente
                                              United States Attorney


                               By:  _____/s/_____

                                              James L. Trump
                                              Christopher Catizone
                                              Assistant United States Attorneys
                                              Eastern District of Virginia

                                              The Justin W. Williams
                                                    U.S. Attorney's Building
                                              2100 Jamieson Avenue
                                              Alexandria, VA 22314
                                              Phone:        (703) 299-3700
                                              Fax:          (703) 299-3980
                                              jim.trump@usdoj.gov
                                              christopher.catizone@usdoj.gov