UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **Criminal No. 1:05-cr-00264 (LMB)** |
| | : | **Civil Action No. 1:15-cv-00551** |
| | : | |
| THOMAS MOROCCO HAGER, | : | **CAPITAL § 2255 PROCEEDINGS** |
| | : | |
| Defendant. | : | |
| | : | |

**DEFENDANT'S REPLY TO THE RESPONSE OF THE UNITED STATES TO
THE MOTION FOR PARTIAL RECONSIDERATION**

In his Motion for Partial Reconsideration (ECF No. 552) (the "Motion"), Defendant Thomas Morocco Hager, through undersigned counsel, asked the Court to vacate the portion of its Order dated August 6, 2015 (ECF No. 541), requiring habeas counsel to provide the government with all files obtained from trial counsel. In its response (ECF No. 558), the government contends, first, that *Strickland v. Washington*, 466 U.S. 668 (1984) mandates a total privilege waiver any time a defendant challenges the constitutional effectiveness of their counsel; second, that Mr. Hager's ineffective assistance of counsel claims are so broad that they implicate all aspects of trial counsel's performance; and third, that the Court, should it grant Mr. Hager relief on the Motion, should require Mr. Hager to produce documents he submits are privileged to a "taint team" of government attorneys for review. The government's response misconstrues both the law and Mr. Hager's claims, and proposes a process for handling privileged and confidential material that is inadequately protective of that material and Mr. Hager's rights in the event he succeeds on his Section 2255 motion.

.

**ARGUMENT**

**I.      THE GOVERNMENT'S INTERPRETATION OF THE LAW REGARDING THE SCOPE OF THE PRIVILEGE WAIVER IS INCORRECT.**

The government argues that *Strickland*'s statement that a court, in adjudicating an ineffective assistance of counsel claim, should evaluate the reasonableness of trial counsel's performance "considering all the circumstances" means that Mr. Hager's ineffective assistance claims open the door to scrutiny of every single aspect of his trial counsel's performance. Plainly, the meaning of *Strickland* is that courts faced with these types of claims must consider all *relevant* circumstances, not all circumstances whatsoever regardless of their connection to the matters at issue. Taken to its logical conclusion, the government's alternative reading of the decision would mean that any challenge by a defendant to his counsel's constitutional effectiveness, even if that challenge is limited to a single decision, would automatically result in an unlimited privilege waiver so that the government and the court could evaluate the challenged decision in light of every other strategic and investigative decision trial counsel made, no matter how tenuous the relationship between those decisions. This argument proves too much. Reading *Strickland* in this manner would pose a grave threat to the attorney-client privilege, attorney work product doctrine, and rules protecting confidential client information by providing a strong disincentive for counsel to communicate freely and openly with their client or to conduct a thorough investigation, lest they risk the complete disclosure of their communications and work product in the event their client later asserts even the most narrowly-focused ineffective assistance claim. *Strickland* cannot be read to eviscerate the privilege in criminal cases in this way. *Cf. Bittaker v. Woodford*, 331 F.3d 715, 722 (9th Cir. 2003) (finding a narrow waiver rule "will best preserve the state's vital interest in safeguarding the attorney-client privilege in criminal cases, thereby ensuring that the state's criminal lawyers continue to represent their

2

clients zealously"); *United States v. Stone*, 824 F. Supp. 2d 176, 187 (D. Me. 2011) (placing limitations on implied privilege waivers "supports the purpose of the attorney-client privilege in promoting frank discussion between counsel") (citation omitted).

The government's interpretation of the law also runs contrary to the numerous cases decided since *Strickland* that have held that ineffective assistance of counsel claims engender a narrow privilege waiver that is "no broader than needed to ensure the fairness of the proceedings."  *Bittaker*, 331 F.3d at 720; *see* Mem. of Law in Supp. of Partial Mot. for Reconsideration at 6-7 (Aug. 21, 2015), ECF No. 553 (citing cases); *see also United States v. Fell*, No. 5:01-cr-12-01, 2015 WL 3887151, at *4 (D. Vt. June 23, 2015) (finding the implied privilege waiver "is not a wholesale waiver of all privilege" but a "limited waiver . . . which goes no further than it must to allow the Government a fair opportunity to respond to the specific claims raised by the petitioner") (citation omitted).  While the government would have the determination of the scope of the waiver begin and end with the question whether the defendant has challenged his counsel's effectiveness, these cases uniformly hold that courts also must examine the contours of the defendant's ineffective assistance claims and craft a waiver that is only as broad as is necessary to ensure the fair litigation and adjudication of those claims.  *See, e.g.*, *United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009) ("To hold that Pinson waived his attorney-client privilege with respect to this § 2255 claims, however, does not end the analysis," and approvingly citing the *Bittaker* standard for determining the scope of the waiver); *United States v. Juan*, 48 F. Supp. 3d 853, 859-60 (E.D. Va. 2014) (finding defendant had waived the privilege by challenging his counsel's effectiveness in connection with his plea but that the waiver was limited to information the government needed to "adequately respond" to the defendant's claims); *Mason v. Mitchell*, 293 F. Supp. 2d 819, 823 (N.D. Ohio 2003) (finding

petitioner had implicitly waived the privilege by asserting ineffective assistance of counsel during the mitigation phase but observing that "[t]he more difficult issue . . . is the *extent* to which the Petitioner has waived the privilege" and imposing a limited waiver).  The government in its response does not even attempt to address these decisions or try to reconcile them with its overly broad view of the scope of the waiver.

