# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America | ) CR. NO. 4:02-992-JFA |
| | ) |
| v. | ) |
| | ) |
| Chadrick E. Fulks | ) |
| | ) |
| | ) |

**Order Denying Petitioner's Motion to Reconsider**

This matter comes before the court on Petitioner's Motion to Reconsider the order of

this court dated August 21, 2009 [dkt. #1226]. For the reasons stated herein, the motion is

granted in part and denied in part. The court addresses the points in Petitioner's motion

seriatim:

I.      Witnesses Testimony

Petitioner challenges the court's order with respect to the witnesses who may

be called at the evidentiary hearing scheduled to begin October 5, 2009.

A.      Fact Witnesses

The court finds no discrepancy between the ruling at the hearing and the order with

respect to witnesses to be initially presented via affidavit. The court determined at the

hearing that "we are going to start the hearing with the affidavits of fact witnesses. Once we

get into them one by one, at any point petitioner's counsel can suggest that we really need

the witness here, or the government can suggest we really need the witness here, or might on

my own motion decide to bring in a warm body, so to speak. All right?" Transcript of

1

8/11/09 Status Conference/Motion Hearing, at p.30. The order states "[The court will receive the affidavits with the government's stipulation that the testimony is what the witnesses would have testified to if called live, but not that the facts averred in the affidavits are necessarily true. Should the court find that live testimony is necessary from any of these witnesses, the court will resume the hearing on October 21, 2009 to receive the same." The court's finding of necessity does not preclude the opportunity for further argument from counsel regarding the necessity of live testimony after the presentation of the affidavits. The court rejects, once again, Petitioner's urging to proceed on the premise that the factual allegations of the fact witnesses' affidavits are credible.

B.    Andrea Lyon

The court will permit Andrea Lyon to testify regarding the nature of the strategic decisions faced by trial counsel in capital cases generally and in Petitioner's case specifically. The court will not receive testimony from Ms. Lyon concerning the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases. If the government chooses to interview Ms. Lyon in advance of the October 5, 2009 hearing, Petitioner's counsel is directed to make the appropriate arrangements.

C.    Sheriff Ronald Hewitt

The court has considered whether to permit live testimony from Sheriff Ronald Hewitt about what Petitioner's co-defendant Brandon Basham said to Sheriff Hewitt about the alleged use of a purse strap to kill Alice Donovan and concerning Basham's so-called "deer statement." After considering the arguments of counsel and reviewing the briefs, the record,

and the arguments contained in the motion to reconsider, the court again finds it unnecessary to hear Sheriff Hewitt's testimony. He has testified under oath about the purse strap twice—at Petitioner's pretrial hearing on February 25, 2004, and at Basham's trial. The court finds there is no need for additional testimony to resolve the legal issue related to the purse strap.

With respect to Petitioner's claim concerning appellate counsel's alleged ineffectiveness for failing to appeal the court's refusal to admit into evidence Basham's "deer statement," the court finds that Sheriff Hewitt's testimony has been clear both times he has testified and that additional testimony from him would not impact Petitioner's claim related to this issue. Therefore, the court will not be receiving live testimony from Sheriff Hewitt.

D.    Margaret Melikian, D.O.

Petitioner listed Margaret Melikian, D.O., as expected to testify generally to her evaluation and assessment of Petitioner's cognitive deficits and mental illness, particularly her opinion that he meets the diagnostic criteria for Axis I diagnosis of Cognitive Disorder, Not Otherwise Specified. At the hearing, Petitioner's counsel stated "[I] think Dr. Melikian is sailing, Your Honor, the high seas. Don't know of her availability." Transcript of 8/11/09 Status Conference/Motion Hearing, at p.30. In response to a question about whether Petitioner intended to call Dr. Melikian, counsel responded: "Your Honor, she's simply out of communication. If I can contact her, if it appears that we would want to use her, I will contact Mr. Daley and we will contact the court, Your Honor, and ask you to rule on her appearance." Id. at 35.

The court will permit Petitioner's counsel until September 18, 2009, to determine if he can contact Dr. Melikian and would like to have her testify, to contact Mr. Daley and to file with the court a request to rule on her appearance.

