IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 1:05-cr-264 (LMB) |
| THOMAS MOROCCO HAGER, | ) | |
| | ) | |
| Defendant. | ) | |

### RESPONSE OF THE UNITED STATES TO
### DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Mr. Hager's memorandum (Dkt 573) correctly states that Mr. Hager and the government have failed to reach agreement on two components of a protective order to cover the production by Mr. Hager in this § 2255 proceeding. First, the parties dispute whether (in the event that Mr. Hager obtains a new sentencing or new trial) the court presiding over that proceeding should have the discretion to determine whether privilege-waived materials may be used in cross-examination, impeachment, and rebuttal. Second, the parties dispute whether the government lawyers who view privilege-waived materials in this § 2255 proceeding—and especially AUSA Jim Trump, who has been involved with Mr. Hager's prosecution from the beginning and is the only remaining DOJ employee with first-hand knowledge of the case—must be walled off from any resentencing or retrial on the theory that they will have been "tainted" by exposure to Mr. Hager's privilege-waived materials.

The government believes that, in the event Mr. Hager obtains a resentencing or retrial, the parties at that proceeding should be restored to as much the same "starting gate" as is practically possible, without an unfair advantage to *either* side. Taking away discretion from the district court presiding over a resentencing or retrial to determine the admissibility of privilege-waived materials would unfairly advantage Mr. Hager and unfairly prejudice the government

because it would create zones in which the government could not effectively cross-examine, impeach, or rebut evidence offered by Mr. Hager—even if evidence or testimony were presented that all parties knew was false based on materials produced by Mr. Hager in this § 2255 proceeding. Similarly, excluding the government lawyers, and especially Mr. Trump, from any resentencing or retrial would bestow a massive and unfair tactical windfall on Mr. Hager—one unsupported in the law where the government has obtained the materials in question through Mr. Hager's voluntary waiver and not by any wrongful conduct or compelled testimony.

Accordingly, and as discussed in more detail below, the government asks that the Court decline to enter the proposed protective order submitted by Mr. Hager and instead enter the proposed protective order included as Exhibit 1 to this response.

I.    **Any protective order entered by the Court should only apply to materials for which Mr. Hager can articulate a basis for the privilege.**

As an initial matter, it is likely that a substantial portion of the materials to be produced by Mr. Hager in this § 2255 proceeding were never privileged in the first place, and thus should be available for use in any future proceedings. The Fourth Circuit has "stated repeatedly that the attorney-client privilege is to be strictly construed, in order to harmonize it, to the extent possible, with the truthseeking mission of the legal process. Generally, the attorney-client privilege protects from disclosure communications from a client to his attorney made in confidence and concerning legal advice sought from his attorney, but the mere relationship of attorney-client does not warrant a presumption of confidentiality." *United States v. Tedder*, 801 F2d 1437, 1441 (4th Cir. 1986). A claim of privilege must be made and sustained on a document-by-document basis; a blanket claim of privilege that does not specify what information is protected will not suffice." *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992). For the

same reason, Mr. Hager cannot claim any potential "taint" where government counsel views non-privileged materials maintained in Mr. Hager's trial counsel's files.

**II.    If Mr. Hager succeeds in obtaining a new sentencing or new trial, the court presiding over that proceeding should have the discretion to determine whether privilege-waived materials may be used in cross-examination, impeachment, and rebuttal.**

For those materials for which Mr. Hager can make a sufficient showing of privilege (but for his waiver through his § 2255 motion), Mr. Hager contends that the Court should enter an order that, in the event of a resentencing or retrial, the government will be precluded from relying on any of these materials for *any* purpose. While the government is willing to agree that it may not use privilege-waived materials in its case-in-chief in any resentencing or retrial, it is not fair or appropriate to bar the government from using privilege-waived materials for purposes of cross-examination, impeachment, and rebuttal. Further, entering a broad *ex ante* order at this stage in the proceedings would be premature. Any decision about admissibility should be made by the court presiding over any resentencing or retrial, which will have the benefit not only of this Court's decision in this § 2255 proceeding but also will have before it the context and circumstances of any further proceedings.

