1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .      Criminal No. 1:05cr264-3
                              .
     vs.                      .      Alexandria, Virginia
                              .      June 23, 2016
THOMAS MOROCCO HAGER,         .      10:12 a.m.
                              .
              Defendant.      .
                              .
. . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE PLAINTIFF:              JAMES L. TRUMP, AUSA
                               United States Attorney's Office
                               2100 Jamieson Avenue
                               Alexandria, VA 22314


FOR THE DEFENDANT:             BLAIR G. BROWN, ESQ.
                               Zuckerman Spaeder LLP
                               1800 M Street, N.W., Suite 1000
                               Washington, D.C. 20036
                                 and
                               JULIE BRAIN, ESQ.
                               916 South 2nd Street
                               Philadelphia, PA 19147


OFFICIAL COURT REPORTER:       ANNELIESE J. THOMSON, RDR, CRR
                               U.S. District Court, Fifth Floor
                               401 Courthouse Square
                               Alexandria, VA 22314
                               (703)299-8595



(Pages 1 - 17)



COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

P R O C E E D I N G S

(Defendant not present.)

THE CLERK:  Criminal Case 05-264-3, United States of America v. Thomas Morocco Hager.  Will counsel please note their appearances for the record.

MR. TRUMP:  Good morning, Your Honor.  Jim Trump on behalf of the United States.

THE COURT:  Good morning.

MR. BROWN:  Good morning, Your Honor.  Blair Brown and Julie Brain for the defendant, Mr. Hager.

THE COURT:  All right.  This matter is before the Court on the defendant's motion to proceed ex parte and under seal on a portion of defendant's position on scheduling.  First of all, I looked at the redacted versus the unredacted pleadings.  In this case, there's nothing in the unredacted document that in my view is sufficiently sensitive that it justifies being sealed, so I'm denying the motion to proceed ex parte for purposes of today's hearing, and that motion will be filed unredacted.

Now, having said that, we have to get this case moving, and I did get just before I came on the bench with another matter the government's position on paper that they still need some discovery, but at this point, Mr. Trump, I think the government just has to file an answer as best you can with what you've got, because we did give you extensive

discovery, and we did -- I assume you've talked extensively with the prior trial counsel already.

If you'll go to the lectern and tell me if that's not correct?  I mean, you've got access to their files.

MR. TRUMP:  Yes.

THE COURT:  And have you not talked with them?

MR. TRUMP:  We spoke with them just about their files.

THE COURT:  But their files would reflect, for example -- because one of your concerns is by not knowing the identities of these witnesses who are referenced in the complaint -- or in the motion, you're saying that, you know, you can't determine whether counsel did, in fact, approach that person at that time and the person refused to talk to them or whether they didn't even approach them at all.

You also don't know whether the defendant told counsel:  Go speak to these people.  And I understand that makes it difficult, but, you know, in the average civil case, a defendant responding to a complaint might not necessarily have that information at the get-go, either.

MR. TRUMP:  Well, Judge, here's --

THE COURT:  And, I'm sorry, let me go on further.  I mean, this was a 200-page initial motion with a lot of detail. I am assuming the trial counsel have read that motion and they could certainly, I would think, be able to piece together, oh,

4

yeah, I remember, you know, from the description of a particular witness, we did try to talk to that person, they wouldn't talk to us, or they talked to us and they only told us X, Y, and Z.

I mean, they must be able to put some of it in context.

MR. TRUMP:  Well, here's the short answer:  We can probably find out through trial counsel's records who they talked to back in 2005, '6, and '7.  They have notes of lists of people that they want to contact, a litigation specialist who would go out and interview them.  We can't compare them to the people that habeas counsel contacted because we don't know who they are.

So you alluded to this issue at the last hearing, that some witnesses might have been very, very reluctant to cooperate with trial counsel, but five-six-seven years later, when they know what the stakes are, they say, oh, okay, we'll talk to you.  We can't make that comparison because we don't have the two lists.

THE COURT:  I understand, but at this point, this case has to start gelling.  I can't approach the Fourth Circuit to further address this issue about the budget for defendant's counsel without having some sense of the parameters of what, if any, discovery is going to be necessary at this time.

