# EXHIBIT A

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA      .      Criminal No. 1:05cr264-3
                              .
    vs.                       .      Alexandria, Virginia
                              .      June 23, 2016
THOMAS MOROCCO HAGER,         .      10:12 a.m.
                              .
            Defendant.        .
                              .
. . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE PLAINTIFF:                JAMES L. TRUMP, AUSA
                                 United States Attorney's Office
                                 2100 Jamieson Avenue
                                 Alexandria, VA 22314


FOR THE DEFENDANT:               BLAIR G. BROWN, ESQ.
                                 Zuckerman Spaeder LLP
                                 1800 M Street, N.W., Suite 1000
                                 Washington, D.C. 20036
                                   and
                                 JULIE BRAIN, ESQ.
                                 916 South 2nd Street
                                 Philadelphia, PA 19147


OFFICIAL COURT REPORTER:         ANNELIESE J. THOMSON, RDR, CRR
                                 U.S. District Court, Fifth Floor
                                 401 Courthouse Square
                                 Alexandria, VA 22314
                                 (703)299-8595


(Pages 1 - 17)


COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

7

this litigation.  They can't do it without having the kind of information that Mr. Trump has indicated.

So I am going to require that you immediately provide the government with the names of all the witnesses whose statements are referred to in the, in the motion so that they can check them with defense counsel to find out what, if anything, they did in terms of investigating those matters that you've referenced in the motion.

MR. BROWN:  I understand, Your Honor.  The situation that we find ourselves in and the reason we filed something with the Court before this hearing is that we are concerned about a situation in which the government has, having taken the discovery it received from us, files its response, and we are put in the position of having to respond to evidentiary material with evidentiary material, without a sufficient opportunity or resources to respond to that.

THE COURT:  At that point, once the answer has been filed, we'll have the parameters of the case.  There may be some issues that the government's not contesting.  They may concede certain issues in your motion, all right, factually.  Then you don't need any further evidence on that issue.  It may be a legal argument that's all that's needed.

Whether or not after you see the government's answer, whether then -- that's the appropriate time to be filing a motion for discovery, and at that point, we will be addressing

the further budget, if any, that we need for this case.

Again, without having the government's answer and the evidence that the government's going to submit in support of that answer, we're not going to know enough to be able to intelligently and wisely figure out what, if any, scope of discovery is appropriate.

And if there is discovery, it's going to go both ways. I mean, again, if we're going to use the Rules of Civil Procedure, if there is going to be discovery, you know, depositions or whatever may very well be permitted. I don't know yet. I haven't seen the government's answer, either. I don't know what issues are going to actually be factually contested.

MR. BROWN: I understand, Your Honor, and we agree that makes perfect sense. The situation we found ourselves in, however, was one of the prior orders of the Court had us filing a reply within 30 days and --

THE COURT: I understand that, but why you-all are not working these types of issues out, I mean, this didn't even need a hearing today if Mr. Trump was trying to get the names of your witnesses and was asking you to do it, and you-all should have been giving it to him, but here's what I'm doing right now: You need to turn over the names.

How long will it take you to put your list together for Mr. Trump?

10

counsel?

MR. TRUMP:  Could I address that?

THE COURT:  Sure.  And remind me, we're talking about Mr. McCarthy, and who's the other trial counsel?

MR. TRUMP:  Mr. Kiyonaga.

THE COURT:  All right.

MR. TRUMP:  We have talked with them about the records, and through no fault of anyone involved, their trial records were given to appellate counsel.  They were just all boxed up and shipped off, and then appellate counsel boxed them up and shipped them to habeas counsel.

It's -- they were then scanned and provided to us, and it's obvious among all of us that some of the stuff is just sort of out of order and there.  So it's a difficult process in terms of going through it page by page to try to figure out what connects to what.

For example, we have read numerous e-mails between trial counsel and some of the experts that were retained. There are records dealing with the payment of those experts. So we know they did a lot of work.  Yet we have not -- we haven't found the actual expert report.

We know, for example, that an expert neurologist examined Mr. Hager for several days and concluded that he was mentally competent in terms of his level of intelligence, and cognitive ability was not disabled to the point of providing a

defense in mitigation, and the expert in an e-mail said, "I don't have anything to give you in terms of mitigation in this regard."

But I don't have the report, so I can't compare it to the report that we received from habeas counsel to see where are the differences, what did they do that trial counsel didn't do and that sort of thing.

THE COURT: Is that neurologist still in the area?

MR. TRUMP: Most likely.

THE COURT: Have you tried to go to the neurologist?

MR. TRUMP: Not yet because we're still going page by page through Mr. McCarthy and Mr. Kiyonaga's materials. We haven't completed the review of 80,000 pieces of paper, which we have to do. There are references to admissions made by Hager to counsel that helped formulate their strategy in terms of trial. Those, obviously, will be key to responding to certain issues.

