**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Criminal No. 1:05-cr-00264 (LMB)** |
| **v.** | : | **Civil Action No. 1:15-cv-00551** |
| | : | |
| **THOMAS MOROCCO HAGER,** | : | **CAPITAL § 2255 PROCEEDINGS** |
| | : | |
| **Defendant.** | : | |
| | : | |

## DEFENDANT'S PROPOSED DISCOVERY PLAN

Defendant Thomas Morocco Hager ("Mr. Hager"), through undersigned counsel, respectfully submits the following proposed discovery plan.

### RELEVANT BACKGROUND

On April 27, 2015, Mr. Hager, through undersigned counsel, filed a timely Motion to Vacate, Set Aside, or Correct Sentence and for a New Trial Pursuant to 28 U.S.C. § 2255 (the "Section 2255 Motion"). ECF No. 529. The relief sought by the Section 2255 Motion included an opportunity to obtain discovery in support of the claims in the Motion. In response, the government filed a motion seeking extensive discovery from trial counsel and habeas counsel. *See* 7/2/15 Gov't Mot., ECF No. 541. The Court granted the government's motion and ordered habeas counsel to "provide the government forthwith with all files obtained from trial counsel" and to "provide the government with an appendix and documentation of all allegations contained in [the Section 2255 Motion]." 8/6/15 Order, ECF No. 547. The Court also ordered the production of trial counsel's under seal ex parte filings and trial counsel's Criminal Justice Act ("CJA") vouchers and records related to their representation of Mr. Hager. *Id.* In compliance with the Court's Order, on October 16, 2015, habeas counsel provided the government an appendix consisting of nearly 5,000 pages of supporting documentation and an annotated version

of the Section 2255 Motion.  Following entry of a protective order, *see* 10/27/15 Order, ECF No. 575, habeas counsel produced all of trial counsel's files to the government, including Concordance load files consisting of more than 7,800 documents and 76,000 pages.

The government then sought additional discovery from the Court.  In its response to an order to show cause why it could not answer the Section 2255 Motion by April 11, 2016, the government argued that it needed even more discovery and requested "all of the documents, records, notes, reports, or other information supporting all of the factual allegations and expert opinions" in the Motion, as well as a meeting with trial counsel to explain counsel's filing system.  2/24/16 Gov't Resp. at 4, 7, ECF No. 578.  Over Mr. Hager's objection, the Court ordered habeas counsel to "provide the government with all documents, records, notes, reports, and any other information used or produced by the experts and supporting the expert opinions referenced in the § 2255 Motion" within 30 days and for trial counsel to "meet and confer with government counsel to explain their filing systems and to help government counsel identify relevant documents."  3/25/16 Order at 3-4, ECF No. 580.  Habeas counsel provided the government the required expert material, excluding neuropsychological test data and material, on April 25, and, following amendment of the 3/25/16 Order at Mr. Hager's request, *see* 4/25/16 Order, ECF No. 585, the neuropsychological test data and material on May 3.  The government met with trial counsel to discuss their filing system on May 27, 2016.

After requesting and receiving a series of extensions, the government filed its 160-page response to Mr. Hager's Section 2255 Motion on March 9, 2017.  In advance of the March 24, 2017 status conference, Mr. Hager submitted a Position on Scheduling requesting, among other things, ten days from the date of the conference to submit a budget for additional Criminal Justice Act ("CJA") fees and expenses and 60 days from the date the Court approved that budget

2

to file a motion for discovery under Rule 6 of the Rules Governing Section 2255 Proceedings in the United States District Courts ("Section 2255 Rules").  3/22/17 Def's Position on Scheduling at 5-8, ECF No. 610.  At the March 24 conference, the Court ordered habeas counsel to file a proposed discovery plan and file under seal an *ex parte* proposed budget within 14 days.  3/24/17 Order, ECF No. 615.

To date, habeas counsel has not sought or obtained any Court-ordered discovery.  Habeas counsel previously requested the opportunity to seek discovery, but was twice instructed by the Court not to do so until after the government had filed its response.  *See* Hr'g Tr. 40:1-4, Aug. 6, 2015 (instructing habeas counsel not to "spend any time" on a discovery motion until the government filed its opposition); Hr'g Tr. 7:23-8:1, June 23, 2016 (stating that the "appropriate time" to file a discovery motion was after the government's response).  In this proposed discovery plan, habeas counsel seeks the following categories of discovery:

 A. Discovery Concerning Government Witness Charles Johnson

 B. Discovery Concerning Shenita King

 C. Discovery Concerning the Cornell Coplin Homicide

 D. Discovery Concerning Government Witness Anthony Fields

 E. Discovery Concerning the Jerome Robinson Murder

 F. Discovery Concerning the Prison Altercations

 G. Discovery Concerning Terrell Hager

 H. Discovery Concerning Records from Third Parties Relevant to Claim III of the Section 2255 Motion

 I. Discovery of Fairfax County Grand Jury Testimony.[1]

---

[1] Part II of the Argument section of this proposed discovery plan, as well as the attached proposed order, contain a detailed list of the proposed discovery within each of these categories that habeas counsel seeks.

**ARGUMENT**

## I.   MR. HAGER IS ENTITLED TO DISCOVERY UPON A SHOWING OF GOOD CAUSE.

Rule 6(a) of the Section 2255 Rules provides that a court "may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  "Good cause" exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *see also United States v. Roane*, 378 F.3d 382, 402-03 (4th Cir. 2004) (applying *Bracy* and *Harris* to discovery requests in Section 2255 proceedings).

> The purpose of Rule 6
>
> is to ensure that the facts underlying a habeas corpus claim are adequately developed, and [] it is a court's obligation to allow discovery in cases in which a petitioner has provided a sufficient basis for believing that discovery may be necessary to adequately explore a petitioner's claim for relief. . . . [A] court may not deny a habeas corpus petitioner's motion for leave to conduct discovery if there is a sound basis for concluding that the requested discovery might allow him to demonstrate that he has been confined illegally.

*Johnston v. Love*, 165 F.R.D. 444, 445 (E.D. Pa. 1996); *see also Gaitan-Campanioni v. Thornburgh*, 777 F. Supp. 1355, 1356 (E.D. Tex. 1991) ("Although discovery is permitted only by the leave of the court, the court should not hesitate to allow discovery, where it will help illuminate the issues underlying the applicant's claim.").

Rule 6's command that discovery be granted upon a showing of good cause carries particular force in a capital case, where a court's "duty to search for constitutional error with painstaking care is never more exacting." *Kyles v. Whitley*, 514 U.S. 419, 422 (1995).  Indeed, it is because of the heightened stakes a defendant faces that "more liberal discovery is appropriate

in capital cases." *Payne v. Bell*, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) (citing *Lockett v. Ohio*, 483 U.S. 586, 604 (1978)).

## II.    MR. HAGER HAS ESTABLISHED GOOD CAUSE FOR HIS DISCOVERY REQUESTS.

Mr. Hager has good cause for each of his discovery requests.  As set forth in further detail below, he has made specific allegations showing that he "may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief."  *Bracy*, 520 U.S. at 908-09 (quoting *Harris*, 394 U.S. at 300).

