IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA        )
                                )
        v.                      )
                                )        No. 1:05-cr-264-LMB
THOMAS MOROCCO HAGER,           )
                                )
        Defendant.              )

RESPONSE OF THE UNITED STATES TO
DEFENDANT'S PROPOSED DISCOVERY PLAN [DKT 616]

As the Court is well aware, to resolve Hager's § 2255 motion the Court must determine whether—having "eliminate[d] the distorting effects of hindsight, . . . reconstruct[ed]] the circumstances of counsel's challenged conduct, and . . . evaluate[d] the conduct from counsel's perspective at the time, *Strickland v. Washington*, 466 U.S. 668, 689 (1984)—trial counsel's representation fell below an objective standard of reasonableness, and, if so, whether Hager was prejudiced. In moving toward that ultimate issue, the question now before the Court is whether the discovery plan proposed by Thomas Hager's habeas counsel provides "specific allegations [which] show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy*, 520 U.S. at 908–09 (alterations omitted). For the reasons below, the government respectfully submits that there is no "reason to believe" that any of the discovery proposed by habeas counsel will be necessary or informative for the Court in resolving the claims presented in Hager's § 2255 motion. Accordingly, the government urges the Court to reject Hager's discovery plan in its entirety and set a date for habeas counsel to file their reply in this case.

**ARGUMENT**

As the Court is well aware, "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rather, Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that discovery is only available upon a showing of "good cause." To meet this standard, Hager must provide "specific allegations [which] show reason to believe that the [he] may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy*, 520 U.S. at 908–09 (alterations omitted). The Fourth Circuit and other courts of appeals have made clear that absent such specific allegations, even a capital habeas defendant is not entitled to discovery.[1]

A. **Hager's discovery requests must be analyzed through the lens of *Strickland v. Washington.***

Hager's requests for discovery must be analyzed against the legal standard that will govern his overall § 2255 petition: whether, under *Strickland*, Hager's trial counsel's representation fell below an objective standard of reasonableness, and, if so, whether Hager was prejudiced. If Hager does not make "specific allegations" that provide "reason to believe" that the discovery he seeks will help him "demonstrate that he is entitled to relief," *Bracy*, 520 U.S. at 908–09, under the *Strickland* standard, then the Court must deny discovery. *See, e.g.*, *Peel v. United States*, 2013 WL

---

[1] *See, e.g.*, *Quesinberry v. Taylor*, 162 F.3d 273, 279 (4th Cir. 1998) ("[Defendant's] requests for discovery are without merit, and the district court did not abuse its discretion in denying them."); *United States v. Webster*, 392 F.3d 787, 801–02 (5th Cir. 2004) ("Conclusional allegations are insufficient to warrant discovery; the petitioner must set forth specific allegations of fact."); *United States v. Fields*, 761 F.3d 443, 483–84 (5th Cir. 2014), *revised* (Sept. 2, 2014) ("The district court held that Fields was not entitled to discovery because he "failed to provide sufficient specific allegations to demonstrate that any of his discovery requests will yield evidence to support any of his grounds for relief." Reasonable jurists would not debate the district court's holding because Fields has not provided specific allegations that lead us to believe he could demonstrate his entitlement to relief if the facts are fully developed."); *see also, e.g.*, *Lenz v. True*, 370 F. Supp. 2d 446, 455 (W.D. Va. 2005) ("[A] petitioner must 'state what he hoped to find in those records or how they would help him prosecute his action.'" (alterations omitted)).

120190, at *5 (S.D. Ill. Jan. 9, 2013) ("In summary, the discovery petitioner seeks consists of information that was introduced at trial, would have been excluded by the Court, or is of only slight relevance. Thus he has not made any specific allegations that would give the Court reason to believe he may, if the facts are fully developed, be able to demonstrate that his attorneys' representation fell below an objective standard of reasonableness, and that he was prejudiced as a result.").

Simply stated, despite having now received an opportunity to do so, Hager has not identified any area for discovery that will make a difference in the Court's evaluation of his claims under *Strickland*. This is evident in the language used by habeas counsel in describing their proposed discovery, which repeatedly seeks "all documents and information" or "all evidence" on a given subject "in order to fully develop the relevant facts" or "in order to properly develop the facts," or "in order to establish the full scope" of this issue, or "in order for habeas counsel to establish the full extent" of that issue. Such broad requests turn the *Strickland* standard on its head and would take this litigation back to the starting gate. *See, e.g.*, *United States v. Spann*, 2009 WL 2018508, at *5 (E.D. Pa. July 9, 2009) (denying requested discovery where defendant "only indicate[d] that granting discovery would place the court 'in a much better position to make a ruling on [defendant]'s § 2255'"). In addition to having had a year's investigation "to establish the full scope of their claims" before filing their motion,[2] and now having the government's response which has narrowed the possible meritorious issues, habeas counsel has had in their possession

---

[2] Habeas counsel persist in their inaccurate contention that they have "not sought or obtained any Court-ordered discovery." [Dkt 616 at 3.] As the Court noted at the most recent status hearing, however, this is simply false. While the government does not have access to the under-seal requests made by habeas counsel and thus is not aware of the full scope of habeas counsel's investigative activities so far, it is clear that habeas counsel has already spent hundreds of labor hours interviewing witnesses, obtaining documents, and retaining at least three expert witnesses solely for the purpose of Hager's habeas petition.

trial counsel's files, which will be the key "discovery" for the Court to consider in evaluating Hager's claims under the *Strickland* standard. Rather than home in on specific issues, habeas counsel has in fact sought to broaden the universe of facts and potential claims. There is no "reason to believe" that the discovery proposed by habeas counsel—which often repeats, virtually verbatim, the allegations in Hager's initial § 2255 motion filed almost two years ago, and which almost totally ignores the government's response—will assist the Court in resolving the ineffectiveness claims before it. *See, e.g.*, *Brancaccio v. United States*, 2015 WL 4104847, at *9 (S.D.N.Y. July 2, 2015), *appeal dismissed* (Sept. 28, 2015) ("Brancaccio provides no 'reasons' for his discovery, other than to cross-reference his Section 2255 Petition.").

"Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging . . . for evidence of some unknown wrongdoing." *Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 531 (2009). At bottom, the discovery plan proposed by habeas counsel is a request for a fishing license to find new evidence to support Hager's claims, not an attempt to identify specific issues for which the Court will need particular facts in order to resolve the legal disputes as now narrowed by the government's response. But "[g]eneralized statements regarding the possible existence of discoverable material do not constitute good cause." *Capalbo v. United States*, 2012 WL 611539, at *3 (S.D.N.Y. Feb. 24, 2012). "The court need not 'allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation.'" *United States v. Mohsen*, 2012 WL 1945489, at *3 (N.D. Cal. May 30, 2012); *see also, e.g.*, *Moore v. United States*, 2015 WL 6727001, at *7 (D. Md. Nov. 2, 2015) (Here, the reason that [defendant] proffers for producing the documents— essentially, to find evidence to support his claims—does not constitute good cause, and appears to be nothing more than a fishing expedition. [Defendant] bears the burden of demonstrating good cause, and has failed to meet this burden. Aside from speculation, [defendant] offers no reason for

4

this Court to believe that facts uncovered during discovery would entitle him to relief." (citation omitted)), *appeal dismissed*, 653 F. App'x 791 (4th Cir. 2016), *cert. denied*, 137 S. Ct. 324 (2016).

A defendant may not "use the habeas corpus discovery mechanism to explore his case 'in search of its existence.'" *United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004). Nor may he "use discovery to go on a 'fishing expedition' through the Government's files in search of evidence to support an imagined and fanciful claim." *Runyon v. United States*, 2017 WL 253963, at *8 (E.D. Va. Jan. 19, 2017) (internal quotation marks omitted). As the Fourth Circuit has stated, it is "simpl[e]" that a defendant's discovery request fails where—even though "he has identified specific information sought"—"he has not demonstrated that such discovery would result in him being entitled to habeas relief on [his specific] claim" or shown "that the information sought is material to the merits of his [specific] claim." *Stephens v. Branker*, 570 F.3d 198, 213 (4th Cir. 2009).[3] The "specific claims" here are Hager's ineffectiveness allegations. And the opened-ended discovery now proposed by habeas counsel will not assist the Court in resolving those specific claims.

---

[3] *See also, e.g.*, *Titus v. United States*, 2014 WL 2215705, at *20 (E.D. Va. May 28, 2014) (concluding "that Petitioner has not shown the requisite good cause" where he "has not established a reasonable inference that the discovery he requests would yield materials that would entitle him to relief"); *see also, e.g.*, *Bedewi v. United States*, 583 F. Supp. 2d 72, 80 (D.D.C. 2008) ("[Defendant] gives simply no explanation for how such discovery could alter the outcome of his § 2255 proceedings."); *Blackwell v. United States*, 2008 WL 2390787, at *2 (S.D. Ohio June 9, 2008) ("It does not now appear from the record either that any of the requested documents are necessary for resolution of petitioner's claims, or that the requested discovery would establish that he is entitled to relief."); *Williams v. United States*, 2016 WL 4007081, at *2 (N.D. Iowa July 25, 2016) ("The court finds that any relief, if appropriate, can be determined based on the record currently before the court and that the discovery requested, if produced, would not entitle the movant to relief."); *United States v. Young*, 2014 WL 2931826, at *11 (E.D. Mich. June 30, 2014) ("Rather than make specific allegations, as Rule 6(a) requires, [defendant] makes vague assertions and seeks materials to form better ones. . . . [T]he court is not persuaded that Defendant will be able to demonstrate his entitlement to relief and thus the Court will not order the expenditure of public funds to provide him with the materials he seeks under Rule 6(a).").

**B.      Hager may not § 2255 discovery in an attempt to obtain discovery that was obtained, or could have been obtained, by his trial counsel.**

Essentially all of the discovery sought by habeas counsel seeks to duplicate factual investigation that was conducted, or could have been conducted, by Hager's trial counsel. That is not the purpose of discovery in a § 2255 proceeding. Rather, as one district court has noted where the defendant "essentially assert[ed] that his trial counsel unreasonably failed to seek the discovery that petitioner seeks now," "[i]f not more than that were required for a showing of good cause under *Bracy*, habeas petitioners would have a free pass to conduct any discovery remotely related to their case." *United States v. Kalfsbeek*, 2013 WL 129409, at *4 (E.D. Cal. Jan. 9, 2013) (internal quotation marks omitted); *see also, e.g.*, *Kelley v. United States*, 2014 WL 2921821, at *2 (E.D. Tenn. June 27, 2014) (Defendant "appears to be operating under the misconception that filing a § 2255 motion gives him a license to try his case and have unfettered access to all discovery that would have been presented had the matter gone to trial."); *Winkler v. United States*, 2013 WL 56568, at *3 (W.D. Tex. Jan. 3, 2013) (defendant not entitled to discovery where he "merely speculates that his original expert failed to conduct an adequate inspection").

Indeed, much of the discovery now sought by habeas counsel was in fact turned over by the government as part of pretrial discovery, or was in fact obtained by Hager's trial counsel during their vigorous independent pretrial investigation. Habeas counsel now seeks additional discovery in this § 2255 proceeding essentially to double-check whether all materials were obtained by trial counsel. That is not the purpose of the § 2255 discovery provisions.

