1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA     .     Criminal No. 1:05cr264-3
                       .
   vs.                 .     Alexandria, Virginia
                       .     March 24, 2017
THOMAS MOROCCO HAGER,     .     9:15 a.m.
                       .
           Defendant.     .
                       .
. . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE GOVERNMENT:         JAMES L. TRUMP, AUSA
                            CHRISTOPHER CATIZONE, AUSA
                            United States Attorney's Office
                            2100 Jamieson Avenue
                            Alexandria, VA 22314

FOR THE DEFENDANT:          BLAIR G. BROWN, ESQ.
                            Zuckerman Spaeder LLP
                            1800 M Street, N.W., Suite 1000
                            Washington, D.C. 20036
                              and
                            JULIE BRAIN, ESQ.
                            916 South 2nd Street
                            Philadelphia, PA 19147

OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                            U.S. District Court, Fifth Floor
                            401 Courthouse Square
                            Alexandria, VA 22314
                            (703)299-8595

(Pages 1 - 25)

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

2

P R O C E E D I N G S

(Defendant not present.)

THE CLERK:  Criminal Case 5-264-3, United States of America v. Thomas Morocco Hager.  Would counsel please note their appearances for the record.

MR. CATIZONE:  Good morning, Your Honor.  Christopher Catizone and Jim Trump for the United States.

THE COURT:  Good morning.

MR. TRUMP:  Good morning, Your Honor.

MR. BROWN:  Good morning, Your Honor.  Blair Brown and Julie Brain on behalf of the defendant, Mr. Hager.

THE COURT:  All right, this matter comes before the Court on the movant's motion to set a schedule for this case now that the government's response has been filed.  Now, the government filed their opposition on March 9; so, Mr. Brown, you've had two weeks already to evaluate the government's -- the position of the government; and we've had a chance to read it; so we have a pretty good idea of what the issues are and what the -- where the issues have been joined.

That has already given you almost as much time as the average civil plaintiff would have in evaluating an answer in a civil case; and what you've requested in your, in your position on scheduling in my view is highly excessive and not necessary; so I want to make sure that we get this case properly focused. It doesn't do anybody any good to have a smorgasbord of issues.

3

The issues need to get far more refined, and giving you the amount of time that you want is in my view completely unreasonable and not supported by what I've seen now between the initial motion and the government's opposition.

As you know, under the *Bracy* standard, a court is not required to provide a habeas movant with discovery.  The burden is on the movant to establish good cause; and that requires a showing of specific allegations which would give the court a basis to believe that if the petitioner developed discovery along those lines, there'd be a reasonable chance to demonstrate that he was entitled to relief.

As to the guilt phase of the case, the government's opposition based on both the law, what happened at the trial, and now that they've had access to all of the defense -- the trial attorneys' books and records, would appear to me to be an issue that can be fully resolved on a -- on the motions.  I can't see any reasonable basis for any discovery along those lines.

The defendant's counsel took a tactical -- made a tactical decision that there were defects in the way the statute reads and then the evidence that the government has; and as you know, I think one of the very significant factors here is although you argue that it was perhaps a foolish or unwise legal strategy, it caught the attention of one of the three appellate judges.

4

I mean, it wasn't that this was just a crazy legal theory.  Reasonable jurists may disagree; but *Strickland* doesn't require that you have a perfect defense, just a reasonable and adequate defense; and in this case, it was an interesting legal theory; and if you look at the totality of the evidence that's been presented so far in terms of the multiple times your client admitted guilt and the number of other significant issues that defense counsel had to confront at the guilt phase of the trial, I think that that record in my view is just about completely done; and I can't imagine any reasonable approach to discovery that would assist.  That's all legal argument, it seems to me, on the guilt phase.

On the penalty phase, you've already indicated that you had mental health people who have not finished the reports that they were working on.  I think that would be a reasonable area for further discovery.

So what I'm going to do in this case is I am going to give you 14 more days, because you've already had 14 days.  I'm giving you 14 more days to evaluate the government's response and to come up with a proposed discovery plan; and I'm strongly recommending if you want that plan to be looked at seriously by the Court, that it be appropriately tailored to a reasonable series of issues, because if it's all over the waterfront, you probably won't get any of it; and that is the standard that I think *Bracy* requires the Court to use in determining whether

5

any discovery is appropriate.