The government's position is also incorrect because it is inconsistent with defendants' Sixth Amendment rights.  A narrow waiver "protects [habeas] petitioners' Sixth Amendment rights to a fair trial should the petition prove successful resulting in a new trial or resentencing." *Stone*, 824 F. Supp. 2d at 188 (citing *Pinson*, 584 F.3d at 979 ("While compelling . . . the production of notes from an attorney in a case such as this is not per se unreasonable, such a requirement should ideally be carefully tailored to protect prisoners' Sixth Amendment rights.") (citation omitted)); *see also Johnson v. Alabama*, 256 F.3d 1156, 1168 n.4 (11th Cir. 2001) (affirming where district court conducted an in camera hearing to "determine whether and to what extent appellant's communication presumptively protected by the attorney-client privilege is relevant to the specific ineffective assistance of counsel claims raised . . . in his habeas petition").  The government would expose defendants who assert ineffective assistance of counsel claims and succeed in obtaining a new trial or resentencing to the specter of having to face an adversary that now has the benefit of all of the defendant's communications with counsel, all of his counsel's mental impressions, ideas, and strategies about the case, and all of his confidential information because they were disclosed during the habeas proceeding.  Such a result would be fundamentally unfair.

The law requires that the scope of the privilege waiver be no broader than "what is needed to litigate the claim of ineffective assistance of counsel in federal court." *Bittaker*, 331

4

F.3d at 722; *see also Pinson*, 584 F.3d at 978 (limiting the waiver to information that is "necessary to prove or disprove" the ineffective assistance claims). The Court, in ordering the production of all of trial counsel's files, did not apply this standard, and for that reason the portion of the Order requiring that disclosure should be vacated.[1]

## II.    THE GOVERNMENT MISCHARACTERIZES THE REACH OF MR. HAGER'S INEFFECTIVE ASSISTANCE CLAIMS.

The government also contends that it is entitled to the entirety of trial counsel's files because Mr. Hager's ineffective assistance claims "call[] into question all of trial counsels' tactical decisions." Gov't Resp. at 7. This mischaracterizes Mr. Hager's claims. As Mr. Hager argued in the Motion, there are numerous aspects of trial counsel's performance, from jury selection, to unadjudicated homicides identified in the government's Notice of Intent to Seek a Death Sentence but ultimately not introduced as non-statutory aggravators at trial, to the handling of certain government witnesses and evidence, that Mr. Hager does not challenge. *See* Mem. of Law in Supp. of Partial Mot. for Reconsideration at 3.

The government nevertheless argues that the aspects of trial counsel's performance that Mr. Hager is not challenging are somehow factually related to the aspects of trial counsel's performance that he is challenging. For example, the government argues that trial counsel's failure to contest the government's theories regarding the nexus between the drug conspiracy and the killing of Barbara White, and trial counsel's failure to properly cross-examine certain witnesses during the guilt phase—which Mr. Hager is challenging—could have opened the door to evidence of other crimes involving Mr. Hager, and therefore trial counsel's investigation of

---

[1] The government claims that Mr. Hager argued in the Motion that the Court erred in requiring him to turn over information relating to his own communications with trial counsel. Gov't Resp. at 4-5. This misstates Mr. Hager's argument. Mr. Hager does not contest that he must disclose communications with his trial counsel that are necessary to resolving his ineffective assistance of counsel claims. The point Mr. Hager was making in the Motion, and is making again here, is that the Court erred in requiring the disclosure of attorney-client communications that are irrelevant to Mr. Hager's actual ineffective assistance claims. *See Mason*, 293 F. Supp. 2d at 824.

and decisions about certain unadjudicated homicides—which Mr. Hager is not challenging—could have influenced their tactical decisions in the guilt and penalty phases.  Gov't Resp. at 7-9. The government, however, does not explain how the presentation of evidence regarding Shenita King's threats to kill Barbara White, the cross-examination of Ms. King regarding those threats and Ms. King's incentives to testify against Mr. Hager, the cross-examination of Mr. Johnson regarding his own motivation to cooperate with law enforcement, or the presentation of evidence debunking the government's rival drug gang theory would open the door to the introduction of evidence relating to these unadjudicated homicides.  Nor could it, as trial counsel's investigation of those homicides bears no relationship to the aspects of their performance that Mr. Hager believes was constitutionally ineffective.