II.    Petitioner has Waived the Attorney-Client Privilege

At the hearing, the court granted the government's motion [dkt. # 1205] for an order ruling that Petitioner has waived the attorney-client privilege by filing his motion for post-conviction relief pursuant to § 2255. The government sought to compel the production of all materials relating to Petitioner's trial counsel's representation, which the government claimed is necessary for its preparation for the § 2255 Hearing. The government further sought a court ruling that Petitioner's waiver permits his former trial counsel to discuss their representation with counsel for the government.

Petitioner returns with another request that the court reconsider its ruling on the waiver of the attorney-client privilege, complaining that the order is "substantially overboard and inadequately protective of the sanctity of attorney-client communications." (Pet.'s Mot. at 1.)  For the reasons that follow, the court denies the motion to reconsider.

Fulks' claim of ineffectiveness of counsel in his 197-page, 32-claim Amended Motion to Vacate forms the basis for an analysis of the waiver of the attorney-client privilege. Before considering the Petitioner's § 2255 claims, the court reviews the pertinent Fourth Circuit law on the attorney-client privilege.

A.    Case Law

The Fourth Circuit has observed that because the attorney-client privilege "'impedes

the full and free discovery of the truth,' it must be 'narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" In re: Grand Jury Subpoena v. Under Seal, 341 F.3d 331, 335 (4th Cir. 2003)(quoting Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998)); see also United States v. Aramony, 88 F.3d 1369, 1389 (4th Cir. 1996)(the attorney-client privilege interferes with the truth-seeking mission of the legal process because it is in derogation of the public's right to every man's evidence). Therefore, "the privilege 'is not favored by federal courts' and 'is to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" Aramony, 88 F.3d at 1389. "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability. The proponent must establish . . . that the particular communications at issue are privileged and that the privilege was not waived." United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)(internal citation omitted)).

Fulks fails to point to any specific items in counsel's files that are outside the scope of the waiver caused by his Motion. As outlined above, Fourth Circuit law regarding attorney-client privilege emphasizes the free flow of discovery in order to reach the truth and places the burden on the proponent of the privilege to show that it applies.

It is well-settled that when a defendant moves to vacate his conviction by claiming ineffective assistance of counsel, he waives the attorney-client privilege. See e.g., Johnson v. Alabama, 256 F.3d 1156, 1178 (11th Cir. 2001)(by alleging that his attorneys provided ineffective assistance of counsel in their choice of a defense strategy, petitioner put at issue—

and thereby waived—any privilege that might apply to the contents of his conversations with those attorneys to the extent those conversations bore on his attorneys' strategic choices); Tasby v. United States, 504 F.2d 332 (8th Cir. 1984)(discussed infra); Laughner v. United States, 373 F.2d 326 (5th Cir. 1967)(discussed infra).  By attacking the representation of his trial counsel, Petitioner has publicly assailed counsel's competence and put at issue privileged communications with them.

At the hearing, Petitioner's habeas counsel conceded that the government is entitled to interview Petitioner's trial counsel.  The court is persuaded by the authorities cited by the government that there has also been a waiver of the attorney-client privilege in this case in view of the claims that have been asserted in the § 2255 Motion, such that trial counsel's documents need to be produced for government counsel's review prior to the § 2255 Hearing.  As the court previously indicated, it wishes to avoid a situation in which trial counsel is on the stand and claims he does not remember and the court is forced to then take a recess and to allow the government and trial counsel to look through the documents and then resume the hearing.  Judicial economy and efficiency are better served by having the documents produced in advance of the § 2255 Hearing.

The court finds the pertinent case law supports waiver of the attorney-client privilege.  In Johnson v. Alabama, 256 F.3d 1156, 1178 (11th Cir. 2001), the court quotes with approval the holding of Laughner v. United States, 373 F.2d 326 (5th Cir. 1967):

> Having demanded and obtained a factual judicial inquiry into his claim that the attorney appointed to render him the assistance of counsel for his defense failed to discharge his responsibilities properly, appellant now proposes to

6

invoke the privilege accorded confidential communications between an attorney and his client to eliminate the one source of evidence likely to contradict his allegations. We are unable to subscribe to this proposition. The privilege is not an inviolable seal upon the attorney's lips. It may be waived by the client; and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue. The rule that a client waives his privilege by attacking the attorney's performance of his duties seems to have been adopted unanimously by those courts which have dealt with the question.