Mr. Hager contends that "[c]ontrolling Fourth Circuit precedent prohibits the use of privileged or confidential material disclosed during a section 2255 proceeding at any retrial or resentencing of the defendant for *any purpose*." (Dkt 573 at 4 (emphasis added).) Not so. The cases on which Mr. Hager primarily relies, *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003), and *United States v. Nicholson*, 611 F.3d 191 (4th Cir. 2010), never considered the use of privilege-waived materials in cross-examination, impeachment, or rebuttal. To the contrary, *Bittaker*'s discussion of the "munificent windfall" that would occur if the government were permitted to use privilege-waived materials plainly focused only on such use in the government's

case-in-chief. For example, the *Bittaker* court specifically emphasized the risk that defense counsel "would have to consider the very real possibility that they might be called to testify against their clients, not merely to defend their own professional conduct, but to help secure a conviction or retrial." 331 F.3d at 722. In *Nicholson*, the Fourth Circuit relied on *Bittaker*'s reasoning and similarly did not consider the use of privilege-waived materials for cross-examination, impeachment, or rebuttal. Subsequent Ninth Circuit cases have explicitly recognized that *Bittaker* never addressed the use of privilege-waived materials outside the government's case-in-chief. *See, e.g.*, *Hunter v. Yates*, 2010 WL 5300904, at *8 (N.D. Cal. Dec. 20, 2010) ("[W]hile *Bittaker* certainly narrowed the scope of a habeas petitioner's waiver of attorney-client privilege when bringing an ineffective assistance of counsel claim, the Ninth Circuit did not directly address whether the prosecution may use otherwise privileged materials obtained in a collateral proceeding for impeachment and rebuttal purposes.").

The court in *Bittaker* itself acknowledged that it had been "unable to find . . . very many cases where the prosecution has even attempted to use privileged information . . . in a defendant's retrial." 331 F.3d at 727. And the only case of which the government is aware in which a court explicitly considered the potential use of privilege-waived materials *outside* of the government's case-in-chief recognized the risk of unfairness in barring the government from using privilege-waived materials for impeachment, cross-examination, or rebuttal:

> [S]uppose petitioner claimed ineffective assistance of counsel for failure to present an alibi defense and supported the claim with affidavits of ten credible alibi witnesses, all of whom were known and available to defense counsel at trial. . . . Suppose . . . that . . . the attorney testifies in the habeas proceeding that he did not present the [alibi] defense because, although the ten witnesses were credible, [the] client told him that the witnesses were lying and he had paid them to create the affidavits.

*Fears v. Warden*, 2003 WL 23770605, at *2 (S.D. Ohio 2003). Under such circumstances, the *Fears* court expressed concern that government counsel would be obliged to "stand silent" if the ten alibi witnesses were called at a retrial. "In this Court's mind, preventing the perjury outweighs the habeas petitioner's interest in reasserting the privilege after he has once waived it." *Id.* at *2; *see also, e.g.*, *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987) (noting that "it has long been held that once waived, the attorney-client privilege cannot be reasserted" and holding that where defendant's attorney "testified at the hearing to withdraw the guilty plea, the attorney-client privilege could not bar his testimony on the same subject at [defendant's] trial").

Imposing a broad order precluding the government from using privilege-waived materials for any purpose—and precluding the presiding judge at the resentencing or retrial from making that determination—would also be inconsistent with long-accepted approaches toward privilege waiver. As Judge O'Scannlain noted in concurring in *Bittaker*, "[f]ederal courts have generally concluded that [privilege-waived] information, once disclosed to a party opponent, waives the attorney-client privilege as to future proceedings." 331 F.3d at 729 n.2 (citing, *inter alia*, *In re Martin Marietta Corp.*, 856 F.2d 619, 623 (4th Cir. 1988) ("Most courts continue to state the rule of implied waiver in absolute form-any disclosure of a confidential communication outside a privileged relationship will waive the privilege as to all information related to the same subject matter.")).