MR. TRUMP:  At the minimum, Judge, we just want the

5

names.  How difficult would it be to look at the pleading where it says witness interview, investigator notes, just put the name of the witness?  We're entitled to that, Judge.

THE COURT:  Well, you would --

MR. TRUMP:  In any other 2255 context, you would demand that information.  It can't be a game of hide-and-seek at this point.

THE COURT:  All right.  Let me hear from Mr. Brown. I mean, at some point, these names are going to come out, and it's faster and easier to have them come out now than later. You're asking for discovery, you're citing the Court to the Rules of Civil Procedure.  Under the Rules of Civil Procedure, the first question of discovery that both sides would have to answer, who are your witnesses, not only by their name but identify location of these witnesses.  So why should we not do that now so that we can get this case framed appropriately?

MR. BROWN:  Well, Your Honor, I certainly understand the process in civil cases.  I guess the issue for us is, you know, we have filed a pleading with allegations --

THE COURT:  No, answer my question directly:  What is the problem -- since you've referenced statements from these witnesses, you've referenced information from witnesses that you feel is relevant to your motion, why should the government not get those names at this point?

MR. BROWN:  The government -- we could provide the

6

government those names.  We have fairly detailed pleadings. We've provided extensive material, including records, medical records, criminal records, juvenile records we have obtained, and much of that information that is included in the, in the paragraphs of the complaint that they -- excuse me, of the motion that they're referring to is included in those records, but yes, we could provide the government the names.

The issue for us, Your Honor, is that at the moment, discovery is a one-way street, and we do not know at this juncture what the government's response is going to look like, whether it is going to be more equivalent to a civil answer or whether it's going to be more in the nature of a filing supported by evidentiary material, evidentiary material they obtained from us in discovery, evidentiary material they obtained in the approximately 12 years of pretrial investigation.

THE COURT:  Well, I can almost guarantee you that's what it's going to look like because that's the normal practice for how we handle habeas cases in this district.  So I want to get this case moving; I'm sure you do, too; and the only way in which I can get the case moving and to have you-all know what you need to respond to is to get an answer from the government.

And again, the government's been given by this Court and Judge Ellis a 90-page limit on the response, not including any attachments, to respond to the 200-page motion that started

7

this litigation.  They can't do it without having the kind of information that Mr. Trump has indicated.

So I am going to require that you immediately provide the government with the names of all the witnesses whose statements are referred to in the, in the motion so that they can check them with defense counsel to find out what, if anything, they did in terms of investigating those matters that you've referenced in the motion.

MR. BROWN:  I understand, Your Honor.  The situation that we find ourselves in and the reason we filed something with the Court before this hearing is that we are concerned about a situation in which the government has, having taken the discovery it received from us, files its response, and we are put in the position of having to respond to evidentiary material with evidentiary material, without a sufficient opportunity or resources to respond to that.

THE COURT:  At that point, once the answer has been filed, we'll have the parameters of the case.  There may be some issues that the government's not contesting.  They may concede certain issues in your motion, all right, factually.  Then you don't need any further evidence on that issue.  It may be a legal argument that's all that's needed.

Whether or not after you see the government's answer, whether then -- that's the appropriate time to be filing a motion for discovery, and at that point, we will be addressing

8

the further budget, if any, that we need for this case.

Again, without having the government's answer and the evidence that the government's going to submit in support of that answer, we're not going to know enough to be able to intelligently and wisely figure out what, if any, scope of discovery is appropriate.

And if there is discovery, it's going to go both ways.  I mean, again, if we're going to use the Rules of Civil Procedure, if there is going to be discovery, you know, depositions or whatever may very well be permitted.  I don't know yet.  I haven't seen the government's answer, either.  I don't know what issues are going to actually be factually contested.

MR. BROWN:  I understand, Your Honor, and we agree that makes perfect sense.  The situation we found ourselves in, however, was one of the prior orders of the Court had us filing a reply within 30 days and --

THE COURT:  I understand that, but why you-all are not working these types of issues out, I mean, this didn't even need a hearing today if Mr. Trump was trying to get the names of your witnesses and was asking you to do it, and you-all should have been giving it to him, but here's what I'm doing right now:  You need to turn over the names.

How long will it take you to put your list together for Mr. Trump?