Once we get through these documents, we'd like to sit down with Mr. McCarthy and Mr. Kiyonaga and ask very specific, pointed questions as to, for example, there's an allegation in the motion that you should have called X as a witness. Here's a piece of paper in which you discuss that with your client, Mr. Hager, and you made a decision not to call X; is that right? Those are very straightforward factual issues that I think go to the heart of some of the claims.

12

What's difficult is giving you an estimate of how much time it will take us to make it through all of those files so that the exercise with Mr. McCarthy and Mr. Kiyonaga is as brief and as pointed as possible. For whatever reason, we don't have access to Mr. Kiyonaga and Mr. McCarthy without habeas counsel present. They've made that decision that that's what they want to do.

I don't know if that's appropriate, inappropriate, whatever, but these are witnesses, Judge, and at some point, I think we need to be able to talk to them without the layer of habeas counsel involved to get to some of these, these issues.

The most difficult part about this case now is giving Your Honor an estimate of how long it will take, and that's complicated by the fact that I'm the only person left who was involved in the case. Detective Murphy, who's here, we've put on a contract for a few weeks before he goes back to his other job, he's retired, to help us out, and he's been an enormous help over the last several weeks, but he's only around for another two or three weeks.

My colleague, Mr. Catizone, has been inundated with NEFs on the *Johnson* issues and has now been stacked up probably for months in terms of those issues. So we're just, we're just not able to give you a really good estimate that it will take two months/three months/four months for us to do a comprehensive answer.

13

What we contemplate is addressing these issues straight on, facts, resolve them, not just leaving it open-ended.  We want to do a comprehensive, fulsome response, as we do in any 2255, so that Your Honor then can see whether there are any issues that need any further discovery or need an evidentiary hearing.

At this point, we feel pretty confident that most of them can be resolved without a hearing, and if there are any, it will be very, very few, but it's this, the unknown of when can we get through all of this stuff and then talk to trial counsel, that's sort of holding up the process.

THE COURT:  Well, I can't give you a blank check.  It's too -- this is an important case, and it needs to be, obviously, thoroughly briefed.  It does seem to me as though, again, because so much time has passed since the original case, the original investigation, etc., that you definitely should be directly contacting these experts, any expert who testified in the trial, because they may --

MR. TRUMP:  No, they didn't testify at trial, Your Honor.

THE COURT:  Or who were contacted -- any experts who have been identified as having been consulted by counsel.  That -- so that if those experts have their own records, that's another way of getting at what was going on.

But anyway, at this point, again, I'm not going to

14

allow the defendants to start running any meters until we know what further work is needed on the case.  So until the answer comes in from the government, other than providing the names of these witnesses -- and frankly, to the extent the defendant wants to get this matter resolved relatively soon, the defendant's cooperation in terms of getting information to you-all is advantageous because once the answer comes in, that's again when I can look at this case and decide what additional discovery is appropriate.

So I'm going to go ahead, you think another 90-day --

MR. TRUMP:  I was going to suggest, Your Honor, that -- I forgot to mention to you that one of my problems in the last few weeks has been the Phi Nguyen trial preparation.

THE COURT:  What's happening with that, by the way? Nothing was filed.

MR. TRUMP:  I think we have a plea agreement with Mr. Nguyen and --

THE COURT:  We need to do it Monday of next week. I'm not going to be available the rest of the week.

MR. TRUMP:  Mr. Amolsch said he's out of town until Tuesday.  He said he could do the plea on Tuesday.

THE COURT:  Tuesday morning, nine o'clock.  Tuesday morning, nine o'clock, we can do it.

MR. TRUMP:  I've been preoccupied on that for the last few weeks, but I think that between myself and

15

Mr. Catizone, we can make an effort to get through all of the trial counsel's files by approximately mid-August, and then perhaps we can have a status hearing at that time to determine when the government can be prepared to file its comprehensive brief.

THE COURT:  All right.  How about August 26 for a status hearing?  And I don't necessarily need both counsel here for just a status hearing.

MR. BROWN:  That's fine with me, Your Honor.  Fine with us.

THE COURT:  All right.  So, Mr. Trump, are you in town for the 26th?  That's right before the Labor Day weekend, I think.

MR. TRUMP:  That's fine, Your Honor.

THE COURT:  All right.  That will be at nine o'clock.

I don't know why the defense cannot provide the list of names of the witnesses within 14 days.  That should not be that difficult a thing to do.

Mr. Brown?

MR. BROWN:  We'll do that, Your Honor.

THE COURT:  All right.  So within 14 days, the list of -- the names of all the witnesses who were referenced in the motion, right, will be provided to the government counsel.  I think that's all I'm going to require them to do.  I mean, that's all you really need.  All right.