Mr. Hager seeks two methods of discovery:  production of documents and information by counsel for the government, and the issuance of subpoenas.  Habeas counsel request that they be permitted to issue the subpoenas pursuant to Federal Rule of Civil Procedure 45 to the entities specified in this discovery plan for the specified categories of materials.  Rule 6(a) of the Section 2255 Rules authorizes "discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law."  The procedures provided by Rule 45 are more efficient and expeditious for the serving party and less burdensome to the court.  In addition, in light of the tremendous resistance with which many of habeas counsel's informal requests for records from D.C. agencies have been met, counsel propose to include the following language in each subpoena issued in order to ensure that all reasonable efforts are made to comply with the directives therein:

> In the event that the custodian of records determines that the requested records do not exist, cannot be located or have been previously destroyed, in whole or in part, the custodian shall prepare and deliver to counsel a concise written statement describing the records that cannot be produced, describing the records/locations that were searched in response to the subpoena, including date ranges where relevant, and attaching documentation, if any, evidencing the prior destruction of any of the requested records.

### A.    Discovery Concerning Government Witness Charles Johnson

<u>Discovery Procedures Sought</u>

Mr. Hager requests the following discovery procedures in support of (i) his claim that trial counsel was constitutionally ineffective at the guilt phase of trial for failing to adequately cross-examine Charles Johnson (Section 2255 Motion, Claim I, ¶¶ 38-74), (ii) his claim that trial counsel was constitutionally ineffective at the penalty phase for failing to rebut the "substantial planning and premeditation" statutory aggravator (*id.*, Claim II, ¶¶ 115-20), and (iii) his claim that the government violated Mr. Hager's right to a fair trial by failing to produce materials regarding Charles Johnson in accordance with its obligations under *Brady*, *Giglio*, and the Jencks Act (*id.*, Claim IV, ¶ 30):

1A.    Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the Office of the United States Attorney for the District of Columbia, the FBI and the DEA, regarding the five categories of crimes for which Charles Johnson received immunity from prosecution under the terms of his August 5, 1999, plea agreement with the United States Attorney's Office for the District of Columbia, namely:

i.    Any violations of Federal or District of Columbia narcotics laws committed prior to the date of the agreement.

ii.    Any offenses arising out of the September 18, 1992, killing of William Roberts.

iii.    Any offenses in connection with a non-fatal shooting committed by Charles Johnson and Samuel Howerton on the 2900 block of Nelson Place, S.E., in 1993.

iv.    Any charges previously filed against Charles Johnson in the District of Columbia Superior Court in Case No. F-5055-94 involving the homicides of Timothy Dorsey and Willmon Poole on May 24, 1994 (and the related killing of Dwayne Gaskins on the 3900 block of Minnesota Avenue, N.E., on May 22, 1994).

v. Any offenses arising out of the death of Calvin Spriggs on October 19, 1992, in the 5900 block of Blaine Street, N.E., with the exception of a charge of conspiracy to murder.

1B. Issuance of a subpoena to the D.C. Metropolitan Police Department directing it to produce all documents and information in its possession regarding the five categories of crimes listed in paragraph 1A above.

2A. Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the Office of the United States Attorney for the District of Columbia, the FBI and the DEA, regarding contacts between Charles Johnson or his attorney and Federal, State and local law enforcement agencies during the time period in which Johnson was a cooperating witness, including notes and records of all debriefing sessions or other interviews conducted with Johnson.

2B. Issuance of subpoenas directing the following agencies to produce all documents and information in their possession relating to the information sought in paragraph 2A above:

i. Fairfax County Police Department

ii. Office of the Commonwealth's Attorney for Fairfax County

iii. D.C. Metropolitan Police Department

3A. Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the Office of the United States Attorney for the District of Columbia, the FBI and the DEA, regarding search and arrest warrants issued for Charles Johnson by the Stafford County Sheriff's Department in approximately March, 1998, and charges involving possession of marijuana and a stolen gun filed in Stafford County in approximately May, 1998.

3B. Issuance of subpoenas directing the following agencies to produce all documents and information in their possession relating to the information sought in paragraph 3A above:

i. Stafford County Police Department

ii. Stafford County Sheriff's Department

iii. Office of the Commonwealth's Attorney for Stafford County

Good Cause Exists for Each of the Above Requests

As set forth in the Section 2255 Motion, Charles Johnson was a key witness for the government at Mr. Hager's trial. Section 2255 Motion at 20-21, 89-91. It was solely on the basis of his testimony that the government was able to argue to the jury that Mr. Hager planned from the outset to murder Barbara White, as opposed to talk to or threaten her, and to do so specifically by stabbing her multiple times with knives.[2] Absent Johnson's testimony, the government had no evidence to rebut the far more plausible theory that Mr. Hager had no specific plan to murder Ms. White and that events in Ms. White's apartment that night unfolded haphazardly and chaotically.

The information conveyed to the jury at trial regarding Johnson's credibility, bias and multiple motives to lie was utterly misleading at best. Johnson's plea agreements with the D.C. United States Attorney's Office and his immunity agreement with counsel for the government were introduced, and trial counsel elicited from Johnson that he had agreed to plead guilty to one count of conspiracy to murder in connection with the death of Calvin Spriggs, for which he faced a sentence of up to five years. However, the only information presented regarding Johnson's role in the Spriggs murder was the fact that he was not the actual shooter, elicited by the government, and so there was no basis upon which for the jury to conclude that the plea agreement conveyed any real benefit to Johnson. Trial counsel also elicited the fact that the agreements gave Johnson immunity for the William Roberts murder, the non-fatal shooting with Samuel Howerton and the charges associated with F-5055-94, the nature of which trial counsel failed to specify. However, on redirect the government had Johnson testify that he did not kill

---

[2] The "other evidence of Hager's planning and premeditation" cited by the government in its Response, such as witness testimony that Mr. Hager said earlier that day that they were "about to get at Barbara" or "do something about Barbara," or testimony that the participants wore ski masks and gloves, Resp. at 36 n.15, hardly establishes the existence of a concrete plan to murder her, much less to do so by inflicting multiple stab wounds.

8

Roberts, did not shoot a gun in the non-fatal Nelson Place shooting and did not shoot anyone, and was in fact shot himself, in the incident underlying F-5055-94. Overall, the jury was given the impression that Johnson was a mere witness with the exception of his participation in the conspiracy to murder Spriggs, to which he had agreed to plead guilty and be punished. None of this evidence showed bias or a motive to lie about his testimony regarding Mr. Hager.

As set forth in the Section 2255 Motion, habeas counsel are already in possession of evidence that Johnson was indeed a shooter in both the non-fatal Nelson Place shooting and the double homicide that resulted in F-5055-94. Discovery of any additional evidence regarding Johnson's role in those incidents is therefore warranted in order to fully develop the relevant facts. And, in light of the fact that Johnson was untruthful about at least two of the incidents for which he was granted immunity, discovery is warranted to uncover whether or not he was truthful in his testimony regarding the others.