Relatedly, much of the discovery now sought by habeas counsel was also sought by trial counsel. Before trial, trial counsel submitted an ex parte motion for issuance of subpoenas duces tecum seeking documents relating to forty-one individuals who "bear[] a particularized relation to the defendant." [Dkt 74 at 2.] Among those forty-one individuals were Hager's co-conspirators,

several of his family members, and almost all of the individuals whose records habeas counsel now seek, including DeCarlos Bannister, Jerome Robinson, Cornell Coplin, Loneldon Windsor, Anthony Field, Charles Johnson, Paul Lucas, and David Parker. [Dkt 74 at 2–4.] Trial counsel sought subpoenas for 114 "agencies and offices," including several from which habeas counsel now seek discovery in this § 2255 proceeding, such as the FBI, DEA, and ATF; the Bureau of Prisons; the police departments or sheriff's offices for Prince George's County, Fairfax County, Stafford County, and Spotsylvania County; the D.C. Metropolitan Police Department; the D.C. Superior Court; the D.C. Department of Public Schools (as well as the public schools from the surrounding counties in Virginia and Maryland); and the D.C. Department of Human Services, which appears to administer the entity formerly known as D.C. General Hospital. [Dkt 74 at 7–10.]

Trial counsel sought subpoenas for these materials under the comparatively permissive standards of Fed. R. Crim. P. 17, which—unlike the high "good cause" standard that applies to discovery under the § 2255 rules—provides that subpoenas may be quashed "if compliance would be unreasonable or oppressive." Of course, even Rule 17 "'does not confer a fishing license upon litigants in criminal cases.'" [Dkt 114 at 8 (quoting *United States v.* King, 194 F.R.D. 569, 573 n.3 (E.D. Va. 2000)).] Rather, "the party requesting a trial subpoena must 'clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity.'" [*Id.* at 9 (quoting *United States v. Nixon*, 418 U.S. 683, 700 (1974)).]

Even applying this comparatively permissive standard, Judge Ellis rejected the lion's share of the subpoenas sought by trial counsel, noting that "[b]y any measure this subpoena request is breathtakingly broad in scope and markedly lacking in specificity of the documents sought," "manifestly, a fishing expedition," and "an indiscriminate, blunderbluss filing," made "in the hope

7

of hitting at least one" target. [Dkt 114 at 7.] Judge Ellis further noted that the subpoena requests were improper to the extent that they sought documents that "bear[] *potential* significance to defendant's case," for "this amounts to no more than the 'mere hope' of discovery favorable evidence which is insufficient to support issuance of a subpoena duces tecum." [Dkt. 114 at 10 (alteration and internal quotation marks omitted).] Judge Ellis also noted that trial counsel retained a private investigative firm [Dkt 114 at 13 n.5], and, as the government noted in its response to Hager's § 2255 motion, the private investigators were able to visit and obtain documents from many of the offices and agencies from which trial counsel sought subpoenas and from which habeas counsel now seek additional materials.

It cannot be that a defendant's discovery opportunities are *broader* at the § 2255 phase than at trial. To the considerable extent that the discovery now sought by habeas counsel was obtained or sought by trial counsel, that alone is reason to deny the requests.

### C.    Hager may not use the absence of documents to speculate his way into impermissible discovery.

In seeking to justify their open-ended discovery requests, habeas counsel frequently cite *Brady*, arguing, for example, that certain discovery is necessary "to prove that the government violated Mr. Hager's constitutional rights by failing to disclose *Brady*, Jencks, and Rule 16 material" or that other discovery is "necessary to determine . . . whether the government complied with its *Brady* obligations." [Dkt 616 at 23, 24.] The government reiterates that it fully complied with its discovery obligations at the time this case was tried in 2007. In any case, and as the Supreme Court has stated, "[m]ere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review," *Strickler v. Greene*, 527 U.S. 263, 286 (1999), and mere allegations that documents were not produced are not enough to entitle a habeas defendant to discovery. *See, e.g.*, *United States v. Haft*, 2013 WL

8

5787421, at *2 (D. Or. Oct. 28, 2013) ("Merely alleging that the supervising AUSA 'may' have altered the plea agreement is not a 'specific allegation,' but instead, is based upon speculation and the government's actions in other cases, that may have involved unrelated and distinct factual scenarios. . . . [S]uch 'fishing expeditions' may not be used to investigate speculative facts.").

Nor may habeas counsel use speculation about missing evidence to obtain discovery on their ineffectiveness arguments. "The question of whether the government withheld *Brady* evidence is entirely separate from the question of whether [trial] counsel was ineffective for failing to investigate, interview, or call certain witnesses." *Richardson v. United States*, 2011 WL 2682963, at *3 (S.D. Fla. July 11, 2011). Of course, the absence of material, just as it does not prove a *Brady* violation, does not support an ineffectiveness claim. *United States v. Fields*, 761 F.3d 443, 480 (5th Cir. 2014), *revised*, (Sept. 2, 2014) ("[Defendant] cannot show that his claim is debatable simply by pointing to a lack of physical evidence on one issue; this is not the type of 'specific allegation' that would give us 'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" (quoting *Bracy,* 520 U.S. at 908–09)); *United States v. Hall*, 2013 WL 1694661, at *2 (D. Nev. Apr. 18, 2013) ("The absence of notes would not prove a failure to investigate. Nor would anything in the Federal Public Defender's file shed light on whether [the attorney] conducted the investigations he claims to have conducted.").[4]

---

[4] As the government noted in its § 2255 response, to the extent Hager seeks to raise a standalone *Brady* claim, he must first surmount the doctrine of procedural default. That is why Hager's § 2255 motion generally presented these claims through the vehicle of ineffective assistance. But because Hager is pursuing ineffective assistance claims, any allegation that something was not produced is an intermediate step in showing that his trial counsel were ineffective in not obtaining it. *See, e.g.*, *Pomales v. United States*, 2009 WL 2382630, at *4 (N.D. Ohio July 31, 2009) ("Even if [defendant] could show that there was a *Brady* violation in his case, a point on which this Court takes no position, [defendant] cannot show that 'there is reasonable probability that, had the evidence been