Also within the next 14 days, because I'd be shocked if you haven't been working on it already, you can submit to me your ex parte proposed budget that would cover the discovery that you are contemplating, what you estimate it will take to file your reply brief, and that's -- and any, and any additional motions that you feel might be, might be needed.

Then you will have from the day I decide the discovery issue, I'll decide whether I think the discovery is reasonable or not reasonable, I'll give you 60 days, assuming I do allow you to have discovery, to complete that discovery; and that means 100 percent complete.

Now, you already have -- according to what you've told me, you already have mental health people who have done work on this case; but in your papers, you indicated that they had not finished their reports; so it shouldn't take them 60 days to be able to finish what they've started because you had a whole year to work on this case before it was even filed.

And within that -- and also in that 60-day time period, you'll need to make any request for an evidentiary hearing; and again, you'll have to convince the Court that there's a sufficiently significant factual issue that needs to have an evidentiary resolution.  As you know, it's not the standard practice in habeas cases to have an evidentiary hearing; so your burden would be to show that there's a genuine

6

need for such.

Then once that's all been decided, I'll give -- you'll have 30 days to file your response to the government's papers -- and I'll have this in an order for you -- and I will allow you to have the 90-day -- the 90-page page limit that you've requested.  I still think it's excessive, but I'll give you that.

So that's how I intend to handle the scheduling issue.  The nine months that you asked for and some of the other things were way too vague, and so I want to find out whether there's any -- there probably is an objection, but that's how I see this case.  We need to get it more focused; and at this point, the government has in my view helped to focus it significantly; but I want to give you some freedom and some ability to pursue whatever you feel still has to be pursued, all right?

MR. BROWN:  Your Honor, I would like to respond. Frankly, Your Honor, that -- the schedule the Court has indicated is, is not sufficient time for us to do what we believe we need to do in order to prepare the case for the, for the Court's decision with respect to the evidentiary hearing and the merits.

By way of background, Your Honor, we did have a year under the statute to file this motion.  An enormous amount of work needed to be done in that year.  We were coming to the

7

case cold. We were coming to the case, a case where we not only had to review everything trial counsel would have reviewed in terms of discovery, there was the transcript, there was the appeal, there were 70,000-plus pages of, of counsel's records. There was the gathering of information about Mr. Hager and his family that defense counsel had not gathered previously. There was the retention of experts, working with experts; and we achieved an enormous amount within that one-year period; but there still remains a substantial amount of work to be done.

And after we filed our motion, in June of 2015, the Court directed us not to incur any more CJA fees or expenses, with certain, with certain exceptions as the case went on. So there was a statutory right, Your Honor, to the appointment of counsel in these federal capital habeas proceedings; and we in large measure stood down; and now we are being asked to pick up again, after the government has had almost two years to prepare their response, two-year period after the government had -- I don't know how long Mr. Trump has had this case, but I think it's 15 to 20 years. And they retained the investigator who was on the case from day one right after the homicide. They took two years to put their case together -- their response together.

We need -- we need more time than what the Court has given us. We need more time with respect to working with the mental health experts. We have to get the Court to fund them.

8

We have to find out their schedule.  We have to work with them to see what they're able to produce.  There is the additional factual material to develop quite apart from the discovery that the Court may or may not grant in this instance.

And the time period for the preparation of the reply after we have -- the Court has made other decisions simply is insufficient given the complexity of the case.

THE COURT:  My concern is -- you're not listening to what I'm saying.  I understand that you're trying to do as thorough a job as you can, but what I am saying is there is a limit on everything in the universe, and this Court prides itself on providing counsel with limits so that you can focus razor sharp on those issues where the case is vulnerable.

I was very concerned, quite frankly, when we started looking at the government's response to your initial pleading, at the amount of what I think were inappropriately truncated quotations from people's testimony.  You would take one line and say this shows that the attorneys, you know, didn't properly cross-examine, without going further into the testimony, where, in fact, the issue that you said wasn't done correctly was, in fact, correctly done.

In other words, there was a credible amount, especially as you addressed the penalty -- the guilt phase, of what I think were, were skewing of the record; and when I see that in a pleading, that gives the Court concerns that, in

9

fact, this is not being an intelligent approach to pointing out genuine errors, not every little nitpick, because a case like this, nitpicking it to death isn't going to win the case for your client.