The government tries to link other apparently disparate decisions by trial counsel, such as trial counsel's decision not to challenge the aggravating factor that Mr. Hager killed Londell Duvall with their decision not to challenge the aggravating factor that Mr. Hager killed Jerome Robinson, or trial counsel's decision not to challenge evidence that Mr. Hager possessed weapons at USP Pollock with their performance relating to other incidents involving Mr. Hager at that institution.  However, it posits no logical connection between those decisions, instead merely stating in conclusory fashion that these decisions are "presumably" related or that it is "hard to discern how" they are unrelated.  Gov't Resp. at 9.  But simply stating that two different things are related does not make them so, and is insufficient to justify production to the government of privileged materials to which it is not entitled.  To the extent that there are materials in trial counsel's files that show a link between an aspect of trial counsel's performance that Mr. Hager is not challenging and an aspect of trial counsel's performance that Mr. Hager is challenging, habeas counsel will, of course, produce those documents.  Otherwise, such

documents do not fall within the proper scope of the privilege waiver, and should not be produced.[2]

### III. THE GOVERNMENT'S PROPOSED PROCEDURE FOR HANDLING PRIVILEGED MATERIALS SHOULD BE REJECTED.

If the Court grants Mr. Hager relief on the Motion, the government argues that the Court should reject Mr. Hager's proposal for habeas counsel to conduct a privilege review of trial counsel's files and instead should require Mr. Hager to submit any materials over which he claims privilege to a "taint team" of government attorneys who would try to resolve disputes over privileged documents with habeas counsel. This manner of proceeding is unfair to Mr. Hager for the same reason that courts have consistently ruled in favor of a narrow waiver: requiring that privileged or confidential material be disclosed to the government—even a "taint team" of government attorneys—raises concerns about providing the government with an unfair advantage in the event of a new trial or resentencing. *See supra* p. 4.

A better path is the more traditional one. Habeas counsel should conduct a privilege review of trial counsel's files, produce documents that are non-privileged and documents that are privileged but fall within the scope of a limited waiver, and withhold from production those documents that are privileged but not within the scope of the waiver. If the Court wishes, habeas counsel can provide a privilege log for the government to review. Privilege logs are ubiquitous in civil litigation and habeas counsel is familiar with preparing them in an appropriate and efficient manner. If the government identifies documents on that log that it believes are not privileged or are privileged but fall within the scope of the waiver, they may request habeas

---

[2] The government also makes a convoluted argument involving trial counsel's decision not to call Terrell Hager as a witness at the penalty phase of the trial. As the government correctly notes, Mr. Hager challenged that decision in his Section 2255 motion, and therefore has indisputably waived his privilege with regard to information relevant to that decision. To the extent that the government is arguing that such material should be produced, habeas counsel has no disagreement and Mr. Hager's Motion for Partial Reconsideration should not be construed to suggest otherwise.

counsel to produce those documents. If habeas counsel does not believe the documents should be produced, then the documents will be submitted *in camera* and under seal to the Court to decide whether they should be produced. This procedure has been used in other capital section 2255 proceedings. *See, e.g.*, *Fell*, 2015 WL 3887151, at *5 (describing how habeas counsel provided the government with trial counsel's files, but withheld from production documents determined to be privileged and supplied a privilege log describing the documents that were not produced). It should be used here as well.

## CONCLUSION

For the foregoing reasons, Mr. Hager respectfully requests that the portion of the Order requiring habeas counsel to provide the government with all files obtained from trial counsel be vacated, that the Court enter an amended order limiting the scope of the waiver and requiring habeas counsel to conduct a privilege review of the documents from trial counsel's files, and that the Court enter an interim order staying production of those documents until the Motion is decided.

Dated: September 8, 2015                    Respectfully submitted,

                                            /s/ Blair G. Brown
                                            Blair G. Brown (Va. Bar No. 29706)
                                            ZUCKERMAN SPAEDER LLP
                                            1800 M Street, NW, Suite 1000
                                            Washington, DC 20036
                                            (202) 778-1829 (telephone)
                                            (202) 822-8106 (facsimile)
                                            bbrown@zuckerman.com

                                            *Counsel for Defendant Thomas Morocco Hager*

8

/s/ Julie Brain
Julie Brain
916 South 2nd Street
Philadelphia, PA  19147
(267) 639-0417 (telephone)
Juliebrain1@yahoo.com

*Counsel for Defendant Thomas Morocco Hager*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of September, 2015, I have caused a copy of the

**DEFENDANT'S REPLY TO THE RESPONSE OF THE UNITED STATES TO THE MOTION FOR PARTIAL RECONSIDERATION** to be served on the following by electronically filing it on the court's ECF system:

> James L. Trump
> Christopher Catizone
> United States Attorney's Office
> Eastern District of Virginia
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> jim.trump@usdoj.gov
> christopher.catizone@usdoj.gov

> /s/ Blair G. Brown
> Blair G. Brown