Johnson, 256 F.3d at 1178–1179.  The Johnson court continues:

Simply put, when a habeas petitioner such as Johnson launches an attack on the reasonableness of his attorney's strategy in conjunction with a claim of ineffective assistance of counsel, he puts at issue his communications with counsel relating to those strategic choices.  As Strickland itself emphasizes, the "reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, ... on information supplied by the defendant ... [and] ... inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's ... litigation decisions." "Because the reasonableness of counsel's acts ... depends critically upon information supplied by the [petitioner] or the [petitioner]'s own statements or actions, evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims." (citations and internal quotation marks omitted).

Id. at 1179.

The case of Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1975), likewise supports the court's finding that Petitioner has waived the attorney-client privilege regarding most of his communications with his trial counsel:

A client has a privilege to keep his conversations with his attorney confidential, but that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence. Here, the confidentiality of the attorney-client relationship was

breached by Tasby. Surely a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege. Such an incongruous result would be inconsistent with the object and purpose of the attorney-client privilege and a patent perversion of the rule. When a client calls into public question the competence of his attorney, the privilege is waived.

Id. at 336.

B.    Petitioner's Range of Claims

There is no dispute that Fulks has called into public question the competence of his

trial attorneys, thereby waiving his attorney-client privilege. He has failed to demonstrate that

any of his communications with his counsel have not been waived by the claims in his

motion, which cover the following comprehensive range of claims of ineffectiveness:

Claim I:  Petitioner's trial counsel were ineffective for failing to present a meaningful mental health case in mitigation inasmuch as they did not call critical expert witnesses who were prepared to educate the jury on Petitioner's multiple impairments

Claim II:  Petitioner's trial counsel were ineffective for not realizing the Ward/Bruning testimony could come in as rebuttal testimony

Claim III:  Petitioner's trial counsel were ineffective for failing to undertake an adequate and meaningful mitigation investigation

Claim IV:  Trial counsel were ineffective by using untrained and unsupervised law students to conduct key aspects of the investigation

Claim V:  Petitioner's appellate counsel were ineffective for failing to appeal the Court's jury charge on mitigation as violating the Eight Amendment inasmuch as it created a substantial risk that the jury would screen out, and thus fail to consider and give effect to, factors that were unquestionably mitigating

Claim VI:  Trial counsel were ineffective for failing to object to the Government's  imposition of a nexus requirement on the jury's mitigation

4:02-cr-00992-JFA    Date Filed 09/11/09    Entry Number 1236    Page 9 of 14
Case 1:05-cr-00264-RDA    Document 573-1    Filed 10/14/15    Page 10 of 15 PageID#
1030

finding

Claim VII:  Petitioner's trial counsel were ineffective in advising Petitioner to give a statement to the FBI when no proffer letter or plea agreement was in place

Claim VIII:  Petitioner's trial counsel were ineffective in failing to request that the statutory catch-all mitigating factor and the minor participation factor be included in the verdict form so that the jury could give meaningful effect or a reasoned moral response to Petitioner's mitigating evidence

Claim IX:  Petitioner suffered a complete miscarriage of justice when he relied on the Court's incomplete and incorrect explanation of the Pinkerton doctrine and agreed to a guilty plea as to the carjacking count despite the fact that such plea ran completely afoul of Petitioner's own statements and the evidence presented

Claim X:  Petitioner was denied the effective assistance of counsel when trial counsel unreasonably advised Petitioner to plead guilty based upon a grossly inaccurate analysis of the Pinkerton doctrine and an improper factual basis

Claim XI:  Trial counsel rendered ineffective assistance in advising Petitioner to plead guilty because the distinction between intent under Pinkerton and the gateway intent factors is far too fine for a lay juror to appreciate