Mr. Hager cites *Simmons v. United States*, 390 U.S. 377 (1968), for the contention that "permitting the government to use [privilege-waived] material for any purpose at retrial or resentencing would give the government a grossly unfair advantage that it did not have during the original trial," leading to what he refers to as a "constitutionally untenable dilemma.' (Dkt

5

573 at 6.) Mr. Hager misreads *Simmons*. That case held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt." 390 U.S. at 394. But as Judge O'Scannlain noted in *Bittaker*, "even under *Simmons*, the prosecutor may use compelled information under some circumstances, for example to impeach false testimony introduced at trial." 331 F.3d at 732. The Fourth Circuit has recognized the same point. *See, e.g.*, *United States v. Helms*, 703 F.2d 759, 764 (4th Cir. 1983) ("[T]he Supreme Court has held that testimony taken at an evidentiary hearing on a motion to suppress is inadmissible at the trial-in-chief.'" (quoting *Doe v. Boyle*, 494 F.2d 1279, 1280 (4th Cir. 1974))); *see also, e.g.*, *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1291 (9th Cir. 1994) ("[While t]he Fifth Amendment protected [the defendant] from the use of his suppression hearing testimony in the Government's case in chief to prove his guilt[, i]t did not protect him from impeachment for testifying falsely."). *Simmons* does not preclude the potential use of privilege-waived materials for cross-examination, impeachment, or rebuttal.

For all these reasons, and for the additional practical concern that the court presiding over any resentencing or retrial should retain the discretion to make admissibility determinations in the context of the proceeding before it, the Court should decline to enter the broad *ex ante* order proposed by Mr. Hager and instead order that the government may not use privilege-waived materials in its case-in-chief at any resentencing or retrial. Such an approach will ensure that the parties return to the same "starting gate," will permit Mr. Hager to proceed on his ineffective assistance claim without the risk that the government will use his own lawyers to prove his guilt against him at trial, and will provide the government with security that it will not be forced to stand mute in the face of false evidence in any further proceedings.

**III.    Mr. Hager's contention that government counsel who view privilege-waived materials may not subsequently work on a resentencing or retrial has no basis in law and would be unfair to the government.**

Mr. Hager contends that any government counsel or agents who review privilege-waived materials produced in this habeas proceeding should be precluded from working on any resentencing or retrial. The premise of Mr. Hager's argument is that these prosecutors would be "tainted" by their exposure to Mr. Hager's privilege-waived materials. But the broad remedy of exclusion that he seeks is simply not contemplated by *Kastigar v. United States*, 406 U.S. 441 (1972), and its progeny, including *United States v. Squillacote*, 221 F.3d 542 (4th Cir. 2000), and *United States v. Khan*, 309 F. Supp. 2d 789 (E.D. Va. 2004). And for good reason: there is no "taint" here because this case does not involve compelled testimony or wrongful conduct on behalf of the government. Further, this case involves an evidentiary privilege rather than a constitutional one.

Even if the *Kastigar* analysis should be applied here, however, it is inappropriate to issue an *ex ante* order precluding government counsel from being involved in any resentencing or retrial. *Kastigar* "imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." 406 U.S. at 460. In a "*Kastigar* hearing," it is up to the government to make a showing that its evidence is untainted. Given the age of this case—Barbara White was killed in 1993, and trial was conducted in 2007—it is highly unlikely that the government would attempt to use any privilege-waived materials to conduct further investigations or develop new evidentiary theories. Regardless of what evidence the government would eventually seek to rely on, a *Kastigar* hearing could only be conducted in the context of a resentencing or retrial, not during the § 2255 proceedings. Such an analysis is simply not possible at this stage—before the government has attempted to re-marshal its evidence, before this Court has ordered a new

7

sentencing or new trial, and before Mr. Hager has even produced the privilege-waived documents at issue.

*Kastigar* considered whether the federal "use and derivative use" immunity statute provided sufficient protection to a defendant compelled to testify after raising Fifth Amendment objections. Answering that question in the affirmative, *Kastigar* noted that the Fifth Amendment effectively bars "the use of compelled testimony, as well as evidence derived directly and indirectly therefrom." 406 U.S. at 453. *Kastigar* focused on the exclusion of *evidence* and derivative *evidence*, not the exclusion of prosecutors exposed to that evidence. Drawing an analogy to coerced confessions, *Kastigar* noted that "[a] coerced confession . . . is inadmissible in a criminal trial, but it does not bar prosecution." *Id.* at 461. The Court could have added that even where there is a coerced confession, prosecutors aware of the confession are not typically disqualified from the case.