9

MR. BROWN:  We could do it within 30 days, Your Honor.

THE COURT:  It shouldn't take that long.

Mr. Trump, do you have a sense, because you've been through this, how many witnesses we're talking about?

MR. TRUMP:  All I know is the paragraph references, Judge.  There are about --

THE COURT:  All those paragraphs that you referenced in your --

MR. TRUMP:  Yeah.  And the only other bit of information is whether these witness interviews occurred post-verdict.  In other words, we don't -- we don't know if it's piggybacking on a witness interview that was done back in 2006, '7, or whether it was a new matter with habeas counsel.  So as long as they're all with habeas counsel, I don't need the exact dates or anything like that, just the fact that these are new witness interviews occurring post-conviction.

But with that, I think we can dig through trial counsel's files and then make a comparison between the information in the motion and the information that was available to trial counsel.

THE COURT:  So you don't yet have affidavits from trial counsel.

MR. TRUMP:  No.

THE COURT:  All you -- have you talked with the trial

10

counsel?

MR. TRUMP:  Could I address that?

THE COURT:  Sure.  And remind me, we're talking about Mr. McCarthy, and who's the other trial counsel?

MR. TRUMP:  Mr. Kiyonaga.

THE COURT:  All right.

MR. TRUMP:  We have talked with them about the records, and through no fault of anyone involved, their trial records were given to appellate counsel.  They were just all boxed up and shipped off, and then appellate counsel boxed them up and shipped them to habeas counsel.

It's -- they were then scanned and provided to us, and it's obvious among all of us that some of the stuff is just sort of out of order and there.  So it's a difficult process in terms of going through it page by page to try to figure out what connects to what.

For example, we have read numerous e-mails between trial counsel and some of the experts that were retained. There are records dealing with the payment of those experts. So we know they did a lot of work.  Yet we have not -- we haven't found the actual expert report.

We know, for example, that an expert neurologist examined Mr. Hager for several days and concluded that he was mentally competent in terms of his level of intelligence, and cognitive ability was not disabled to the point of providing a

11

defense in mitigation, and the expert in an e-mail said, "I don't have anything to give you in terms of mitigation in this regard."

But I don't have the report, so I can't compare it to the report that we received from habeas counsel to see where are the differences, what did they do that trial counsel didn't do and that sort of thing.

THE COURT:  Is that neurologist still in the area?

MR. TRUMP:  Most likely.

THE COURT:  Have you tried to go to the neurologist?

MR. TRUMP:  Not yet because we're still going page by page through Mr. McCarthy and Mr. Kiyonaga's materials.  We haven't completed the review of 80,000 pieces of paper, which we have to do.  There are references to admissions made by Hager to counsel that helped formulate their strategy in terms of trial.  Those, obviously, will be key to responding to certain issues.

Once we get through these documents, we'd like to sit down with Mr. McCarthy and Mr. Kiyonaga and ask very specific, pointed questions as to, for example, there's an allegation in the motion that you should have called X as a witness.  Here's a piece of paper in which you discuss that with your client, Mr. Hager, and you made a decision not to call X; is that right?  Those are very straightforward factual issues that I think go to the heart of some of the claims.

12

What's difficult is giving you an estimate of how much time it will take us to make it through all of those files so that the exercise with Mr. McCarthy and Mr. Kiyonaga is as brief and as pointed as possible.  For whatever reason, we don't have access to Mr. Kiyonaga and Mr. McCarthy without habeas counsel present.  They've made that decision that that's what they want to do.

I don't know if that's appropriate, inappropriate, whatever, but these are witnesses, Judge, and at some point, I think we need to be able to talk to them without the layer of habeas counsel involved to get to some of these, these issues.

The most difficult part about this case now is giving Your Honor an estimate of how long it will take, and that's complicated by the fact that I'm the only person left who was involved in the case.  Detective Murphy, who's here, we've put on a contract for a few weeks before he goes back to his other job, he's retired, to help us out, and he's been an enormous help over the last several weeks, but he's only around for another two or three weeks.

My colleague, Mr. Catizone, has been inundated with NEFs on the *Johnson* issues and has now been stacked up probably for months in terms of those issues.  So we're just, we're just not able to give you a really good estimate that it will take two months/three months/four months for us to do a comprehensive answer.