Additionally, in order to establish the full scope of Johnson's legal exposure at the time of his testimony against Mr. Hager, discovery regarding the sources and extent of all legal jeopardy that Johnson was facing is necessary. Habeas counsel should therefore be granted discovery regarding Johnson's arrest in Stafford County in 1998 on stolen gun and drug possession charges, and as to all criminal conduct to which he confessed during his many interviews with law enforcement and for which he was subject to prosecution due to his violation of his plea and immunity agreements.

Habeas counsel require access to this evidence through formal discovery because any available avenues for obtaining it informally have been pursued and have failed. For each of the requests above, habeas counsel have documentary or other evidence that the entities from which

9

information is sought are likely to have such information in their possession and so the requests are narrowly and precisely tailored.

If the requested discovery is granted, Mr. Hager will prove that the use of all available evidence impeaching Johnson's credibility would have led the jury to discredit Johnson's testimony in its entirety. As a result, there would have been virtually no evidence supporting the substantial planning aggravating circumstance, the already tenuous evidence of the required nexus between Ms. White's murder and a drug conspiracy would have been further eroded and the jury would have had a significantly different picture regarding how the crime unfolded. Especially when the prejudice flowing from failure to adequately cross-examine Johnson is considered cumulatively with the prejudice caused by all other instances of trial counsel's ineffectiveness, there is reasonable probability that jury would have reached a different result either as to the nexus between the homicide and the drug conspiracy—and therefore as to Mr. Hager's guilt of the charged offense—or as to whether the death sentence was an appropriate penalty.

The government tries to explain away trial counsel's failure to gather and use this information as a strategic decision. However, a lawyer plainly cannot make a reasonable tactical decision not to present evidence that he does not even know exists and, like habeas counsel, trial counsel lacked the information sought herein, either because they failed to investigate and request it or because the government failed to disclose it.

### B.    Discovery Concerning Shenita King

Discovery Procedures Sought

Mr. Hager requests the following discovery procedures in support of his claim that trial counsel rendered constitutionally ineffective assistance at the guilt phase of trial by failing to cross-examine Shenita King (Section 2255 Motion, Claim I, ¶¶ 29-37):

10

1.      Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the FBI and the DEA, regarding any compensation, including any monetary or in-kind compensation, paid to Shenita King for her cooperation with the government.

Good Cause Exists for the Above Request

At trial, trial counsel conducted no cross-examination of Shenita King—not even about the incentives she received to cooperate and testify in the manner desired by the government. King, in addition to receiving complete immunity from prosecution for the killing of Barbara White, also received considerable financial benefits from the government.  By the time of her testimony at Mr. Hager's trial, trial counsel had information in their possession showing that King had received at least $72,935 from the government for her cooperation between 1999 and 2005, including money for housing and assistance in moving.  The material sought in request 1 above is necessary for habeas counsel to ascertain whether King received any other compensation from the government that trial counsel should have obtained and used to challenge King's credibility, and to determine the full scope of the harm to Mr. Hager from trial counsel's failure to do so.

### C.      Discovery Concerning the Cornell Coplin Homicide

Discovery Procedures Sought

Mr. Hager requests the following discovery procedures in support of his claim that trial counsel rendered constitutionally ineffective assistance at the penalty phase with respect to the government's presentation of aggravating evidence for failing to move to exclude evidence of the homicide of Cornell Coplin (Section 2255 Motion, Claim II, ¶¶ 2-6):

1A.     Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the Office of the United States Attorney for the District of

Columbia, the FBI, the DEA and the United States Park Police, regarding the homicide of Cornell Coplin at 2500 Pennsylvania Avenue, S.E., on February 26, 1996.

1B.     Issuance of subpoenas directing the D.C. Metropolitan Police Department to produce all documents and information in its possession relating to the information sought in paragraph 1A above.

Good Cause Exists for Each of the Above Requests

As set forth in the Section 2255 Motion, the evidence presented at trial in an effort to establish Mr. Hager's culpability for the homicide of Cornell Coplin was exceedingly weak. The government's theory was that Mr. Hager "directed" the shooting of Coplin, which was undisputedly actually committed by Loneldon Windsor. The evidence of such "direction" came from two sources: the testimony of Anthony Fields, and the hearsay statements of Shenita King, read by Det. Robert Murphy. Neither witness's account established that Loneldon Windsor acted at the direction of Mr. Hager. Anthony Fields testified that, upon seeing Coplin at a gas station as they happened to be driving by, Mr. Hager said "there go your man right there, Neldie." Loneldon Windsor thereafter got out of the van in which they traveling and shot Coplin multiple times. Shenita King's statement was similar; she apparently told Det. Murphy that Mr. Hager said "Neldie, Neldie, there's your man, there's your man, go get him."

The government also introduced the testimony of the decedent's brother, David Jennifer, who described an alleged dispute between Coplin and Mr. Hager regarding some PCP. However, the account of this dispute failed to explain why Loneldon Windsor shot Coplin, or why Coplin was Windsor's "man," and not Mr. Hager's. Moreover, while Jennifer testified at trial that the PCP dispute had occurred just a few days before the shooting, he told police at the time of the incident, over 10 years earlier, that in fact several weeks had passed between the two events, which was corroborated by his further statement that the PCP incident occurred a couple

of days after the blizzard of 1996, which occurred on January 6-8, 1996, while the shooting did not take place until February 26, 1996.

Based on this flimsy evidentiary picture, trial counsel rendered constitutionally deficient performance by failing to move to exclude all evidence of this homicide. Based upon the record as it currently exists, such a motion would have been required to have been granted—not, as the government seems to suggest, Resp. at 66, because the evidence consisted of the uncorroborated testimony of cooperating witnesses, but because it was insufficient as a matter of due process and fundamental fairness to establish that Mr. Hager bore any culpability for the crime. In order to prove conclusively that trial counsel would have prevailed had they brought such a motion, and thereby to establish prejudice to Mr. Hager, habeas counsel require discovery of all evidence in the possession of the government and law enforcement regarding the incident.

In addition, trial counsel compounded their ineffectiveness with respect to this homicide by eliciting on cross-examination of Agent Garrett the contents of a note that he found during his review of the MPD file on the Coplin case.[3] The note contained a quadruple hearsay account of an alleged conversation between a confidential informant and an individual named Fitzgerald Stoney, in which Stoney allegedly said that Mr. Hager had killed Coplin because of a dispute over PCP. Not only was this testimony affirmatively helpful to the government and harmful to Mr. Hager, by underscoring the claim that Coplin was murdered because of a dispute with Mr. Hager over PCP, it was likely so utterly unreliable as to violate the Due Process guarantee of fundamental fairness. Habeas counsel accordingly seek discovery regarding the circumstances under which information was passed down between the various participants and the alleged initial conversation with Fitzgerald Stoney in order to establish the unreliability of the

---

[3]   In its Response, the government correctly notes that habeas counsel incorrectly stated in the Section 2255 Motion that it was the government that introduced this evidence at trial. Habeas counsel regret this inadvertent error and apologize to the Court for the mistake.

information contained in the note and to thereby establish the unreasonableness of trial counsel's decision to introduce it.

In light of the fact that the upshot of trial counsel's performance with respect to this evidence was the introduction before the jury of a whole new, separate homicide that was attributed to Mr. Hager during the penalty phase of his trial, if granted the requested discovery habeas counsel will be able to show that absent these errors and omissions, combined with all other instances of trial counsel's ineffectiveness, there is a reasonable probability that a different result would have been reached at the penalty phase.