**D.      Response to Hager's specific discovery requests**

Applying the principles above, the Court must reject all of habeas counsel's specific discovery requests. Simply stated, habeas counsel fail to establish "good cause" for any of the requests because they do not offer "specific allegations" that provide "reason to believe" that the discovery sought will help Hager "demonstrate that he is entitled to relief" under the applicable standard: the two-pronged *Strickland* test. Unless the Court requires the requested discovery to decide a particular issue, discovery is not appropriate. Further, much of the discovery sought by habeas counsel was either obtained by, sought by, or available to trial counsel. As discussed above, none of these are appropriate reasons for a court to permit discovery in a § 2255 proceeding.

*1.      Charles Johnson*

Regarding government witness Charles Johnson, habeas counsel seek discovery of "all documents and information" from numerous federal government entities (the United States Attorney's Offices for the Eastern District of Virginia and the District of Columbia, as well as the FBI and the DEA), (1) "regarding the five categories of crimes for which Charles Johnson received immunity from prosecution" under a 1999 plea agreement; (2) "regarding contacts between Charles Johnson" and "Federal, State, and local law enforcement agencies during the time period in which Johnson was a cooperating witness, including notes and records of all debriefing sessions or other interviews conducted with Johnson"; and (3) "regarding search and arrest warrants issued for Charles Johnson by the Stafford County Sheriff's Department in approximately March, 1998, and charges involving possession of marijuana and a stolen gun filed in Stafford County in approximately May, 1998." [Dkt 616 at 6–7.] In addition, habeas counsel seek subpoenas to obtain

---

disclosed to the defense, the result of the proceeding would have been different.' This is not a case where impeachment evidence would have led to a different result . . . ." (citation omitted)).

the above categories of materials from various state authorities, including (1) the D.C. Metropolitan Police Department, (2) the Fairfax County Police Department, (3) the Fairfax County Commonwealth Attorney's Office, (4) the Stafford County Police Department, (5) the Stafford County Sheriff's Department, and (6) the Stafford County Commonwealth Attorney's Office. [Dkt 616 at 6–7.] Incredibly, habeas counsel describe these requests as "narrowly and precisely tailored." [Dkt 616 at 10.]

Habeas counsel cannot establish good cause for the discovery of these materials because, as described above, even if they were able to discover information that would tend to impeach Charles Johnson, there is no "reason to believe" that such information would assist Hager in "demonstrat[ing] that he is entitled to relief." Indeed, habeas counsel overlook the winding trail of inferences and assumptions that must be made for the information relating to Johnson to even be relevant to the Court's *Strickland* analysis.

*First*, habeas counsel assume that, if given access to Johnson's criminal files, they will identify information that could have impeached his testimony. *Second*, assuming that such impeachment material is discovered, habeas counsel assume that trial counsel was ineffective in failing to obtain it in the first place, even though (as discussed above) trial counsel did in fact seek subpoenas to obtain similar information and even though trial counsel dispatched their investigator to identify similar information.[5] *Third*, assuming that impeachment material exists and trial counsel was ineffective for not having obtained it, habeas counsel simply assume that it would

---

[5] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Unless and until habeas counsel can show that these efforts were ineffective, their proposed discovery will not assist Hager in demonstrating that he is entitled to relief.

11

have been usable to impeach Johnson under Rule 608(b), which provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." *Fourth*, habeas counsel ask the Court to assume that the vigorous cross-examination of Johnson actually conducted by trial counsel was constitutionally deficient.[6] *Fifth*, and again assuming that all the above assumptions hold, habeas counsel assume that the marginal extra impeachment of Johnson "would have led the jury to discredit Johnson's testimony in its entirety" [Dkt 616 at 10.] As the government pointed out in its response to Hager's § 2255 motion, much of Johnson's testimony—especially regarding Hager's substantial planning and premeditation in murdering Barbara White—was corroborated by other witnesses, including Hager's co-conspirators, who testified that Hager brooded for a week after White discovered where Hager lived, then collected his accomplices, drove from D.C. to Virginia, handed out gloves and masks, and did not leave White's apartment until he was sure she was dead. *Sixth*, habeas counsel assume that "it is solely on the basis of [Johnson's] testimony that the government was able to argue to the jury that Mr. Hager planned from the outset to murder Barbara White," and that, with Johnson discredited, "there would have been virtually no evidence supporting the substantial planning aggravating circumstance" as opposed to "the far more plausible theory that Mr. Hager had no specific plan to murder Ms. White and that events in Ms. White's apartment that night unfolded haphazardly and chaotically." [Dkt 616 at 8.] Further, habeas counsel claims that without Johnson's testimony the government's nexus theory "would have been further eroded." [Dkt 616 at 10.] As just noted above and as discussed in the government's response, this is simply not true.

---

[6] Again, in their discovery motion habeas counsel simply ignore the government's lengthy response regarding the cross-examination of Johnson and go back to the initial allegations in their § 2255 motion. Discovery will not help demonstrate entitlement to relief unless and until the actual cross-examination conducted by trial counsel is shown to be ineffective.

There was overwhelming evidence at the guilt phase in support of the government's nexus theory, and overwhelming evidence that Hager killed Barbara White after substantial planning and premeditation. *Finally*, habeas counsel assume that, if Johnson were impeached with the hoped-to-be-discovered information, the jury would have acquitted Hager or declined to impose the death penalty.There is no basis for *any* of the assumptions above, and thus no basis for the discovery sought regarding Charles Johnson.