There are obviously issues in terms of his mental health, if, in fact, there is a problem with his cognitive functioning. If those issues were not fully and appropriately developed, that's, you know, a significant issue.

But the other thing that does give me some concern is, you know, you actually used this -- in part of your brief, you almost said words to the effect that, well, you know, we don't know what's out there. We may be able to find it, you know, with more discovery.

That's the looking-for-the-needle-in-a-haystack approach, and that's not proper at this point.

MR. BROWN: Your Honor, in fairness, we, we asked to file a motion for discovery where we can explain to the Court what it is we need and why we need it so that the Court can make an informed decision. I hear the Court loud and clear on the, the number of issues and variety of issues. I understand the Court's point there.

I am unhappy to learn that the Court considered some of the, some of the points in the brief such that they were incomplete or did not fully reflect the record; and if that is the case, I apologize, Your Honor. I will tell you that, that

there is another side to much of what the government characterized as defense counsel's tactical decisions.  There's a lot of implications there about, well, counsel made a strategic decision on this or that or the other.

THE COURT:  Wait, you know -- wait a minute, though. In a habeas case, as long as the tactical decision was reasonable, the fact that there might have been better ones doesn't mean they were ineffective.  Lawyers have to make -- you know this yourself -- you have to make tactical decisions all the time, tough tactical decisions; and if the government is correct that your client on more than one occasion and to more than one entity essentially admitted doing the murder, then they had also genuine ethical restrictions.

So they were having to weave, you know, a fine line between their ethical obligations to their client to vigorously defend him and their ethical obligations as officers of the Court not to put on perjurious evidence or evidence that would be absolutely a fraud on the Court.  They can't do that.  And so they have that delicate problem.

So again, every, every habeas case has its own particular issues; but the fact that there might have been other tactical approaches doesn't get -- doesn't win the case. As long as the tactical approach which they took under the circumstances they faced would be considered to be within the realm of appropriate professional conduct, and on that aspect

of *Strickland*, that's it.

And again, I've not decided this case. I've just said I'm trying to get it focused appropriately so that, number one, you-all don't waste your time, because time is valuable, on issues that just are not going to go anywhere, and you're not wasting, frankly, my time or the government's time in having to respond or evaluate it; and that's what concerned me -- has concerned me about this case.

So I am going to give you discovery assuming that it's appropriately tailored and it's reasonable. So I'm giving you 14 days -- you've already had two weeks to look at the government's response -- 14 days to look at what they're saying and to think about where do we really need to try to poke holes in what the government has put forward, and that should be plenty of time.

And I do think -- I also want to tell you that I think again hyperbole isn't going to win with this Court. When you said on page 7 of your, of your paper that, that only the government has had discovery in this case, I mean, you spent a year, I know how much money you spent in getting discovery from medical people; and you've talked with family members, etc. So certainly you've had discovery already, and to say that only the government has had discovery is actually not in my view an accurate picture of the record.

MR. BROWN: Your Honor, I would --

12

THE COURT:  You don't think that year that you had before you filed was a time in which you obtained discovery?

MR. BROWN:  It was certainly a period of time in which we could get information that is available through voluntary submission by public, you know, public institutions, etc.  It was not what the government got, which is a series of orders from the Court directing the opposing party, us, or directing third parties, the experts and trial counsel, to provide information to the government.

THE COURT:  Did you not get the trial attorneys' files?

MR. BROWN:  Well, absolutely.

THE COURT:  Well, isn't that discovery?

MR. BROWN:  Well --

THE COURT:  I mean, you --

MR. BROWN:  -- it depends on how you, how you define it.

We did not have the power of the Court to order, to order third parties or the government to give things to us.

THE COURT:  Well, what third parties -- what third parties did you need?

MR. BROWN:  Well, Your Honor --

THE COURT:  The mental health -- the mental health people are third parties.  The doctors you've engaged, aren't those third parties?

MR. BROWN:  Yes, they are.

THE COURT:  All right.

MR. BROWN:  That's -- those I think of as consultants, Your Honor, or experts who we're going to use. There is information we obtained, but we did not have the power of the Court to order either the government or third parties to provide documents to us unless they were going to do it voluntarily, and that's what I understand as discovery.