Claim XII:  The Eighth Amendment precludes the application of Pinkerton in a capital case

Claim XIII:  Petitioner's trial counsel were ineffective for failing to offer additional and readily discoverable evidence of Basham's leadership and manipulation that would have firmly established Petitioner's minor participation

Claim XIV:  Petitioner's trial counsel were ineffective for failing to present meaningful  evidence that Petitioner would not be dangerous in the future to prison inmates or BOP personnel

Claim XV:  Petitioner's trial counsel were ineffective in their conduct of voir dire inasmuch as their questioning of prospective jurors fell below accepted capital defense practices

4:02-cr-00992-JFA    Date Filed 09/11/09    Entry Number 1236    Page 10 of 14
Case 1:05-cr-00264-RDA    Document 573-1    Filed 10/14/15    Page 11 of 15 PageID#
1031

Claim XVI:  Trial counsel were ineffective inasmuch as the failure to read questionnaires and to examine prospective jurors on the questionnaires fell below accepted capital defense practices

Claim XVII:  Trial counsel were ineffective for choosing to sit automatic death veniremen on the jury instead of making a motion for additional strikes

Claim XVIII:  Petitioner's appellate counsel were ineffective for failing to appeal this Court's refusal to admit statements made by Basham tending to show that Basham killed Alice Donovan

Claim XIX:  Petitioner's due process rights were violated by the Government's presentation of inconsistent theories

Claim XX:  The Prosecution's attempts to influence witness testimony were inappropriate and rendered the resulting verdict a denial of due process

Claim XXI:  The Government violated its obligations under Brady v. Maryland by failing to disclose to Petitioner information material to his ability to prepare and present a defense at trial and sentencing denying Petitioner his rights under the Fifth, Sixth and Eighth amendments to the United States Constitution

Claim XXII:  Prosecutorial misconduct in closing argument denied Petitioner his constitutional right to due process and his rights under the Sixth and Eighth Amendments to the United States Constitution

Claim XXIII:  Trial counsel were ineffective in failing to object to the prosecutor's improper and unduly prejudicial statements and closing argument

Claim XXIV:  The Government engaged in serious misconduct by asserting that Petitioner had been armed with a .45 caliber revolver

Claim XXV:  Trial counsel were ineffective for failing to question Ronnie Fulks about the .45 caliber revolver

Claim XXVI:  Trial counsel were ineffective for failing to prepare key witnesses for  trial testimony

Claim XXVII:  Trial counsel were ineffective in advising Petitioner to plead guilty because this allowed the prosecution to present Petitioner's prior bad

10

4:02-cr-00992-JFA    Date Filed 09/11/09    Entry Number 1236    Page 11 of 14
Case 1:05-cr-00264-RDA    Document 573-1    Filed 10/14/15    Page 12 of 15 PageID#
1032

acts in conjunction with the evidence related to the offense charged

Claim XXVIII: Trial counsel were ineffective in failing to explain to the jury
the concept of acceptance of responsibility

Claim XXIX: Trial counsel were ineffective in failing to object to the
Government's insertion of religion into Petitioner's trial

Claim XXX: Petitioner's trial counsel were ineffective for failing to introduce
Petitioner's artistic talent as a mitigating factor

Claim XXXI: The cumulative errors set forth in this Petition, and the
prejudice that resulted from those errors, denied Petitioner a fundamentally fair
trial in violation of rights guaranteed under the Fourth, Fifth, Sixth and Eighth
Amendment to the United States Constitution

Claim XXXII: The manner in which the Government would carry out
Petitioner's execution would violate the Eighth Amendment

While Petitioner generally complains that his attorney-client communications contain

trial counsel's impressions about a "range of matters related to their representation of him

that 'go beyond any of the claims raised in the § 2255 motion,'" (Pet.'s Mot. at 14.), it is

difficult to imagine a category of matters that are not encompassed by the claims raised in

the § 2255 motion. Petitioner himself has utterly failed in any of its numerous pleadings and

arguments to the court to specify those "matters." Fourth Circuit law requires Fulks to show

what part of the communications at issue remain protected by the attorney-client privilege.