The Fourth Circuit applied *Kastigar* in *United States v. Squillacote*, 221 F.3d 542 (4th Cir. 2000). In *Squillacote*, the government intercepted several telephone calls between the defendant and her psychotherapists. She contended that the FBI agent who listened to these materials used them to build other aspects of the investigation against her, and that "any evidence derived from the privileged information should have been suppressed" after a *Kastigar* hearing. The Fourth Circuit rejected this argument. While *Kastigar* establishes a "total prohibition" on the "use of compelled testimony as an investigatory lead," 221 F.3d at 559, "the mere existence of . . . privileged information" does ***not*** "bring[] to bear the full weight of *Kastigar*." 221 F.3d at 559. "[A] *Kastigar* analysis is not triggered by the existence of evidence protected by a privilege, but instead by the government's effort to compel a witness to testify over the witness's claim of privilege." *Id.* at 559. Other courts of appeal have adopted this approach. *United States v.*

8

*Warshak*, 631 F.3d 266, 294 (6th Cir. 2010) ("We agree [with *Squillacote*], and hold that, absent compelled testimony, the full protections of *Kastigar* are inapplicable.").

*Squillacote* further held that where—as here—the case involves not a constitutional privilege but a testimonial privilege such as the attorney-client privilege, there is no need to suppress evidence *derived* from the privileged materials.  "[B]ecause 'testimonial exclusionary rules and privileges contravene the fundamental principle that the public . . . has a right to ever man's evidence,' any such privilege 'must be strictly construed.' Thus, we do not believe that suppression of any evidence derived from the privileged [materials] would be proper [where] the privilege [at issue] is a testimonial or evidentiary one, and not constitutionally-based." 221 F.3d at 560. Again, other courts of appeals have adopted this approach. *See also, e.g.*, *United States v. Warshak*, 631 F.3d 266, 294 (6th Cir. 2010) ("We have found no subsequent authority [since *Squillacote*] indicating that such derivative evidence is subject to suppression, and we agree that it is unwise to extend the fruit-of-the-poisonous-tree doctrine beyond the context of constitutional violations."); *United States v. White*, 970 F.2d 328, 336 (7th Cir. 1992) ("The attorney-client privilege is a testimonial privilege. Consequently, so long as no evidence stemming from the breach of the privilege is introduced at trial, no prejudice results.").

*Squillacote* did not explicitly address the attorney-client privilege, but this Court in *United States v. Khan*, 309 F. Supp. 2d 789 (E.D. Va. 2004), applied *Squillacote* to conclude that *Kastigar* did not apply in a case involving the attorney-client privilege: "even if the testimony of a defendant's attorney should have been suppressed on the basis of the attorney-client privilege, the 'fruit of the poisonous tree' doctrine does not apply to suppress evidence derived from the attorney's testimony." *Id.* at 801. As Mr. Hager correctly notes, "in an abundance of caution," this Court then directed the government to submit information going to whether it had obtained

9

the evidence in question "from a legitimate source wholly independent of the compelled testimony." *Id.* But, as noted above, even if the Court sought to follow such an approach here, it would not be possible for the government to make such a showing at this stage in the proceedings because the government has not yet re-marshaled its evidence, this Court has not yet ordered a new sentencing or new trial, and Mr. Hager has not yet even produced the privilege-waived documents at issue. Any form of *Kastigar* analysis is manifestly premature.

Mr. Hager contends that his approach is "consistent with *Bittaker*," but even that case did not contemplate the exclusion of trial counsel in the manner suggested by Mr. Hager here.[1] So long as the government is prohibited from using any privilege-waived materials in its case-in-chief at any resentencing or retrial (and the government is willing to agree to such a prohibition), any prejudice to Mr. Hager from government counsel's simply being exposed to privilege-waived materials would be *de minimis*. Indeed, *Bittaker* approvingly cited *United States v. Rogers*, 751 F.2d 1074 (9th Cir. 1985), where the government obtained information from a defendant's attorney potentially in violation of the defendant's attorney-client privilege, the court held that "any prejudice to [the defendant] from the [attorney's] disclosures to [the government agent] . . . can be neutralized by the exclusion of improperly obtained evidence at trial." *Id.* at 1079; *see also, e.g.*, *United States v. Slough*, 641 F.3d 544, 553 (D.C. Cir. 2011).[2]