What we contemplate is addressing these issues straight on, facts, resolve them, not just leaving it open-ended.  We want to do a comprehensive, fulsome response, as we do in any 2255, so that Your Honor then can see whether there are any issues that need any further discovery or need an evidentiary hearing.

At this point, we feel pretty confident that most of them can be resolved without a hearing, and if there are any, it will be very, very few, but it's this, the unknown of when can we get through all of this stuff and then talk to trial counsel, that's sort of holding up the process.

THE COURT:  Well, I can't give you a blank check.  It's too -- this is an important case, and it needs to be, obviously, thoroughly briefed.  It does seem to me as though, again, because so much time has passed since the original case, the original investigation, etc., that you definitely should be directly contacting these experts, any expert who testified in the trial, because they may --

MR. TRUMP:  No, they didn't testify at trial, Your Honor.

THE COURT:  Or who were contacted -- any experts who have been identified as having been consulted by counsel.  That -- so that if those experts have their own records, that's another way of getting at what was going on.

But anyway, at this point, again, I'm not going to

14

allow the defendants to start running any meters until we know what further work is needed on the case.  So until the answer comes in from the government, other than providing the names of these witnesses -- and frankly, to the extent the defendant wants to get this matter resolved relatively soon, the defendant's cooperation in terms of getting information to you-all is advantageous because once the answer comes in, that's again when I can look at this case and decide what additional discovery is appropriate.

So I'm going to go ahead, you think another 90-day --

MR. TRUMP:  I was going to suggest, Your Honor, that -- I forgot to mention to you that one of my problems in the last few weeks has been the Phi Nguyen trial preparation.

THE COURT:  What's happening with that, by the way? Nothing was filed.

MR. TRUMP:  I think we have a plea agreement with Mr. Nguyen and --

THE COURT:  We need to do it Monday of next week. I'm not going to be available the rest of the week.

MR. TRUMP:  Mr. Amolsch said he's out of town until Tuesday.  He said he could do the plea on Tuesday.

THE COURT:  Tuesday morning, nine o'clock.  Tuesday morning, nine o'clock, we can do it.

MR. TRUMP:  I've been preoccupied on that for the last few weeks, but I think that between myself and

15

Mr. Catizone, we can make an effort to get through all of the trial counsel's files by approximately mid-August, and then perhaps we can have a status hearing at that time to determine when the government can be prepared to file its comprehensive brief.

THE COURT:  All right.  How about August 26 for a status hearing?  And I don't necessarily need both counsel here for just a status hearing.

MR. BROWN:  That's fine with me, Your Honor.  Fine with us.

THE COURT:  All right.  So, Mr. Trump, are you in town for the 26th?  That's right before the Labor Day weekend, I think.

MR. TRUMP:  That's fine, Your Honor.

THE COURT:  All right.  That will be at nine o'clock.

I don't know why the defense cannot provide the list of names of the witnesses within 14 days.  That should not be that difficult a thing to do.

Mr. Brown?

MR. BROWN:  We'll do that, Your Honor.

THE COURT:  All right.  So within 14 days, the list of -- the names of all the witnesses who were referenced in the motion, right, will be provided to the government counsel.  I think that's all I'm going to require them to do.  I mean, that's all you really need.  All right.

16

MR. TRUMP:  And I will take up Your Honor's suggestions with respect to experts, but I think I will need to go through Mr. McCarthy and Mr. Kiyonaga, because we obviously don't have any relationship with those experts, and they might be concerned of any confidentiality or anything like that.

THE COURT:  I expect trial counsel to cooperate with you in that respect.  If you have a problem, file a motion, and I'll issue an order, all right?

All right.  Is there anything else we need to address on this case at this point?

MR. BROWN:  No, Your Honor.

THE COURT:  No?  All right.  Then we'll see you-all back here in August.

And, Mr. Trump, would you please get with Mr. Amolsch, lock that plea in?

MR. TRUMP:  Yes.

THE COURT:  It's got to be nine o'clock on Tuesday.  All right.  That's fine.

All right.  We'll recess court until two o'clock this afternoon.

(Which were all the proceedings

had at this time.)

17

CERTIFICATE OF THE REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.


/s/
Anneliese J. Thomson