### D.    Discovery Concerning Government Witness Anthony Fields

<u>Discovery Procedures Sought</u>

Mr. Hager requests the following discovery procedures in support of (i) his claim that trial counsel rendered constitutionally ineffective assistance at the penalty phase with respect to the government's presentation of aggravating evidence by failing to adequately cross-examine Anthony Fields (Section 2255 Motion, Claim II, ¶¶ 7-11), (ii) his claim that the government violated his right to a fair trial by presenting false testimony regarding Anthony Fields's bias and motive to fabricate (*id.*, Claim IV, ¶ 4); and (iii) his claim that trial counsel rendered constitutionally ineffective assistance at the penalty phase with respect to the presentation of mitigating evidence (*id.*, Claim III):

1.    Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, supporting or negating Anthony Fields's testimony at trial that he was then incarcerated on a probation violation on a seven-year-old possession charge.

2A.    Issuance of a subpoena directing the Office of the Commonwealth's Attorney for Fairfax County, Virginia, to produce all documents and information in its possession relating to the following prosecutions of Anthony Fields:

14

      i.      Prosecution on one count of Indecent Exposure Having Been Convicted of Two or More Like Offenses in the Last 10 Years in Case No. 101321, filed in Fairfax County District Court on February 16, 2002.

      ii.     Prosecution on a charge of Indecent Exposure that was brought on July 31, 2000, and to which Fields pled guilty on March 22, 2002.

      iii.    Prosecution on charges of Stalking, Obstructing Justice and two counts of Indecent Exposure, brought on July 17, 2001, in which Fields entered a plea of guilty to the two counts of Indecent Exposure on August 9, 2001.

      iv.    Prosecution on a charge of Indecent Exposure brought on August 2, 2003, of which Fields was found guilty on September 30, 2003.

      v.     Prosecution on a charge of Identity Fraud that was brought on August 13, 2006, of which Fields was found guilty on October 26, 2006.

2B.     Issuance of a subpoena directing the Superior Court for the District of Columbia and the United States Attorney's Office for the District of Columbia to produce all documents and information in its possession relating to the following prosecutions of Anthony Fields in the Superior Court for the District of Columbia:

      i.      F-3829-80

      ii.     F-5674-80

      iii     M-17415-85

3A.     Issuance of a subpoena directing the Fairfax County Police Department to produce all documents and information in its possession relating to the following prosecutions of Anthony Fields:

      i.      Prosecution on a charge of Indecent Exposure that was brought on July 31, 2000, and to which Fields pled guilty on March 22, 2002.

      ii.     Prosecution on charges of Stalking, Obstructing Justice and two counts of Indecent Exposure, brought on July 17, 2001, in which Fields entered a plea of guilty to the two counts of Indecent Exposure on August 9, 2001.

      iii.    Prosecution on a charge of Taking Indecent Liberties with a Child, filed on July 20, 2001.

15

iv.     Prosecution on a charge of Indecent Exposure brought on August 2, 2003, of which Fields was found guilty on September 30, 2003.

v.      Prosecution on a charge of Identity Fraud that was brought on August 13, 2006, of which Fields was found guilty on October 26, 2006.

3B.     Issuance of subpoenas directing the Office of the State's Attorney for Prince George's County, Maryland and the Prince George's County Police Department to produce all documents and information in their possession relating to the following prosecutions of Anthony Fields and the events that led up to them:

i.      Prosecution on charges of Battery and Arson filed on February 12, 1994.

ii.     Prosecution on a charge of Malicious Destruction of Property filed on February 19, 1994.

iii.    Prosecution on a charge of Malicious Destruction of Property filed on February 21, 1994.

iv.     Prosecution on a charge of Indecent Exposure filed on November 4, 1997.

4.      Production by counsel for the government of the transcript of Anthony Fields's testimony before a grand jury of this Court on June 24, 2004.

Good Cause Exists for Each of the Above Requests

As the government's principal witness against Mr. Hager regarding the Coplin homicide, Anthony Fields was a significant component of the government's case for death for Mr. Hager. It therefore behooved trial counsel to challenge Fields's credibility and expose his motives to fabricate his testimony and, indeed, there was much information available that would have enabled them to effectively do just that. Contrary to the government's contention, Resp. at 68, such information would undoubtedly have been admissible and properly referenced during cross examination as evidence of bias, regardless of whether they involved formal criminal convictions or whether Fields had an explicit deal with the government. However, trial counsel failed to gather or introduce any such evidence, instead allowing the government to present the jury with

Fields's false claim that he was incarcerated solely on a probation revocation proceeding in a seven-year-old minor drug charge.

Habeas counsel have conducted an exhaustive search of available public court records in an attempt to verify Fields's claim that he was being held on a probation violation in a seven-year-old possession case. Counsel have been able to identify no such case and have no basis to believe that one exists. However, due to the fact that court records are incomplete in some jurisdictions and for some time periods, habeas counsel seek production by the government of any information in its possession that confirms or refutes Fields's claim.

Discovery requests 2A and 2B are necessary in order for habeas counsel to establish the full extent of Fields's criminal history and to obtain copies of judgments of conviction in order to prove the existence of that history. Habeas counsel have conducted a search of available public records in Fairfax County, Virginia, and the District of Columbia Superior Court and have been unable to obtain copies of the listed criminal convictions. With respect to Case No. 101321 in Fairfax County, habeas counsel received 17 pages of records from the Clerk's Office. Counsel also ordered and received the transcripts of Fields's two trials in that case. At one of those trials, certified copies of four prior criminal convictions were admitted by the Commonwealth. However, copies of those convictions were not amongst the materials received from the court clerk's officer. Habeas counsel accordingly seek to discover the file of the Commonwealth's Attorney in the case in order to obtain the prior convictions.

With respect to the remaining offenses for which habeas counsel seek discovery from the Fairfax County Commonwealth's Attorney's Office, a rap sheet for Fields that was given to trial counsel in discovery in 2007 indicates that he was prosecuted and convicted of criminal offenses in each instance. However, habeas counsel's attempts to obtain records of the cases from the

court clerk's officer have been fruitless. The same is true for records sought from the District of Columbia Superior Court and the United States Attorney's Office for the District of Columbia. Computerized docket summaries indicate that Fields received a criminal conviction in each one of the cases listed, but habeas counsel's informal attempts to secure copies of the files from Superior Court have met with no success. Habeas counsel accordingly seek a subpoena directing production of these files from the respective institutions.

In discovery requests 3A-B, habeas counsel are seeking information regarding the facts underlying charges that were brought against Fields that may or may not have resulted in a criminal conviction but that involved sexual or other violent offenses. There are many reasons why a criminal case may not result in a conviction that are unrelated to the merits of the allegations against the defendant, and thus these records will likely shed light on Anthony Fields's character, behavior and pattern of victimizing others. Because Anthony Fields was a near-constant presence in the life of his nephew, Mr. Hager, and Mr. Hager's siblings, indeed actually living with the family for extended periods of time, the records sought also are highly relevant to Mr. Hager's background and history of exposure to psychological trauma and thus to his claim that trial counsel rendered ineffective assistance at the penalty phase with respect to the presentation of mitigating evidence (Claim III).