> 2.    *Shenita King*

Habeas counsel requests "all documents and information . . .  regarding any compensation, including any monetary or in-kind compensation, paid to Shenita King for her cooperation with the government." [Dkt 616 at 11.]

As with Charles Johnson, habeas counsel cannot establish good cause for the discovery of these materials because, there is no "reason to believe" that such information would assist Hager in "demonstrate[ing] that he is entitled to relief" in light of the numerous inferences and assumptions needed before additional information about King would even be relevant to the Court's *Strickland* analysis.

*First*, even though they concede that they and trial counsel were aware that "King had received at least $72,935 from the government," habeas counsel simply speculate that there may be additional, undisclosed incentives, arguing that it is "necessary for habeas counsel to ascertain whether King received any other compensation from the government." *Second*, the requested discovery would not assist Hager in demonstrating his entitlement to relief absent an assumption that trial counsel—who had received information about King's incentives from the government— were ineffective for not seeking such additional information. *Third*, habeas counsel assume that, if there were an additional incentive offered to King, it would have been of such a magnitude such that trial counsel would have been ineffective under *Strickland* if they had declined to use this

information to cross-examine King. *Fourth*, habeas counsel assume that the failure to cross-examine King with the additional hoped-for information prejudiced Hager—in ways that habeas counsel do not even attempt to say.

As the government argued in its response to Hager's § 2255 motion, it would have been exceedingly unwise for trial counsel to cross King on the incentives she received, which even habeas counsel concede "were intended to allow King to hide her location from Mr. Hager to ensure her safety." [Pet. at 19.] A cross-examination delving into King's arrangements with the government would have opened the door for a redirect focusing on the risks King faced for testifying against Hager, who had brutally abused her, and her possible participation in the witness protection program to mitigate these risks. Habeas counsel does not even attempt to respond to this argument or to address why they are likely to prevail on any of the assumptions noted above. Instead, they go back to the arguments raised in the initial habeas petition. Hager is not entitled to discovery on this issue.

### 3. Cornell Coplin Murder

Habeas counsel seek "all documents and information . . . regarding the homicide of Cornell Coplin," as well as subpoenas directed to the D.C. Metropolitan Police Department. [Dkt 616 at 11–12.]

As an initial matter, the government obtained and produced the Coplin murder file, and trial counsel's files indicate that they reviewed this file in detail.[7]

Again, habeas counsel cannot establish good cause because, in light of the numerous inferences and assumptions that remain unaddressed by habeas counsel, there is no reason to

---

[7] ████████████████████████████████████████████████████

14

believe that any additional information regarding the Coplin murder would assist Hager in demonstrating that he is entitled to relief.

*First*, and as with all of Hager's discovery requests, habeas counsel has no idea what they hope to find and simply assume that it will be something useful. They explicitly note that they "require discovery of all evidence in the possession of the government and law enforcement regarding the incident." *Second*, habeas counsel assume, without support, that the material they turn up will undercut the idea that Loneldon ("Neldy") Windsor "acted at the direction of Mr. Hager." *Third*, habeas counsel assume that trial counsel were ineffective for not seeking additional material regarding the Coplin murder, even though they received the D.C. police file from the government, even though the district court denied their subpoenas for additional materials relating to Coplin's killing, even though their investigator conducted significant independent research on this and various other issues in the case, and even though—as discussed in detail in the government's response to Hager's § 2255 motion—they knew that the killing occurred essentially as the government witnesses described at trial.[8] *Fourth*, habeas counsel assume that any newly discovered material would be admissible at trial. *Fifth*, habeas counsel assume that the information they hope to find regarding the Coplin killing would be such that trial counsel would have been deemed ineffective for *not* using it "to move to exclude all evidence of this homicide." [Dkt 616

8 ████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████████████████████

at 13.] *Sixth*, habeas counsel assume that, had trial counsel moved to exclude evidence of the Coplin killing, "such a motion would have been required to have been granted . . . because it was insufficient as a matter of due process and fundamental fairness to establish that Mr. Hager bore any culpability for the crime." [Dkt 616 at 13.] But far from "insufficient," and as discussed in the government's response to Hager's § 2255 motion, the evidence put on by the government regarding the Coplin killing convinced the jury that Hager directed Windsor to kill Coplin just as numerous witnesses testified at trial. *Finally*, habeas counsel assume that, with the Coplin murder excluded, the jury would have declined to impose a verdict of death. For all the reasons given in the government's § 2255 response, there is overwhelming evidence in support of a death sentence here. Hager is not entitled to further discovery on the Coplin murder.

### 4. Anthony Fields

Habeas counsel seek "all documents and information . . . supporting or negating Anthony Fields's testimony at trial that he was then incarcerated on a probation violation on a seven-year-old possession charge," and subpoenas for materials relating to various prosecutions of Fields by the Fairfax County Police Department, the Fairfax County Commonwealth Attorney's office, the United States Attorney's Office for the District of Columbia, the Superior Court for the District of Columbia, the Prince George's County Police Department, and the Prince George's County State's Attorney's Office. They also seek a grand jury transcript which they believe was not turned over to trial counsel.[9]

Again, Hager cannot establish good cause for discovery because there is no reason to believe that any additional information regarding Fields would assist Hager in demonstrating that

---

[9] Based on trial counsel's files, it appears that this transcript was in fact turned over. ▮

he is entitled to relief. To the contrary, habeas counsel overlooks a long chain of assumptions that must all be satisfied before the requested discovery could possibly be of assistance to Hager.