Certainly through our own investigation, there's no question we developed information and materials and got records concerning the defendant from parties who were either legally obligated to provide it with a release or we were able to get; but there's still -- there's still more to be done.  We will explain to the Court what we need and why we need it so that the Court can make a determination of whether that's appropriate or not.

I think that after the discovery phase of this and the Court's ruling, it is going to take us more time to get the additional expert information we need so that they can complete their reports and the additional information that we will need to develop some of these claims and more time to prepare and file a reply.

We hear the Court on focus.  We understand that; but even with a more focused reply, a more focused investigation, we believe we need substantially more time than what the Court

14

is proposing.

THE COURT:  Well, I'm giving you those limits; and unless you can make a very specific showing as to why that specific limit can't be met as to a particular doctor or whatever, you're going to have to work within it.  In this court, people work within time limits.

And again, this case, I think you had already a significant amount of opportunity to develop the case; and I'm giving you these other opportunities; but the main thing is for you to put together as quickly as you can -- and I'm shocked if you haven't started working on it -- the proposed new ex parte proposal for your budget, which I'll get down to Mr. Dash as quickly as I can, and put together a proposed discovery plan. You've got 14 days to do it.

And then as I said, then I'll look at the discovery plan; I'll look at the budget; and once I rule on that, then you've got your 60 days to start running.  So there's no reason you can't start, you know, beginning to preliminarily think very carefully about where you want to put the emphasis of your work.

Did the government want to be heard on this?

MR. CATIZONE:  Briefly, Your Honor.

THE COURT:  Yeah.

MR. CATIZONE:  Your Honor, we agree, you know, we've been through Mr. Hager's motion and, obviously, in our

15

response; and we don't find any issues at this point that we, frankly, think merit discovery, any issues that we, frankly, think can't be resolved on the papers as they are.

We understand that the Court wants to hear more on that, and we're ready to respond if habeas counsel identifies a true issue where there's going to be a factual dispute.  We've only asked that on the discovery issues, that that not be ex parte filings but that we have an opportunity to see and respond --

THE COURT:  The discovery plan?  I mean, we're working on basically the rules of civil procedure; and so a discovery plan is something that is, of course, shared, yes.

MR. CATIZONE:  And just to, you know, for one example, the Court had mentioned mental health discovery.  You know, we don't have any mental health information or anything in the government's possession that's not already in habeas counsel's possession; so in terms of what habeas counsel contemplates getting in terms of discovery from the government, we don't have any idea what that is.  We'd like to have a concept of that and be able to put that in front of the Court before anyone goes off on any more wild goose chases.

THE COURT:  Well, as I said, in 14 days, we'll see the proposed discovery plan of the defense.  You'll have an opportunity, as any civil litigant would, to respond to it; and I'll decide, as I would if I were hearing discovery in any

16

other kind of case, whether I think the discovery is, you know, appropriately tailored to legitimate issues that need discovery. I may find that there are none; I may find that there are some.

I am -- to the extent that counsel did represent that they had already had mental health information developed or being developed and had not had that completed, it seemed to me that that might be an appropriate thing just so they have that picture finished, and there's already been an investment of time and money in that, to allow that to go forward to completion.

The one concern that I also do want to make sure, Mr. Brown, that you recognize is that any mental health evidence or evaluation again has to be taken from the perspective of what it would have been like 10 or 11 years ago. This case was what, 2005?

MR. CATIZONE: Tried in 2007.

THE COURT: It was tried in 2007?

MR. CATIZONE: That's correct.

THE COURT: So if the DSM, for instance, has changed since then, your mental health people cannot be taking a view from 2017 science and evaluating what would have been available or known or appropriate for a mental health person 10 years or 11 years ago. That would not be appropriate because again, what we're looking at is what was available, what was known to

17

defense counsel at the time they were mounting the defense of the defendant.

I mean, this is -- as I understand the petition, this is not a claim of actual innocence in this case.  It's ineffective assistance of counsel, governmental misconduct, those types of issues.  And so the perspective must be what was the situation at the time these attorneys were representing Mr. Hager and not what now in 2017 medical science or something else, you know, would indicate was a new tool that might have been available -- it's available now but wouldn't have been available then.  That would not be appropriate.  All right?

MR. CATIZONE:  All right.

THE COURT:  All right, so we'll get an order out that absolutely puts this in a little bit clearer form.

Anything further on this case?