Having failed to do so, the court is constrained to find Petitioner has waived the attorney-

client privilege as to all information related to any of the claims he asserts in his § 2255

Motion.

11

4:02-cr-00992-JFA    Date Filed 09/11/09    Entry Number 1236    Page 12 of 14
Case 1:05-cr-00264-RDA    Document 573-1    Filed 10/14/15    Page 13 of 15 PageID#
1033

C.    Petitioner's Waiver of Attorney-Client Privilege

Specifically, the court finds Petitioner has waived the privilege as to any information in trial counsel's files regarding a mental health strategy, including, but not limited to, correspondence, reports, and discussions regarding his mental health and the decisions regarding his defense related to mental health, as well as their failing to undertake an adequate and meaningful mitigation investigation and presentation. All this information is relevant to why certain witnesses were and were not called.

The court finds Petitioner has waived the privilege regarding any information, thought processes, discussions, and strategy regarding the possible testimony related to the incident and telephone call involving Ward/Bruning, regarding all information relating to or provided by law students during the investigation and presentation of his case, and any information obtained from other sources relating to the aspects of Fulks' childhood he claims should have been presented.

The court finds Petitioner has waived the privilege regarding the information his counsel had available to them upon which to base their advice, and, also, any notes, e-mails, and correspondence which may have led to or addressed the strategies used in his case, including anything that may have affected his counsel's decisions and advice to him, including trial counsel's files in order to refute Fulks' claim that his counsel was ineffective for advising him to plead guilty, and that counsel's advice was based on a "grossly inaccurate analysis of the Pinkerton doctrine" which they provided to Fulks. (Amended Mot. to Vacate, pp. 112-133.). He has waived the attorney-client privilege regarding discussions about the

12

merits, strategic considerations and ultimate decision to plead guilty.

The court finds Petitioner has waived the privilege regarding anything in trial counsel's files relating to the investigation of Fulks' and Basham's roles in the crimes and potential witnesses regarding the matter.

The court finds Petitioner has waived the privilege regarding any of trial counsel's notes, records, and information as to juror selection, the jury charge and verdict form.

The court finds Petitioner has waived the privilege regarding any information in trial counsel's records tending to show that Fulks assisted with or participated in the rape of Samantha Burns and any notes or correspondence regarding the possible testimony of Ronnie Fulks.

Therefore, in accordance with the court's ruling at the hearing and subsequent order, Petitioner's counsel is ordered to provide immediate production to the government of the disks of scanned documents in counsel's possession, together with the index to said scanned documents. The scanned documents are to be produced in their native form so that they are searchable. To the extent that counsel has been able to determine which documents were not scanned from the file boxes, counsel is directed to provide this information and the unscanned documents to the government.

Any and all materials pertaining to communications and advice passing between Petitioner and trial counsel, John Blume, Sherri Johnson, and William Nettles, pretrial and trial, are ordered to be produced to the government immediately, whether the notes have been scanned or not. Petitioner's counsel need not produce budget documents, payment vouchers

4:02-cr-00992-JFA    Date Filed 09/11/09    Entry Number 1236    Page 14 of 14
Case 1:05-cr-00264-RDA    Document 573-1    Filed 10/14/15    Page 15 of 15 PageID#
1035

and invoices from experts.

Once the government has had an opportunity to review the electronic production and the notes produced, the court will be available for another hearing prior to the § 2255 Hearing to determine whether the order of production should be expanded. The government will not use information received from Fulks' trial counsel in any re-prosecution of Fulks in the event that his sentence is vacated. Furthermore, the government will not use and will not make copies of any material or information in trial counsel's files that is not related or relevant to a claim in Fulks' Amended Motion to Vacate. In the event that a retrial is necessary, the court will not permit any counsel for the Government who has viewed purportedly privileged documents contained in the Petitioner's files to participate in the retrial of the case against him, nor interact or communicate with counsel who retry the case.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.

September 11, 2009                          Joseph F. Anderson, Jr.
Columbia, South Carolina                    United States District Judge

14