---

[1] Mr. Hager also contends that the Fourth Circuit in *Nicholson* "ordered that the case on remand be assigned to a different federal district judge than the one who presided over the section 2255 proceeding" because—according to Mr. Hager—the first judge "had been exposed to privileged communications during the section 2255 proceeding, and the [Fourth Circuit] found that reassignment was necessary because the original judge 'cannot reasonably be expected to erase the earlier impressions from his mind . . . .'" This mischaracterizes *Nicholson*, which specifically noted that the district court's credibility determinations about one of the witnesses made the case "one of those unusual circumstances where both for the judge's sake and the appearance of justice an assignment to a different judge is salutary and in the public interest, especially as it minimizes even a suspicion of partiality." 611 F.3d at 217 (internal quotation marks omitted). The court of appeals "equate[d] this matter with those in which the Government has breached a plea agreement and a remand for resentencing by a new judge is essential to preserving the appearance of justice." *Id.* at 218. In other words, the reassignment to a new judge was *not* made because the first judge had been exposed to privilege-waived materials.

[2] Mr. Hager cites *United States v. Basham*, 2012 WL 1130657 (D.S.C. Apr. 4, 2012) and *United States v. Fulks*, No. 02-992, Dkt 1236 (D.S.C. Sept. 11, 2009), for the proposition that "[a]t least one district court in the Fourth Circuit

10

Finally, and not least of all, disqualifying government counsel and agents here—especially Mr. Trump and Detective Murphy—would not be "fair or feasible" in this case. Barbara White was killed in 1993. Detective Murphy was assigned to the case then. Mr. Trump became involved in the case a few years later and has worked on it ever since. Detective Murphy has since retired and is now employed full time by Culpepper Public Schools, although he is willing to work on habeas matters in his spare time if necessary. In other words, Mr. Trump is the only person remaining who has any first-hand knowledge of the investigation, trial, sentencing, and appeal of the case. If Mr. Trump and Mr. Murphy are forced to recuse themselves from any resentencing or retrial, Mr. Hager will receive a massive and unfair tactical windfall. *See, e.g.*, *United States v. Sampson*, 82 F. Supp. 3d 502, 523 (D. Mass. 2014) ("Sampson is essentially contending that the government's trial team be composed of prosecutors who are not fully familiar with the record of this case, including the substantial evidence concerning Sampson's mental condition that was presented in court in 2003, and the additional information, filed by Sampson for the public record, in this § 2255 proceeding. The court agrees with the government that this remedy would not be fair or feasible.").

## CONCLUSION

As observed by the court in *Bittaker*, "the fairness principle" regarding the use of privilege materials in a habeas proceeding is designed to "prevent[] a party from using the privilege as both a shield and a sword." 331 F.3d at 719. For the reasons stated above, Mr. Hager's Motion for Protective Order (Dkt 573) should be denied and his proposed Order should not be entered. In its place, the government requests that the Court enter the proposed order attached as Exhibit 1 to this pleading.

---

has excluded government attorneys exposed to privileged material in section 2255 proceedings." (Dkt 573 at 8.) But neither *Basham* nor *Fulks* considered *Kastigar*, *Squillacote*, or any of the analysis above; indeed, it is not clear whether the requests to exclude government counsel were even *opposed* in those cases.

Date: October 26, 2015

Respectfully submitted,

Dana J. Boente
United States Attorney


By: _____/s/_____

James L. Trump
Christopher Catizone
Assistant United States Attorneys
Eastern District of Virginia

The Justin W. Williams
            U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:         (703) 299-3700
Fax:           (703) 299-3980
jim.trump@usdoj.gov
christopher.catizone@usdoj.gov

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2015, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

(NEF) to all counsel of record.


Date: October 26, 2015                              Respectfully submitted,

                                                    Dana J. Boente
                                                    United States Attorney


                                    By:  _____/s/_____
                                                    James L. Trump
                                                    Christopher Catizone
                                                    Assistant United States Attorneys
                                                    Eastern District of Virginia

                                                    The Justin W. Williams
                                                           U.S. Attorney's Building
                                                    2100 Jamieson Avenue
                                                    Alexandria, VA 22314
                                                    Phone:        (703) 299-3700
                                                    Fax:          (703) 299-3980
                                                    jim.trump@usdoj.gov
                                                    christopher.catizone@usdoj.gov