Finally, discovery request 4 seeks an order directing the government to furnish habeas counsel with a copy of the transcript of Anthony Fields's testimony before the grand jury in this case on June 24, 2004. This transcript should have been, but was not, provided to trial counsel prior to the trial. *See* Section 2255 Motion, Claim IV, ¶ 6.

### E.        Discovery Concerning the Jerome Robinson Murder

Discovery Procedures Sought

Mr. Hager requests the following discovery procedures in support of his claim that trial counsel was constitutionally ineffective at the penalty phase for failing to rebut the non-statutory aggravating factor that Mr. Hager committed the murder of Jerome Robinson (Section 2255 Motion, Claim II, ¶¶ 12-23):

1A.   Production by counsel for the government of any autopsy report of Paul Y. Lucas, date of birth 03/15/1971, in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the Office of the United States Attorney for the District of Columbia, the FBI and the DEA.

1B.   Issuance of subpoenas directing the following agencies to produce any autopsy report of Paul Y. Lucas, date of birth 03/15/1971, in their possession:

   i.        D.C. Office of the Chief Medical Examiner

   ii.       D.C. Metropolitan Police Department

2A.   Issuance of a subpoena to the D.C. Metropolitan Police Department directing it to permit habeas counsel and their fingerprint expert to compare the latent fingerprints lifted from a gun found by MPD at 2929 Nelson Place S.E., Apt. 1, in 1995 during its investigation of the Jerome Robinson homicide, to Thomas Hager's and Paul Lucas's known fingerprints.

Good Cause Exists for Each of the Above Requests

As set forth in the Section 2255 Motion, Mr. Hager is actually innocent of the murder of Jerome Robinson.  Upon information and belief, the individuals who participated in the Robinson homicide were David Parker and Paul Lucas.  Habeas counsel seeks Lucas's autopsy report—he was killed in 1996—for two reasons.  First, habeas counsel expects that the autopsy report will show that Lucas was approximately 6'0" tall.  Lora Watkins, who was Robinson's girlfriend and was present with him in the apartment when the shooting took place, told police

19

immediately following the shooting that one of the gunman was about 6'0" tall and the other, who stayed in the bedroom with her, was 5'9" tall—five inches taller than Mr. Hager.  Later, at trial, Watkins revised her estimate downward, stating that the shorter man was actually 5'4" tall, Mr. Hager's height.  Habeas counsel believes that the shorter gunman was Parker, who is 5'9", and that the taller one was Lucas.  The autopsy report will confirm Lucas's height.  Second, habeas counsel expects that the autopsy report will show scarring from a gunshot wound Lucas suffered during the Robinson shooting.  While Lucas was in the living room with Robinson, they got into a struggle over a gun and it fired, hitting Lucas in the arm.  The autopsy report will confirm whether Lucas had any old gunshot wounds.

Habeas counsel seeks the fingerprint comparison requested in 2A for the same reason:  to confirm that Lucas, nor Hager, was Parker's partner in the Robinson murder.  While the government alleged that Mr. Hager's fingerprints were found on the clip of the gun left in Robinson's apartment the night of the shooting, there were other, unidentified prints on the clip as well.  Habeas counsel should be allowed to compare those prints to Mr. Hager's prints and to Lucas's prints to determine if there is a match.  This information, combined with what habeas counsel expects the autopsy report will show, will be powerful evidence that Mr. Hager is actually innocent of that crime and that trial counsel's failure to discover and present evidence demonstrating his innocence was unreasonable and highly prejudicial.

F.      **Discovery Concerning the Prison Altercations**

Discovery Procedures Sought

Mr. Hager requests the following discovery procedures in support of (i) his claim that trial counsel was constitutionally ineffective at the penalty phase for (a) failing to adequately cross-examine government witnesses John Feeney and Bruce Davidson (Section 2255 Motion, Claim II, ¶¶ 43-50), (b) failing to adequately cross-examine government witness Alphonso

20

Satchell (*id.* ¶¶ 77-81), and (c) failing to seek the production of *Brady, Giglio*, Jencks Act, and other materials subject to discovery (*id.* ¶ 93), and (ii) his claim that the government violated his right to a fair trial by failing to produce, in accordance with its obligations under *Brady*, *Giglio*, the Jencks Act, and/or Federal Rule of Criminal Procedure 16, (a) materials relating to the altercations at USP Pollock (*id.*, Claim IV, ¶¶ 10-15) and (b) material impeachment evidence concerning Mr. Satchell (*id.* ¶ 16):

1. Production by counsel for the government of the following documents and things in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia and the Federal Bureau of Prisons:

    A. Any attachments, including any photographs and any memorandum submitted by Bruce Davidson, to the Federal Bureau of Prisons incident report regarding an altercation at USP Pollock between a group of inmates from Washington, DC, and a group of inmates from Memphis, TN, dated July 27, 2004 (hereinafter, the "DC-Memphis BOP Report").

    B. Any video surveillance recordings reviewed by Federal Bureau of Prisons staff and referenced in the DC-Memphis BOP Report, including but not limited to the recordings referenced in the "Video Surveillance Review" section on pages 14 and 15 of the DC-Memphis BOP Report.

    C. Any drafts of the DC-Memphis BOP Report.

    D. Any video surveillance recordings reviewed by Federal Bureau of Prisons staff and referenced in the Federal Bureau of Prisons incident report regarding an altercation at USP Pollock between a group of inmates from Washington, DC and a group of inmates from Alabama, dated March 19, 2003 (hereinafter, the "DC-Alabama BOP Report"), including but not limited to the recordings referenced in the "Review of Video Tape Evidence" section on pages 15 through 25 of the DC-Alabama BOP Report.

2. Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the FBI, and the DEA, regarding Alphonso Satchell's cooperation pursuant to the plea agreement between Satchell and the United States Attorney's Office for the Eastern District of Virginia in the

case captioned *United States v. Alphonso Lee Satchell*, No. 3:06-cr-00252-JRS (E.D. Va.), including (i) transcripts of any testimony Satchell gave in any grand jury, trial, or other proceeding, (ii) documents or things Satchell provided the United States, and (iii) documents concerning contacts between Satchell or his attorney and Federal, State and local law enforcement agencies during the time period in which Satchell was a cooperating witness, including notes and records of all debriefing sessions or other interviews conducted with Satchell.

3. Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the FBI, and the DEA, regarding Alphonso Satchell's mental health history and use of prescription or other drugs, including any pre-sentence report submitted to the court in the case captioned *United States v. Alphonso Lee Satchell*, No. 3:06-cr-00252-JRS (E.D. Va.).