*First*, habeas counsel assume, based on speculation, that Fields's criminal files would contain impeachment information, either regarding Fields's statement that he was currently imprisoned on a probation violation[10] or regarding Fields's the prior criminal conduct. *Second*, habeas counsel assume that trial counsel were ineffective for not obtaining these materials, even though the district court denied their subpoenas for additional materials relating to Fields, and even though their investigator conducted significant independent research on him and various other witnesses in the case. *Third*, habeas counsel simply assume—without discussing the applicability of Rules 608 and 609—that any information discovered about Fields's prior charges would "undoubtedly have been admissible and properly referenced during cross examination as evidence of bias, regardless of whether they involved formal criminal convictions or whether Fields had an explicit deal with the government."[11] *Fourth*, habeas counsel assume that, whatever these yet-to-be-determined materials are, trial counsel would have had to be ineffective for not using them to impeach Fields. *Fifth*, habeas counsel assume that whatever materials they discover would have caused the jury to disbelieve Fields's testimony. *Sixth*, habeas counsel assume that, without Fields, the government would not have been able to put on evidence of the Coplin homicide, or the jury

---

[10] On this issue, habeas counsel do not acknowledge, let alone respond to, the government's response that the records already acquired by habeas counsel undermine the idea that Fields's testimony was inaccurate, as they appear to indicate that, at the time of Hager's trial, Fields was held on a status violation, and he was only sentenced on the underlying offense *after* his testimony in Hager's case.

[11] Habeas counsel never explain why they believe that these materials "undoubtedly" would have been admissible under Fed. R. Evid. 608 and 609. Elsewhere they note, correctly, that "federal evidence law prohibits the use of prior bad acts that are unrelated to a witness's truthfulness simply to smear the witness's character." [Dkt 616 at 28 n.4.]

17

would not have unanimously concluded that Hager was responsible for directing Windsor to shoot Coplin.[12] *Finally*, habeas counsel assume that Hager was prejudiced in that, without the Coplin homicide, the jury would not have voted for death. As discussed above, in light of the overwhelming evidence in support of the death penalty, this assumption fails. There is no basis for further discovery relating to Fields.

### 5.    *Jerome Robinson Murder*

Habeas counsel seek "any autopsy report of Paul Y. Lucas," including subpoenas for the production of such a report from the D.C. Office of the Chief Medical Examiner and the D.C. Metropolitan Police Department, as well as a subpoena "to permit habeas counsel and their fingerprint expert to compare the latent fingerprints lifted from a gun found by MPD . . . during its investigation of the Jerome Robinson homicide, to Thomas Hager's and Paul Lucas's known fingerprints." [Dkt 616 at 19.]

Habeas counsel again return essentially to the starting gate of their § 2255 motion, ignoring the government's argument in response that trial counsel investigated and pursued the very theory that habeas counsel now press—*i.e.*, that Lucas, not Hager, committed the murder with Parker— and nonetheless decided as a strategic matter to enter into stipulations regarding the Duvall and Robinson. In addition to that glaring failure, habeas counsel's discovery proposal should be denied because even if the discovery they seek existed, there is no reason to believe that it would assist

---

[12] Habeas counsel refer to Fields as "the government's principle witness against Mr. Hager regarding the Coplin homicide." [Dkt 616 at 16.] Not so. As the government laid out in its response, several witnesses corroborated Fields's testimony or offered additional details about the Coplin killing. Even without him, it is hard to see how the jury would not have concluded that Hager directed Windsor to kill Coplin. Thus, no matter what—if anything—the discovery now sought by habeas counsel revealed, it would not assist Hager in showing that he is entitled to relief.

18

Hager in proving that he is entitled to relief in light of the numerous unmerited assumptions the Court must make before even needing to consider the potential factual issues that would be raised by discovery.

*First*, and as noted in the government's response, trial counsel tried and failed to track down the fingerprint evidence habeas counsel now seek. Habeas counsel simply assume that this evidence—and the autopsy evidence—exists, and further assume that the evidence will in fact support the idea that Hager did not kill Robinson. *Second*, habeas counsel ask the Court to assume that—*despite looking for the same evidence habeas counsel now highlight*—trial counsel were ineffective in conducting their investigation in 2006 and 2007. *Third*, habeas counsel assume that, had trial counsel found the evidence that habeas counsel hopes exists, they would have been ineffective had they nonetheless decided to enter into stipulation regarding the Robinson and Duvall murders.[13] *Fourth*, Hager is entitled to discovery on this issue only if the Court assumes that, had trial counsel insisted on litigating the Robinson killing in front of the jury, the Virginia jury in Barbara White's case would have decided that Hager did not in fact kill Robinson, contrary to the guilty verdict returned by the D.C. jury that convicted Hager of the Robinson killing. *Fifth*, habeas counsel asks the Court to assume that any gain Hager obtained from not having the jury

---

[13] ███████████████████████████████████████████████████ When the opportunity came to stipulate to the barest facts regarding the Robinson murder—and thus to avoid putting before the jury the details of that killing as well as the Duvall homicide (which habeas counsel do not challenge)—trial counsel made a strategic decision to enter into the stipulation. This strategic decision is not only sound—it was a windfall for Hager, who kept from the jury the details of two additional violent homicides. Habeas counsel's discovery argument requires the assumption that the evidence they merely hope *exists* would have been so strong that trial counsel would have been ineffective had they done anything *but* refuse the Robinson stipulation and litigate the facts of the Robinson killing in front of the jury, even if that meant also losing the opportunity to stipulate to the Duvall killing, which even habeas counsel does not suggest Hager did not commit.

find the Robinson killing as an aggravating factor would outweigh any prejudice to him in having the jury learn the gory facts of the Duval killing (which they did not learn at trial, thanks to the stipulation entered into by Hager's trial counsel). *Finally*, for discovery on this issue to be appropriate, the Court would need to assume that the jury, having declined to find that Hager committed the Robinson murder, would decide not to impose the death penalty. For the reasons given above, this is not a realistic assumption. Discovery is not appropriate on this issue.