MR. CATIZONE:  In the Court's order when we filed our motion -- our response under seal, the Court had indicated that -- asked the government to file a public version with redactions.  We're working with defense counsel -- or habeas counsel at this point on redactions.  I think they've got a broader view of what they are; we've got a narrower view; but we'll continue to discuss them --

THE COURT:  Why are there any redactions?

MR. CATIZONE:  I'll let Mr. --

THE COURT:  I don't understand.  This was a publicly

18

tried trial.  Was there anything in the *Hager* trial below that was ever redacted?

MR. TRUMP:  No, Your Honor.

MR. BROWN:  The, the need for the redaction is based on the protective order that the Court entered.  We had proposed one.  The government had suggested changes.  The Court entered a protective order, and it was geared to the fact that there was attorney-client privilege and attorney-client work product information that was being shared with the government and for -- because we raised an ineffective assistance of counsel claim.

But nevertheless, there was still a concern that Mr. Hager, who is still subject to prosecution for other offenses or for this offense in state court, should not be put in the position of having to disclose to the world confidential attorney-client privilege information or attorney work product as a penalty for raising ineffective assistance of counsel.

That is the, in a nutshell is the rationale for keeping attorney-client privilege and attorney work product information under seal; and it's based on the Court's protective order that it entered.

THE COURT:  Well, I'm not sure at this point that's actually appropriate.  Are there actually other charges that are still pending against this defendant?  The government, both counsel are shaking their head no.

19

MR. BROWN:  Well, there is --

THE COURT:  There's no statute of limitations for murder; is that correct?

MR. BROWN:  Right.  That is correct.

THE COURT:  Is your client still vulnerable to murder charges?  There were other murders discussed in the District of Columbia.

Mr. Trump, you've been on this case since the beginning of time, so you should know.

MR. TRUMP:  Your Honor, in the materials that we gathered from trial counsel, Mr. Hager had admitted to being involved in other homicides, not with any sufficient detail, but those admissions were there.  I don't think we've put any specific factual information into the record through our response with respect to those admissions; but if there were, I guess we wouldn't have any problem taking them out, not for fear that it would be used by prosecutors, but out of concern for Mr. Hager's safety in prison.  If other prisoners found out that he had disclosed information about other homicides, perhaps that would place him at some risk; but I think that's minimal at this point.

But I don't -- we don't see the need to protect information, for example, that he admitted to this crime because he could be prosecuted by Fairfax.  I think that's not a concern at all.

20

If there is information there that would either put him at risk or would somehow disclose facts that would generally touch on some other investigation, that would be appropriate; but I just don't see that; and that's why we've asked -- we'd ask for some more time to consult with habeas counsel and really get to the, the issue as to what, what is in our pleading that would either expose him or affect his status in prison, because you, you already have entered an order saying that this information can't be used in subsequent prosecutions.

So it's not a matter of whether it's public or private. This Court has already said it can't be used. So it really doesn't matter if it's in a pleading or not.

THE COURT: Based on the body language of Mr. Brown, I'm not sure he -- and I can't recall entering that order; so it's been a while since, you know, we did much on this case.

MR. TRUMP: The Court said that the privilege is waived with respect to this proceeding; and to the extent the government can say there's no prejudice because the defendant has admitted certain facts, that can be considered by this Court in the context of this proceeding; but the Court said that there is essentially a limit that the government will not use these disclosures by Mr. Hager to expose him to prosecution in any other forum; and we agreed to that.

So we can't take Mr. Bailey or Ms. Penry's interview

21

notes and say:  Here, District of Columbia, Mr. Hager has admitted to killing so-and-so.  Go ahead and prosecute him based on this interview.  We can't do that.

So to our -- in our opinion, it doesn't matter whether it comes out publicly or not with regard to that issue.  If that is a concern, that they don't want anyone to know that their client admitted to other crimes or that he may have identified other people -- for example, there's a proffer session in November-December of 2006 in which they press Mr. Hager:  What, what is it that if you wanted to approach the government and try to plead guilty, what could you offer the government?  And he lists some things that he could testify about if that were the case.

Obviously, it never went anywhere; but if they don't want that public, that's fine.  We would redact that either from our pleading or from the appendix.  But that's really the only thing we can see that should give him a concern.