Good Cause Exists for Each of the Above Requests

At trial, the government sought to prove that Mr. Hager posed a danger to others in prison and that the Federal Bureau of Prisons could not control or contain him.  The government's future dangerousness case centered on two altercations that occurred while Mr. Hager was incarcerated at USP Pollock and one that occurred while he was incarcerated at Northern Neck Regional Jail awaiting trial in this case.  Through the testimony of several BOP employees, including corrections officer Bruce Davidson and special investigative agent John Feeney, the government contended that Mr. Hager was not just one of many participants in the incidents at USP Pollock, but a primary aggressor who, in one of those altercations, stabbed another inmate. And through the testimony of, among other witnesses, Alphonso Satchell, the government contended that Mr. Hager was the sole perpetrator of an unprovoked attack against Mr. Satchell.

The testimony of the government's witnesses about Mr. Hager's role in the altercations at USP Pollock, however, was inconsistent with the conclusions and information contained in the D.C.-Memphis and D.C.-Alabama Reports.  Davidson and Feeney testified that Mr. Hager stabbed an inmate, Nick Starks, during the D.C.-Memphis altercation.  *See* Section 2255 Motion,

Claim II, ¶¶ 43, 45.  The D.C.-Memphis Report, by contrast, concluded that another inmate, not Mr. Hager, stabbed Starks.  But while the government produced the Report, it did not produce other information and material referenced in the Report that would have further undermined the credibility of Davidson's and Feeney's testimony specifically and the government's future dangerousness case generally.

As stated in the Section 2255 Motion, the D.C.-Memphis Report indicates that Davidson submitted a memorandum regarding the incident, a portion of which was quoted in the Report. According to that excerpt, Davidson observed Mr. Hager striking Starks with closed fists and kicks—not stabbing him as Davidson and Feeney claimed at trial.  The Report also identifies a series of seventeen attachments, including memoranda from USP Pollock staff and photographs from video images.  At least one of those photographs captured Mr. Hager during the incident striking and kicking Starks, but not stabbing him.  Had trial counsel asked for this material before trial, as they should have, *id.* ¶ 93—and had the government produced it, as it should have, *id.*, Claim IV, ¶¶ 11, 13-14—trial counsel could have used it to effectively cross-examine the government's witnesses by showing the jury that not only did the Report's conclusions contradict the witnesses' testimony, but the video footage, photographs, and contemporaneous memoranda on which the Report was based did as well.  Production of the material identified in requests 1A and 1B above is therefore necessary for habeas counsel to prove that the government violated Mr. Hager's constitutional rights by failing to disclose *Brady*, Jencks, and Rule 16 material and that trial counsel were constitutionally ineffective in attacking the government's future dangerousness case.

Drafts of the D.C.-Memphis Report, sought in request 1C above, also must be produced. Both Feeney and Davidson testified that they had reviewed drafts of the D.C.-Memphis Report

23

that indicated that Mr. Hager had stabbed Starks during the altercation, but that this conclusion was removed from the final report.  These drafts were Jencks material that the government was obligated to produce, and should be turned over now for that reason alone.  Moreover, Davidson's testimony that the statement about Mr. Hager from the earlier drafts was removed because someone in the Bureau of Prisons hierarchy was "looking out for him" deepened the impression that Mr. Hager actually did stab Starks and that it was the Report, not Davidson's and Feeney's testimony, that was inaccurate.  But without the drafts, trial counsel did not have any way to test the truthfulness of either witness's testimony.  Production of these drafts now is necessary to determine whether these witnesses were lying and trial counsel could have undermined their credibility.

For similar reasons, the government also should be required to produce the video surveillance recordings referenced in the D.C.-Alabama Report, identified in request 1D above.  At trial, Feeney testified that one of the still photographs from the video images of the incident, which were included in the Report, showed Mr. Hager hitting an inmate.  While Feeney admitted on cross-examination that the photograph in question showed Mr. Hager's hands on the inmate, not raised to strike him, he then claimed that an earlier-in-time frame from the video recording itself showed Mr. Hager hitting the inmate.  Because trial counsel never sought production of the video, they had no way to test the accuracy of Feeney's testimony.  As a result, it stood unchallenged, furthering the impression in the jury's mind that Mr. Hager was the aggressor in the incident.  Production of the video now is necessary to determine whether trial counsel could have used it to effectively cross-examine Feeney and whether the government complied with its *Brady* obligations.

The other key piece of the government's future dangerousness case was the incident at Northern Neck involving Alphonso Satchell. Because Satchell was the government's main witness as to what happened during that altercation, it was of paramount importance for trial counsel to adequately cross-examine Satchell by attacking his credibility and the reliability of his testimony. By the time Satchell testified, trial counsel had two important pieces of information available to them to aid their cross-examination. First, Satchell had pleaded guilty in an unrelated criminal case and was cooperating with the government. According to the sentencing memorandum submitted in his case, that cooperation had been "extensive." Second, Satchell's sentencing memorandum described his various mental health diagnoses, his use of prescription anti-psychotic drugs to manage those issues, and his drug abuse. While the government elicited on Satchell's direct examination his plea agreement and his expectation that the government would ask the judge for a sentence reduction in return for his cooperation, trial counsel did not elicit any information about the scope of his "extensive" cooperation. Nor did they elicit any details about his mental health issues or substance abuse.

The information sought in requests 2 and 3 above is information that trial counsel, had they been providing constitutionally effective assistance of counsel, would have sought. Armed with a complete picture of Satchell's cooperation, trial counsel could have shown the jury exactly what Satchell had said and done in exchange for a motion from the government to reduce his sentence. Eliciting the full scope of his cooperation would have undermined Satchell's credibility by clarifying, in a way that would have been more impactful than merely confirming the terms of his plea agreement, Satchell's motivation to fabricate evidence, including evidence against Mr. Hager. Furthermore, if trial counsel had obtained Satchell's pre-sentence report— which contained information about his mental health and drug abuse issues, and which the

25

government was obligated under *Brady* and *Giglio* to produce, *see id.*, Claim IV, ¶ 16 —as well as any other information in the government's possession about these subjects, trial counsel could have cast further doubt on the reliability of Satchell's testimony about Mr. Hager.  Production of these materials now will enable habeas counsel to demonstrate the extent of both trial counsel's ineffective performance and the government's misconduct.

### G.    Discovery Concerning Terrell Hager

<u>Discovery Procedures Sought</u>

Mr. Hager requests the following discovery procedures in support of his claim that trial counsel rendered constitutionally ineffective assistance at the penalty phase with respect to the presentation of mitigating evidence for failing to present the testimony of Terrell Hager (Section 2255 Motion, Claim III, ¶¶ 178-180):

1A.    Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the Office of the United States Attorney for the District of Columbia, the FBI and the DEA, regarding the homicide of DeCarlos Bannister on December 31, 1992, on the 2900 block of Nelson Place, S.E.

1B.    Issuance of a subpoena to the D.C. Metropolitan Police Department directing it to produce all documents and information in its possession regarding the DeCarlos Bannister homicide described in paragraph 1A above.

2A.    Production by counsel for the government of all documents and information in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia, the Office of the United States Attorney for the District of Columbia, the FBI and the DEA, regarding the shooting of the man who attempted to rob an individual known as "Black."

2B.    Issuance of a subpoena to the D.C. Metropolitan Police Department directing it to produce all documents and information in its possession regarding the shooting of the man who attempted to rob an individual known as "Black" described in paragraph 2A above.