### 6.    *BOP Prison Altercations*

Habeas counsel seek: "any attachments, including any photographs and any memorandum submitted by Bruce Davidson," regarding the DC-Memphis riot, any video surveillance recordings from the DC-Memphis BOP report, "[a]ny drafts of the DC-Memphis BOP Report," and any video surveillance recordings from the DC-Alabama altercation.

As an initial matter, and as the government noted in its § 2255 response, before trial the government obtained from BOP and produced to trial counsel Hager's full BOP file. [TC0019581.] Further, and as noted above, Judge Ellis granted trial counsel's independent subpoena for Hager's BOP records. [*See* Dkt 114 at 14.]

Like the other requests, Hager is not entitled to discovery here because there is no reason to believe that, even if the documents exist as he hopes they do, they would make any difference to the Court in resolving his § 2255 motion. That is because the discovery Hager seeks will not affect his entitlement to relief unless he satisfies a number of additional assumptions.

*First*, habeas counsel asks the Court to assume that—even though the government obtained and produced Hager's BOP files, and even though trial counsel independently obtained the same materials through subpoena, there existed in 2007 additional drafts, videos, and attachment, that were not included in the materials turned over to the government by BOP or produced by BOP in response to trial counsel's subpoena. *Second*, the Court must assume that—despite actually

20

seeking and obtaining a subpoena for Hager's BOP records—trial counsel were nonetheless ineffective for not obtaining additional pieces of evidence (again, assuming they existed in 2007). *Third*, habeas counsel ask the Court to assume that the discovery they seek would have been "good" for Hager; *i.e.*, it would have shown that Hager "was just one of many participants in the incidents," rather than "a primary aggressor." *Fourth*, habeas counsel depend on the assumption that trial counsel necessarily would have been ineffective if they had *declined* to use these materials to attempt to impeach prison witnesses. That is, habeas counsel's discovery request depends on the assumption that trial counsel would have been *prohibited* from concluding, as a strategic matter, for example, that the prejudice from having the jury actually see a video of Hager *striking* another inmate would have been worth showing the video to the jury because it would have proven that he didn't *stab* the inmate. Thus habeas counsel require a *fifth* assumption: that, if the hoped-for evidence were used to impeach the prison guards who testified that Hager did stab the inmate, the jury would have disbelieved or discredited the prison guards' testimony.[14] *Sixth*, the Court must assume that, if the jury were convinced that Hager had "merely" punched and kicked the other inmate rather than stab him, and "merely" participated in the prison riots rather than instigate

---

[14] Numerous courts have held that inconsistencies in witness testimony are not enough to justify discovery in a § 2255 proceeding, either because mere allegations of inconsistencies are insufficient, *see, e.g.*, *United States v. Fields*, 761 F.3d 443, 481–82 (5th Cir. 2014), *as revised* (Sept. 2, 2014) ("We conclude that reasonable jurists would not debate the district court's [denial of discovery], because Fields identifies supposed inconsistencies in these witnesses' testimony, but offers no evidence suggesting that the witnesses lied or were otherwise unreliable."), or because the defendant could not establish prejudice and thus would fail the second *Strickland* prong in any case, *see, e.g.*, *United States v. Naha*, 2007 WL 91614, at *8 (D. Ariz. Jan. 11, 2007) ("Because there is not a reasonable likelihood that any alleged perjury by the victim's mother would have affected the judgment of the jury, any claim that Movant would hope to raise after discovery would fail on the merits.").

them,[15] the jury would have declined to find the aggravators relating to prison violence and future dangerousness. *Finally*, assuming that the jury declined to find the aggravators relating to prison violence and future dangerousness, habeas counsel also assumes that the jury would not have voted for a death sentence. Unless the Court indulges all of these (unreasonable and unsupportable) assumptions, Hager is not entitled to discovery on this issue.

### 7.    *Northern Neck Incident*

Habeas counsel seek "all documents and information . . . regarding Alphonso Satchell's cooperation pursuant to a plea agreement" and "all documents and information . . . regarding Alphonso Satchell's mental health history and use of prescription or other drugs, including any pre-sentence report submitted to the court" [Dkt 616 at 22.] Habeas counsel concede that the jury was made aware of Satchell's "plea agreement and his expectation that the government would ask the judge for a sentence reduction in return for his cooperation," but nonetheless allege that, had trial counsel been "[a]rmed with a complete picture of Satchell's cooperation," they could have "undermined Satchell's credibility by clarifying, in a way that would have been more impactful than merely confirming the terms of his plea agreement, Satchell's motivation to fabricate evidence, including evidence against Mr. Hager." [Dkt 616 at 25.]

There is hardly reason here to walk through the unsupported assumptions that would be required before the Court could conclude that there is reason to believe that this requested discovery would assist Hager in showing that he is entitled to relief. As the government argued in

---

[15] As the government pointed out in its § 2255 response, trial counsel concluded that the difference between participating in riots and instigating them would not have made much of a difference to the jury and would have suggested that BOP facilities were violent and out of control, and so they focused their mitigation strategy on showing that Hager was likely to "age out" of violent conduct *altogether* and that BOP could contain him until he did age out. Habeas counsel do not attempt to address this point in their discovery motion.

its § 2255 response, ████████████████████████████████████████████████████████

████████████████████████████ counsel could not have been ineffective for declining to waste

time and credibility on this issue. Nor could Hager have been prejudiced. In light of Satchell's

testimony and that of Stephen Morris, the prison guard who responded to the incident, the jury

could have no possible doubt that Hager stabbed Satchell. Whatever further attacks habeas counsel

assume could have been made on Satchell's credibility, there is no reason to think that the jury

would have disbelieved that the incident took place and that Hager was responsible. Unless habeas

counsel can prove otherwise, discovery on this issue will not help Hager prove his case.