THE COURT:  All right.  Well, it certainly in the Fourth Circuit, we are to keep things under seal to an absolute minimum; and habeas cases are important cases.  Capital cases are controversial, and the public has a right to be exposed to as much information about this case as is possible.

MR. TRUMP:  That was just a long-winded speech, Your Honor, to say could we use the next 14 days --

THE COURT:  Yes.

22

MR. TRUMP: -- as well to confer with habeas counsel and decide on what should be redacted; and to the extent that we have a disagreement, we'll file that disagreement with the Court in that 14-day period.

THE COURT: And there does need to be something on the record, an explanation of what it is you're going to keep redacted, in other words, if we have to redact, you know, paragraph 4 on page 6 because of such and such; but otherwise, this has to be made public, yeah.

MR. BROWN: Your Honor, the Court's indication is a different approach than what is set out in the protective order, at least as I recall it.

THE COURT: Well, then we'll revise the protective order.

MR. BROWN: Excuse me?

THE COURT: Then I'll revise the protective order.

MR. BROWN: And for that reason, if the Court is going to take a different approach, then we do -- if we're going to be putting a discovery plan and a budget together in 14 days, we would need more time to either do that or do this, Your Honor, with respect to the redactions. So we would ask for more time then for the redactions.

THE COURT: The redactions are less important in my view than getting any discovery issues and getting the budget done. So I'm not going to -- I'm not putting a time limit on

23

when the redactions have to be done.  They have to be done relatively soon, but get the other two matters done first.  The discovery issue and the budget are more important because I don't want an excuse for delay in this matter.

MR. BROWN:  Your Honor, I understand.  Just two quick points on the rationale for keeping things confidential in a situation like this.

THE COURT:  Sure.

MR. BROWN:  One is it is the case that Mr. Hager can be prosecuted for this offense in the state courts of Virginia. There is no statute of limitations, and he could be prosecuted. So if, if he were to have his conviction vacated in this case, he -- and his sentence vacated in this case and he were to be re-prosecuted, the -- he should not be in the position of having been forced due to an unlawful conviction of disclosing material that can be later used against him in a proceeding; and I do believe that is the rationale for it.

I don't know and I don't remember and I don't have the Court's protective order in front of me, but I don't know that it says that no one in the world can use information against Mr. Hager in some other prosecution.  I don't, I don't recall.

I think you also have the issue, if you think about it, about taint here, Your Honor.  I mean, I don't think anyone wants a situation where information that is privileged is

24

disclosed.  There's a retrial, there's a trial in state court, and the information that is used for that prosecution becomes tainted in some fashion.

So I do believe in thinking about the rationale for a protective order in this situation, I think there's a concern about that as well.

THE COURT:  Well, I will check with some of my colleagues to see when they've done capital habeas, whether they've gone through this same issue.  In the prior ones that I've had, there's never been an issue about keeping it under seal; and I'm surprised that this has come up.

MR. TRUMP:  Your Honor, there is no pending case in state court.  I believe the state statute would bar subsequent prosecution in state court.

In state court, I don't think the Virginia offense would be a capital offense.  I'm not sure; but I think unless there would be multiple murders or some other situation, I don't think it would be necessarily a capital offense in Virginia; but putting that aside, I think the, the Virginia statute that bars a state prosecution after a federal prosecution would come into play.

One of the reasons it was indicted in state court first was if for some reason the federal court dismissed the case, it could have been brought in state court; but subsequently, the state charges, I believe, have been

25

dismissed; so I don't think they can bring them back.

I'm relatively confident, perhaps overconfident, that on the guilt side of the case, his conviction is going to stand; so I think what we're really talking about are penalty phase issues.  So the idea that somehow he would be prejudiced in a subsequent trial on the guilt is, I think, just not a reasonable possibility.

THE COURT:  Well, you've sensitized the Court to these issues, but I -- at this point, I expect in 14 days to see the proposed discovery plan from the defense -- I'm sorry, from the, from the movant.  We'll get the budget, and then we'll see where we are from there in terms of the redactions, but I think that's a sound approach, Mr. Trump.

Anything further on this case?

MR. BROWN:  No, Your Honor.

THE COURT:  No?  All right, then you're all free to go.

(Which were all the proceedings

had at this time.)

CERTIFICATE OF THE REPORTER

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

_____
/s/
Anneliese J. Thomson