Good Cause Exists for Each of the Above Requests

As set forth in the Section 2255 Motion, Mr. Hager's brother, Terrell Hager, possessed a wealth of information regarding the childhood the two boys and their other siblings had endured and the circumstances that pushed them into the streets and into the dangerous world of low level drug dealing.    As reflected in trial counsel's opening statement at the penalty phase, they recognized that Terrell would be an extraordinarily compelling witness on Mr. Hager's behalf and had, at that point, every intention of making him the star of their mitigation case. Ultimately, however, they declined to call him to the stand.

Terrell's testimony would have stood in stark contrast to the disastrous mitigation case that trial counsel did present—Dr. Cunningham ticking off generic risk factors for why Mr. Hager was likely to become a criminal; brief, cold testimony by Mr. Hager's parents that dehumanized them and, by extension, their son; testimony from adult family members that presented a skewed picture of Mr. Hager's upbringing—and provided exactly the type of compelling, humanizing narrative of Mr. Hager's life that enables juries to begin to experience the defendant as a human being and to find that his life is worth saving.   Considered in combination with all of the other instances of deficient performance that trial counsel rendered at the guilt and penalty phases of the trial, habeas counsel will show that, absent those errors and omissions, there is a reasonable probability that the outcome of the sentencing proceeding would have been different.

In its Response, the government asserts that trial counsel did not render deficient performance by failing to present Terrell Hager's testimony because it would have been able to cross-examine him "as to his bias and credibility."   Resp. at 146.   Terrell's bias, it suggests, would have been exposed by cross-examination that established that he and Mr. Hager "would

27

do anything for each other," and had "even killed for each other." *Id.* The first category of such evidence that it claims it would have used concerns the homicide of DeCarlos Bannister. Albeit with no supporting facts, the government appears to allege that Terrell Hager killed DeCarlos Bannister "for" Mr. Hager, from which the jury could infer that Terrell Hager would be willing to lie under oath for Mr. Hager also.[4]

Habeas counsel requires discovery of all available information in possession of the government and law enforcement regarding the Bannister homicide in order to properly develop the facts underlying the government's bias theory. If there is in fact no evidence that Terrell killed Bannister "for" Mr. Hager, then the incident could not have been used to cross-examine Terrell and this aspect of the government's argument fails.

Similarly, habeas counsel requires discovery of all available information in possession of the government and law enforcement regarding the shooting of the man who attempted to rob an individual known as "Black," which is another incident cited by the government as fodder for cross-examination of Terrell. Firstly, it appears possible that the only information the government has about this incident is gleaned from conversations between Mr. Hager and his trial counsel that are described in the files of trial counsel that were provided to the government in discovery. If this is the case, obviously the government could not have used the incident to cross-examine Terrell at trial because it would not have had access to trial counsel's files at that time and thus would have no knowledge of the alleged shooting. And again, even assuming the government does have independent information regarding the incident, it would only be permissible material for cross-examination if there is evidence that Terrell committed the

---

[4] Such a theory of bias is the only conceivable way in which cross-examination of Terrell regarding his culpability for the Bannister homicide could have been permissible, as federal evidence law prohibits the use of prior bad acts that are unrelated to a witness's truthfulness simply to smear the witness's character.

shooting "for" Mr. Hager. Accordingly, habeas counsel require discovery regarding this shooting also.[5]

### H. Discovery Concerning Records from Third Parties Relevant to Claim III of the Section 2255 Motion

Discovery Procedures Sought

Mr. Hager requests the following discovery procedures in support of (i) his claim that trial counsel was constitutionally ineffective at the penalty phase of trial with respect to the presentation of mitigating evidence (Section 2255 Motion, Claim III, ¶¶ 2-177), and (ii) his claim that he is ineligible for a sentence of death because he is a person with Intellectual Disability (*id.*, Claim V):

1. Records of the District of Columbia Superior Court

    A. Issuance of a subpoena to inspect premises to D.C. Superior Court Criminal Division directing it to allow habeas counsel to inspect criminal case indices from 1944, 1947-1949, and 1951.

    B. Issuance of a subpoena to the D.C. Superior Court Criminal Division directing it to produce all case files from criminal prosecutions from 1943 through 1965 for which habeas counsel have case numbers, to include any additional case numbers discovered after the search of the indices in paragraph 1A above.

    C. Issuance of a subpoena directing the D.C. Superior Court Criminal Division to produce the file in United States v. Thomas Hager Sr., M-506-78.

    D. Issuance of a subpoena directing the D.C. Superior Court Domestic Relations Division to produce the files in the following cases:

        i. DHS (Fields) v. Thomas Hager, RS 59-77

---

[5] The government cites a third incident, the homicide of Quan Harris, as its final subject for cross-examination of Terrell. However, the government's own allegations establish that there is no argument that Terrell arranged for this homicide "for" Mr. Hager; Harris was killed—according to the government's theory—by friends of Terrell's because he was a witness against Terrell in his own murder case. Evidence that Mr. Hager had allegedly told a witness at one point that he planned to kill Harris was plainly not a proper subject of cross-examination of Terrell, for alleged evidence of what Mr. Hager said he was willing to do for his brother sheds no light on the willingness of Terrell to lie on the witness stand for Mr. Hager. Mr. Hager accordingly requests no discovery regarding this incident.

      ii.      DHS (Smith) v. Loneldon Hager, RS 124-77

      iii.     DHS (Windsor) v. Loneldon Hager, 64-83

2.     Records of D.C. General Hospital

    A.     Issuance of a subpoena to the D.C. Office of Healthcare Finance for the medical records for Mr. Hager and his family members for which there exists reason to believe they received treatment at the facility, i.e. Mr. Hager's siblings, parents, and grandparents.

3.     Records of D.C. Public Schools

    A.     Issuance of a subpoena directing the District of Columbia Public Schools to produce educational records for Mr. Hager, his siblings, his mother and his mother's siblings, all of which are known to have attended public school in the District of Columbia.

4.     Records of the D.C. Metropolitan Police Department

    A.     Issuance of a subpoena directing the Metropolitan Police Department to produce the criminal history files for each of Mr. Hager's family members known to have had criminal charges brought against them in the District of Columbia, namely his father, maternal and paternal uncles, paternal grandfather and great uncles.

<u>Good Cause Exists for Each of the Above Requests</u>

A central and indispensable component of an adequate mitigation investigation in a capital case is an exhaustive search for all available background and psychosocial history records regarding the client and his family. The search must include school records, medical and mental health records, social services records, court records, juvenile and criminal history records, military records, employment records—virtually any category of records that may contain information that is important to a thorough and accurate assessment of the client, his family history and the combination of circumstances that led him to being charged with a capital crime.

Records are often valuable evidence in themselves, for they frequently predate the crime and were generated for reasons which have no connection to the criminal case. They may also

provide counsel with new, previously unknown information about the client and his family, they may reveal new areas of investigation, and they may generate new topics for questioning of lay witnesses of which counsel would otherwise have been unaware. Records can often help to reveal patterns of hardships across multiple generations of a client's family, such as mental illness, poverty, racism and exposure to psychological trauma. Records from independent sources allow experts to triangulate data, or confirm significant points by the confluence and consistency of information from multiple sources, and to corroborate and confirm the accounts of witnesses and of the client that experts rely on in reaching their conclusions. In this way, records are an important tool to rebut the inevitable government attacks on the credibility of the expert's underlying data and of their opinions and conclusions.