#### 8.    *Terrell Hager*

Habeas counsel seek "all documents and information" regarding Terrell's involvement in

the homicide of DeCarlos Bannister and the shooting of an individual known as 'Black.'"

The information sought for Terrell Hager may be the best example of why habeas counsel

should not be entitled to additional discovery.  All of the information this Court needs to determine

whether trial counsel made a constitutionally effective (or at least not ineffective) decision whether

to call Terrell Hager as a witness at trial is contained within trial counsel's files.  Trial counsel was

diligent in investigating whether Terrell Hager would be an helpful witness.  ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████  ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████  This was clearly a very carefully considered, deliberate decision, made after reasonable investigation, and further discovery would assist the Court in determining whether trial counsel was ineffective.

        *9.     Hager family records*

Habeas counsel seek discovery to obtain subpoenas from the D.C. Superior Court "to allow habeas counsel to inspect criminal case indices from 1944, 1947–49, and 1951"; "to produce case files from criminal prosecutions from 1943 through 1965 for which habeas counsel has case numbers"; and to produce the case files relating to certain specified cases involving Hager's father and other relatives. [Dkt 616 at 29–30.] Habeas counsel likewise seeks records for Hager's siblings, parents, grandparents, and other relatives from the (now-closed) D.C. General Hospital, and the D.C. Public Schools. [Dkt 616 at 30.] Finally, habeas counsel seeks a subpoena "directing the D.C. Metropolitan Police Department to produce the criminal history files for each of Mr. Hager's family members known to have had criminal charges brought against them in the District of Columbia," including his father, uncles, grandfather, and great uncles. [Dkt 616 at 30.]

Habeas counsel contend that good cause exists for this material because "an adequate mitigation investigation in a capital case [requires] an exhaustive search for all available background and psychosocial history records regarding the client and his family," and the records sought may "provide counsel with new, previously unknown information about the client and his family, they may reveal new areas of investigation, and they may generate new topics for questioning of lay witnesses of which counsel would otherwise have been unaware," and will "allow experts to triangulate data, or confirm significant points by the confluence and consistency of information from multiple sources, and to corroborate and confirm the accounts of witnesses

and of the client that experts rely on in reaching their conclusions." [Dkt 616 at 30–31.] It is hard to imagine more of a generalized "fishing expedition," lacking in "specific allegations." Such "speculation over what might have been learned from additional investigation . . . is not proper evidence for [a defendant's] § 2255 claims." *United States v. Corrales*, 2011 WL 3880900, at *2 (D. Kan. Aug. 31, 2011). As Judge Ellis noted in denying a similarly broad request for trial subpoenas, these requests "[do] no more than state that the requested subpoenas seek documentation that 'bears potential significance' to defendant's case. Yet, this amounts to no more than the 'mere hope' of discovering favorable evidence[,] which is insufficient to support issuance of a subpoena duces tecum. The mere hope that a broadly-cast net will scoop up some piece of useful information is the hallmark of a discovery-type fishing expedition, not a Rule 17(c) subpoena." [Dkt 114 at 10 (citation, alteration, and internal quotation marks omitted).] Similarly, habeas counsel give no explanation why the requested discovery will make a difference in the Court's resolution of Hager's ineffectiveness challenge, especially in light of the fact that Hager's 200-page § 2255 motion already contains some 75 pages of allegations and facts regarding Hager's family history. What else is missing, and how is there "reason to believe" that it would make a difference in Hager's claims and justify further discovery? Habeas counsel does not say.

### 10.   *Murphy grand jury transcript*

Finally, habeas counsel seeks production of any transcript created when one of the case agents, Detective Robert Murphy, testified before the grand jury in Fairfax County Circuit Court. Government counsel has conferred with the Commonwealth Attorney's Office, which indicated that Detective Murphy appeared in front of the Regular Grand Jury as opposed to a Special Grand Jury. The proceedings of the Regular Grand Jury are conducted without a court reporter or recording device of any kind. There are no transcripts or records other than the state-court indictment.

## CONCLUSION

Habeas counsel's discovery plan should be rejected in its entirety. Because Hager has not shown that further discovery is appropriate, the government respectfully suggests that the Court set a date for habeas counsel to file their reply. At that point, if the Court determines that additional factual development is necessary for it to resolve Hager's § 2255 motion, the Court will be better situated to identify any narrow areas where discovery would be appropriate. If the Court determines that no further discovery is required, it can dispose of Hager's § 2255 motion and his discovery requests in a single order, a practice regularly followed by district courts, *see, e.g.*, *Brown v. United States*, 583 F. Supp. 2d 1330, 1358 (S.D. Ga. 2008), *on reconsideration*, 2008 WL 4822542 (S.D. Ga. Nov. 4, 2008), and *aff'd*, 720 F.3d 1316 (11th Cir. 2013), and regularly sanctioned by courts of appeals, *see, e.g.*, *United States v. Webster*, 392 F.3d 787, 802 (5th Cir. 2004).

Date: April 14, 2017

Respectfully submitted,

Dana J. Boente
United States Attorney

By:  _____/s/_____

James L. Trump
Christopher Catizone
Assistant United States Attorneys
Eastern District of Virginia

The Justin W. Williams
  U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, VA 22314
Phone:        (703) 299-3700
Fax:          (703) 299-3980

26

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April, 2017, I will file the foregoing with the

Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to

all counsel of record.

Date: April 14, 2017                        Respectfully submitted,

                                            Dana J. Boente
                                            United States Attorney


                        By:    _____/s/_____

                                            Christopher Catizone
                                            Assistant United States Attorneys
                                            Eastern District of Virginia

                                            The Justin W. Williams
                                                    U.S. Attorney's Building
                                            2100 Jamieson Avenue
                                            Alexandria, VA 22314
                                            Phone:        (703) 299-3700
                                            Fax:          (703) 299-3980
                                            jim.trump@usdoj.gov