As set forth in the Section 2255 Motion, trial counsel's mitigation investigation as a whole, and their search for social history records in particular, was constitutionally inadequate. Habeas counsel have gathered, and are continuing to gather, many of the records that trial counsel failed to obtain, using informal methods such as making requests for public records and seeking authorization for release of otherwise confidential information from witnesses. However, there are some records for which all informal attempts to obtain them have been unsuccessful. It is those records for which habeas counsel now seek authorization to utilize formal discovery procedures.

With respect to records of the D.C. Superior Court, request 1.A. seeks access to certain indices of criminal cases to which habeas counsel's informal requests for access have been denied. The criminal division maintains on-site a set of volumes containing indices from 1943 through 1965. These indices are the only way to search for records that predate the computerization of the D.C. Superior Court records system. Habeas counsel's mitigation

31

specialist has been granted access to a subset of the indices on some occasions, and denied all access on other.  To date, habeas counsel have not been able to view the five indices listed.  There is good cause for granting habeas counsel access to these indices.  With respect to the index for 1944, counsel know from other sources that Mr. Hager's great uncle was charged with and convicted of murdering his girlfriend in D.C. Superior Court during that year.  Access to the index will permit habeas counsel to identify the case number and thereafter to locate the court file on the prosecution.  With respect to the other four indices, searches of adjacent years have in every case uncovered criminal proceedings against members of Mr. Hager's family and so there is every reason to believe that additional cases will be identified within the four remaining indices.

Request 1.B. seeks to discover the case files for the pre-computerization cases that habeas counsel have already identified through searches of the indices that have been made available to them, as well as any additional cases that are uncovered by the search requested in 1.A.  Habeas counsel currently has a list that includes cases for 14 of Mr. Hager's family members, all with case numbers.  Request 1.C. seeks production of the case file pertaining to charges of ADW Gun, Simple Assault, PPW Gun and CDW Gun that were brought against Mr. Hager's maternal grandfather.  The docket for the case is on the court computer, but informal efforts to obtain the court file containing the full details of the case have been unsuccessful.

Request 1.D. also seeks production of specific case files for which habeas counsel have case numbers but have been unable to obtain informally despite requests, this time from the Domestic Relations Division.  All three files sought concern child support actions, the first against Mr. Hager's father, Thomas Hager, seeking support for Mr. Hager and his younger

brother Terrell, and the other two against Mr. Hager's paternal uncles, seeking support for two of Mr. Hager's cousins.

With respect to D.C. General Hospital, habeas counsel seek medical records for immediate family members of Mr. Hager who are known, or believed, to have been treated there. D.C. General was the District's principal public hospital until it closed in 2001. According to the D.C. Archives, when the hospital closed patient records were transferred to the custody of the D.C. Office of Healthcare Finance. Informal attempts to obtain records from that agency have been unsuccessful and so habeas counsel now seek authorization to issue a subpoena to direct their production.

With respect to D.C. Public Schools, habeas counsel seek authorization to issue a subpoena to obtain the records of Mr. Hager, his siblings, his mother and his mother's siblings, all of whom attended public school in the District. Despite extensive efforts, habeas counsel's informal attempts to obtain even Mr. Hager's records have been fruitless. Plainly, Mr, Hager's school records will contain information that is vital to the development of his claim that he is a person with Intellectual Disability, as well as to the broader claim that trial counsel were ineffective in failing to present evidence of Mr. Hager's cognitive impairments in mitigation. The school records of his family members will also contain information relevant to both claims. Intellectual Disability frequently has a genetic component and so evidence of impairment in family members is corroborative of the existence of the disability in the client. Also, evidence of impairments in those who parented Mr. Hager or were otherwise significant parts of his life is important information that is necessary in order to fully understand Mr. Hager's experiences as a child and adolescent and the array of disadvantages he faced.

33

Finally, request 4.A. seeks authorization to subpoena from the Metropolitan Police Department production of the criminal history files of each of Mr. Hager's family members known to have had criminal involvement in the District of Columbia, namely his father, maternal and paternal uncles, paternal grandfather and great uncles. Once again, the information contained in these files will contribute to a fuller understanding of the family circumstances in which Mr. Hager grew up, as well as those in which his parents themselves were raised.

## I.      Discovery of Fairfax County Grand Jury Testimony

Discovery Procedures Sought

Mr. Hager requests the following discovery procedures in support of (i) his claim that the government violated his right to a fair trial by failing to produce, in accordance with its obligations under the Jencks Act, Fairfax County Circuit Court grand jury testimony of one or more witnesses who testified at Mr. Hager's trial (Section 2255 Motion, Claim IV, ¶¶ 6-8), (ii) his claim that trial counsel rendered constitutionally ineffective assistance at the guilt phase of trial (*id.*, Claim I):

> 1.      Production by counsel for the government of all transcripts of testimony before a Fairfax County Circuit Court grand jury of any witness who testified at Mr. Hager's trial in this case that are in the actual or constructive possession of the United States, including the Office of the United States Attorney for the Eastern District of Virginia.

Good Cause Exists for the Above Request

Habeas counsel is aware of at least one witness at Mr. Hager's trial—Detective Robert Murphy—who, before the trial, testified before a Fairfax County Circuit Court grand jury regarding the killing of Ms. White. That grand jury returned an indictment for murder against Mr. Hager, Lonnie Barnett, Jr., and Arlington Johnson, Jr. on the day of Detective Murphy's testimony. The government never produced a transcript of that testimony, even though it was required to produce it under the Jencks Act. Trial counsel also failed to seek to compel

production of the transcript, even though it may have contained material they could have used to impeach Detective Murphy. The government should now be compelled to turn over this transcript, as well all other transcripts of testimony before the Fairfax County grand jury of any witness who testified at Mr. Hager's trial. Production of such transcripts will allow habeas counsel to assess the extent to which Mr. Hager was prejudiced by the government's failure to disclose this information and trial counsel's failure to ask for it.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court enter the proposed discovery order accompanying this submission.

Dated: April 7, 2017

Respectfully submitted,

/s/ Blair G. Brown
Blair G. Brown (Va. Bar No. 29706)
ZUCKERMAN SPAEDER LLP
1800 M Street, NW, Suite 1000
Washington, DC 20036
(202) 778-1829 (telephone)
(202) 822-8106 (facsimile)
bbrown@zuckerman.com

*Counsel for Defendant Thomas Morocco Hager*

/s/ Julie Brain
Julie Brain
916 South 2nd Street
Philadelphia, PA  19147
(267) 639-0417 (telephone)
Juliebrain1@yahoo.com

*Counsel for Defendant Thomas Morocco Hager*

35

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April, 2017, I have caused a copy of this **DEFENDANT'S PROPOSED DISCOVERY PLAN** to be served on the following by electronically filing it on the court's ECF system:

James L. Trump
Christopher Catizone
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
jim.trump@usdoj.gov
christopher.catizone@usdoj.gov


/s/ Blair G. Brown
Blair G. Brown