# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NOV 2 2 2006

ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA    )
                            )
        v.                  )    Criminal No. 1:05cr264
                            )
THOMAS MOROCCO HAGER        )    EX PARTE and UNDER SEAL

## MEMORANDUM OPINION

In this capital murder prosecution, defendant Thomas Hager, has filed an *ex parte* and under seal motion for the issuance of 114 subpoenas *duces tecum* pursuant to Rule 17(c), Fed. R. Crim. P., directed at 114 different federal, state, and local agencies with respect to 41 different individuals, essentially requiring more than 4,500 separate searches to be conducted by the requested agencies.   For the reasons that follow, defendant's motion must be granted in part and denied in part.

### I.[1]

On May 4, 2006, the Grand Jury returned a second superseding indictment (the "Indictment") charging defendant with murder while engaged in drug trafficking.  The indictment sets forth the following allegations.  According to the Indictment, during the period 1991 through 1996, defendant conspired with Arlington Johnson, Jr., Lonnie Barnett, Jr., and others, to distribute substantial quantities of crack cocaine in the Washington, D.C. metropolitan area. Defendant, it is alleged, was the leader of this drug trafficking organization, with Johnson, Barnett, and others, working under his direction.  It is further alleged that defendant and his co-

---

[1]The facts recited herein are derived from the Second Superseding Indictment, the Notice of Intent to Seek a Sentence of Death, and the Plea Agreements of defendant's coconspirators.

conspirators committed numerous acts of violence, including murder and assault, to advance the goals and status of the drug trafficking organization.

One such act of violence is alleged to have occurred on or about November 29, 1993, in Fairfax County, Virginia, when defendant, along with others, including Johnson and Barnett, unlawfully killed Barbara White. The details of this crime are set forth in the Statements of Fact accompanying the Plea Agreements of Johnson and Barnett. According to the plea agreements, defendant directed Johnson, Barnett, and a fourth person, to drive, with defendant, from Washington, D.C. to Fairfax County, Virginia, where defendant intended to kill White to prevent a rival organization from retaliating against him for a previous shooting he had committed. On arriving at White's apartment, defendant, and the others, were greeted by White, who allowed them to enter her apartment. Once inside, defendant increased the volume on White's television set to create a masking noise and then struck White in the face with a handgun. He then forced White into the bathroom, where she was bound and forced into the bathtub. At defendant's direction, Johnson and Barnett collected several steak knives from the kitchen, returned to the bathroom, and proceeded, along with defendant, to stab White eighty-two (82) times. As this occurred, the fourth coconspirator remained in the living room of the apartment with White's thirteen-month-old daughter. Following White's murder, defendant and his co-conspirators exited the apartment, leaving White's lifeless body in the bathtub and White's daughter alone in the apartment.

In addition to this crime, the government's Notice of Intent to Seek a Sentence of Death alleges that defendant has committed a number of other crimes, including the infliction or attempted infliction of serious bodily injury upon another, distribution of crack cocaine to a juvenile, and armed robbery. Moreover, defendant has been convicted of another offense

resulting in death, for which a sentence of life imprisonment was statutorily authorized, and is suspected of being involved in several other murders.

## II.

At issue here is defendant's second *ex parte* and under seal motion for the issuance of 114 subpoenas *duces tecum*. His first such motion sought issuance of 113 subpoenas *duces tecum* directed at 113 different federal, state, and local agencies with respect to 39 different individuals, essentially requiring more than 4,000 separate searches to be conducted by the requested agencies. This request was denied on the ground that it failed to meet the standards set forth in *United States v. Nixon*, 418 U.S. 683 (1974) for the issuance of subpoenas. *United States v. Hager*, No. 1:05cr264 (E.D. Va. Aug. 31, 2006) (*Ex Parte* Order). In particular, the request was not a sharply-focused request consistent with *Nixon*, but instead was manifestly an impermissible fishing expedition proscribed by *Nixon*. *See United States v. Crosland*, 821 F. Supp. 1123, 1129 (E.D. Va. 1993).

While this fishing expedition was rejected, defendant's counsel was invited to submit a revised, sharply-focused and more specific request, in compliance with the requirements of *Nixon*. Defendant, by counsel, accepted this invitation by filing a second request. Yet, this second request is, if anything, broader and more expansive than the first. It seeks all of the subpoenas previously requested, plus an additional subpoena, and further broadens the scope of the subpoenas to include information regarding two additional individuals.

Each of the 114 subpoenas requested in this second request seeks information pertaining to 41 different individuals who may be grouped as follows:

(1)    Individual 1 is the defendant;

(2)    Individuals 2 and 3 are the now-cooperating co-defendants;

3

(3)    Individuals 4 through 13 are defendant's relatives or girlfriends;

(4)    Individuals 14 through 22 are either alleged shooting victims of defendant or his accomplices listed in the Government's Notice of Intent to Seek a Sentence of Death;

(5)    Individuals 23 through 40 are individuals who "through investigation the defense has determined . . . *could be* a government informant witness" (emphasis added); and

(6)    Individual 41 is Barbara White, the murder victim in this case.

Defendant contends that each of the 41 individuals bears a particularized relation to either the defendant, the crime charged or the aggravating factors alleged in the Government's Notice of Intent to Seek a Sentence of Death.  He further contends, conclusorily, that documentation as to each of these individuals is "evidentiary and relevant" and bears *potential* significance for impeachment and/or mitigation purposes.

With respect to each of these 41 individuals, defendant has requested 114 subpoenas, which fall into the following eleven categories, according to the agency to which the subpoenas are directed:

(1)    The Corrections Office Group: Subpoenas 1 through 22 are directed to twenty-two corrections offices and facilities, including (i) the U.S. Marshal's Service, (ii) the Federal Bureau of Prisons, (iii) Maryland, Virginia and D.C. correctional departments, (iv) state and federal parole commissions, and (v) county sheriff's offices.  Each subpoena requests production of "*[a]ny and all information of any nature whatsoever* related to *any and all occasions* when any of the [identified 41] persons were in your custody, including, but not limited to: base files, visitors logs, phone logs, tapes, or transcripts of recorded phone conversations, copies of any seized or retained correspondence, cell assignments and infraction reports." (Emphasis added).  Defendant claims simply that this information is "manifestly relevant to the pending capital

4

prosecution."

(2)     The Law Enforcement Agency Group: Subpoenas 23 through 48 are directed to twenty-six law enforcement agencies, including (i) the FBI, (ii) the DEA, (iii) the ATF, (iv) the Department of Homeland Security, (iv) state and county police departments, and (v) state criminal justice information systems. Each subpoena requests *"[a]ny and all information of any nature whatsoever* related to *any and all investigations of any nature whatsoever*, including all WACIIS System records, pertaining to or involving [the 41 identified individuals]." (Emphasis added). Defendant claims the information sought in these subpoenas "tracks the allegations in the Government's Notice of Intent to Seek a Sentence of Death, Non-Statutory Aggravating Factors."

(3)     The Court Group: Subpoenas 49 through 81 are directed to thirty-three state and local courts located throughout Virginia, Maryland and Washington, D.C. Each subpoena requests *"[a]ny and all information of any nature whatsoever* related to *any and all sealed proceedings* of *any nature whatsoever* involving [the 41 identified individuals]." (Emphasis added). Defendant states that his court-authorized private investigator is requesting from the state and local courts the same public records sought in this group of subpoenas.

(4)     The Social Services Group: Subpoenas 82 through 96 are directed to fifteen social service and mental health offices throughout the Washington, D.C. Metropolitan area, including (i) health and human services departments, (ii) youth programs and rehabilitative services, (iii) victim services, (iv) community service boards, and (v) the Archdioceses of Arlington and Washington. Each subpoena requests *"[a]ny and all information of any nature whatsoever* related *to any and all proceedings of any nature whatsoever*, including, but not limited to, any tests or services administered or rendered, any reports of abuse or neglect or any action taken or

contemplated on behalf of involving in any way the [41 identified individuals]." (Emphasis added).

(5)    The School Group: Subpoenas 97 through 103 are directed to seven area school departments, requesting *"[a]ny and all information of any nature whatsoever*, including, but not limited to, attendance records, report cards, testing and test scores, disciplinary actions, guidance counselor records, medical records, reports of abuse or neglect or any action taken or contemplated on behalf of or involving in any way the [41 identified individuals]." (Emphasis added).

(6)    The Emergency Services Group: Subpoenas 104 through 105 are directed to D.C. fire and emergency medical service departments and care centers, requesting *"any and all information of any nature whatsoever* related to *any and all proceedings of any nature whatsoever* involving [the 41 identified individuals]." (Emphasis added).

(7)    The Medical Examiner Group: Subpoena 106 is directed to the D.C. medical examiner's office, requesting *"[a]ny and all records* pertaining to the autopsies of [six (6) named individuals]." (Emphasis added).

(8)    The Probations Group: Subpoenas 107 and 108 are directed to D.C. pretrial and probation agencies, requesting *"[a]ny and all information of any nature whatsoever*, including *related to any and all cases, proceedings or investigations of any nature whatsoever* involving [the 41 identified individuals]." (Emphasis added).

(9)    The Housing Authority Group: Subpoena 109 is directed to the D.C. Housing Authority, requesting *"[a]ny and all information of any nature whatsoever*, including related to *any and all contacts* between the D.C. housing Authority and claims filed or *proceedings of any nature whatsoever* involving [the 41 identified individuals]." (Emphasis added).

(10)    The Employment Office Group: Subpoenas 110 through 112 are directed to Virginia, Maryland and D.C. employment offices, requesting *"[a]ny and all information of any nature whatsoever related to any and all claims filed or proceedings of any nature whatsoever involving [the 41 identified individuals]."* (Emphasis added).

(11)    The IRS Group: Finally, subpoenas 113 and 114 are directed to IRS disclosure offices in Greensboro, North Carolina and Baltimore, Maryland, requesting "tax returns filed by the [41 identified individuals]."

As this summary reflects, defendant's Rule 17 request seeks issuance of 114 subpoenas, directed to 114 federal, state, local, and private agencies, seeking *any and all documents* pertaining to 41 individuals, many of whom are listed only because they *might conceivably* turn out to be government witnesses. By any measure this subpoena request is breathtakingly broad in scope and markedly lacking in specificity of the documents sought. Exacerbating the excessive breadth and lack of specificity of these requests is that, beyond mere conclusory assertions of potential relevance, defendant provides no sound or persuasive reasons for the requested subpoenas. Indeed, in many instances there is no reason to believe that these agencies ever had any contact with many of the 41 individuals.

Defendant's request is, manifestly, a fishing expedition. He has cast the broadest net his imaginative counsel can conceive of in the hope of capturing some unspecified useful or relevant "fish," or at least to ensure against future criticism that they were not thorough. Thus, defendant's request for 114 subpoenas is fairly characterized as an indiscriminate, blunderbuss filing; rather than taking aim at specific targets and seeking specific documents of demonstrable relevance, defendant has fired in the general vicinity of over 4500 targets, in the hope of hitting at least one. The question thus presented is whether Rule 17 countenances such a request.

7

## III.

Analysis of this question properly begins with Rule 17(c), Fed. R. Crim. P., which governs the issuance of subpoenas for the production of documents and objects, and provides that a court may direct a witness to produce any books, papers, documents, data, or other objects the subpoena designates before trial or before they are to be offered in evidence.[2]  Rule 17(c), Fed. R. Crim. P.  The Rule also provides that "unreasonable or oppressive" subpoena requests must be quashed.  *See Bowman Dairy Co. v. United States*, 341 U.S. 214, 220-21 (1951).  Importantly, the Supreme Court long ago emphasized that Rule 17 subpoena requests must be scrutinized to ensure that they do not run afoul of the well-settled principle that Rule 17 was not intended to provide a means of discovery in criminal cases.  *See id.*  Thus, subpoenas or requests that are "merely a fishing expedition to see what [might] turn up" must be quashed.  *Id.*

More recently, the Supreme Court reaffirmed the principle that Rule 17(c) "was not intended to provide a means of discovery for criminal cases." *United States v. Nixon*, 418 U.S. 683, 698 (1974); *see also United States v. Fowler*, 932 F.2d 306, 311 (4th Cir. 1991) ("Rule 17(c) . . . is not a discovery device").  In other words, "Rule 17(c) does not confer a fishing license upon litigants in criminal cases." *United States v. King*, 194 F.R.D. 569, 573 n.3 (E.D. Va. 2000).  Rather, Rule 17 was intended to allow each side in a criminal trial to have "compulsory process to secure evidence in his favor." *In Re Martin Marietta Corporation*, 856

---

[2]Rule 17 states:
(c) Producing Documents and Objects.
(1) In General. A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

F.2d 619, 621 (4th Cir. 1988). To this end, *Nixon* establishes that the party requesting a trial subpoena must "clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity." *Nixon,* 418 U.S. at 700.[3]

The Supreme Court adopted the specificity requirement "to ensure that the use of trial subpoenas is limited to *securing the presence at trial of particular documents or sharply defined categories of documents*" and thus, prevent fishing expeditions. *United States v. Crosland,* 821 F. Supp. 1123, 1129 (E.D. Va. 1993) (emphasis added); *see also United States v. Modi,* No. 1:01CR00050, 2002 U.S. Dist. LEXIS 1965, at * 8 (W.D. Va. 2002) (rejecting subpoena as a "fishing expedition" where party was not seeking a particular document or a specific set of materials that they know exists). Indeed, absent the specificity requirement, Rule 17(c) could be utilized for the type of discovery-oriented document requests decried as "fishing expeditions," and expressly prohibited by the Supreme Court. *See Bowman,* 341 U.S. at 221.

Nor is there any unfairness in requiring the movant to provide some specificity in advance of reviewing the requested documents precisely because Rule 17 is not a discovery device. *See Modi,* 2002 U.S. Dist. LEXIS 1965, at *8-9; *Crosland,* 821 F. Supp. at 1129 (denying government subpoena as non-specific where government sought to obtain information it could not obtain during discovery). As one court cogently put it, "[b]ecause the defendant cannot

---

[3]The Supreme Court's three-part test is derived from Judge Weinfeld's formulation in *United States v. Iozia,* 13 F.R.D. 335, 338 (S.D.N.Y. 1952). In *Iozia,* Judge Weinfeld explained that to show that a subpoena is not "unreasonable or oppressive," under *Bowman,* the moving party must show: "(1) that the requested documents are evidentiary an d relevant; (2) that the documents are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) that the moving party cannot properly prepare for trial without production and inspection of the requested documents in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and not as a 'general fishing expedition.'" *Id.*

justify his request with any specificity as to the contents and purposes of the records sought . . . defendant is engaging in a 'fishing expedition,' which cannot support the issuance of a Rule 17(c) subpoena duces tecum." *United States v. Clark*, No. 1:00CR00094, 2001 U.S. Dist. LEXIS 9650, at *5 (W.D. Va. 2001).

Defendant's request not only lacks specificity, but also falls short of demonstrating the requisite relevance for many requested subpoenas. On this issue, defendant's counsel does no more than state that the requested subpoenas seek documentation that "bears *potential significance*" to defendant's case. Yet, this amounts to no more than "the 'mere hope' of discovering favorable evidence [which] is insufficient to support issuance of a subpoena duces tecum." *Id.*; *Modi*, 2002 U.S. Dist. LEXIS 1965, at * 8. The mere hope that a broadly-cast net will scoop up some piece of useful information is the hallmark of a discovery-type fishing expedition, not a Rule 17(c) subpoena. In sum, where defendant engages in a fishing expedition and "there is no way to determine whether the requested documents would *in fact* produce evidence related to the pending charges, the trial subpoena in question must be quashed as insufficiently specific." *Crosland*, 821 F. Supp. at 1129.

To guard against such fishing expeditions, *Bowman* emphasized the importance of judicial scrutiny of subpoena requests. *Bowman*, 341 U.S. at 220. Accordingly, in reviewing a request under Rule 17(c), "the decision whether to require production of the requested documents pre-trial rests ultimately within the sound discretion of the district court." *United States v. Beckford*, 964 F. Supp. 1010, 1022 (E.D. Va. 1997). And, in undertaking such a review, "the court is obligated to ensure that the procedure is not abused through use of overbroad or impermissive subpoenas." *Modi,* 2002 U.S. Dist. LEXIS 1965, at * 4. To that end, district courts must exercise their discretion mindful of their "responsibility to prevent Rule 17(c) from being

10

improperly used as a discovery alternative to Rule 16." *Beckford*, 964 F. Supp. at 1022.

These settled principles applied here compel the conclusion that the vast majority of defendant's subpoenas must be rejected as fishing expeditions. Specifically, the following subpoena groups or individual subpoenas are denied:

(i)     The Corrections Group;

(ii)    The Law Enforcement Agency Group, Subpoenas 32, 47, and 48;

(iii)   The Law Enforcement Agency Group, Subpoenas 23 through 31 and 33 through 46, with respect to Individuals 2 through 41;

(iv)    The Court Group Subpoenas 51 through 81;

(v)     The Court Group Subpoenas 49 and 50, with respect to Individuals 2 through 41;

(vi)    The Probations Group Subpoena 108, with respect to Individuals 2 through 41;

(vii)   The Social Services Group;

(viii)  The School Group;

(ix)    The Emergency Services Group;

(x)     The Probations Group Subpoena 107;

(xi)    The Housing Authority Group; and

(xii)   The Employment Office Group.

A few examples suffice to underscore that this result is compelled. First, with respect to defendant's grandfather, defendant seeks from a variety of state and federal courts in this area, the D.C. Summer Youth Program, and the D.C. Department of Youth Rehabilitation Services, "any and all" information related to "any" proceeding involving defendant's grandfather. Wholly absent from defendant's motion is any basis for concluding that defendant's grandfather was ever involved in any such proceedings or that any such proceedings have any relevance to the case at

11

bar. The excessive breadth, lack of specificity, and absence of any showing of relevance, underscores the fishing expedition nature of defendant's subpoena requests. Equally illustrative is defendant's request for "any and all" information related to "any and all" proceedings conducted by the D.C. Department of Parks and Recreation involving defendant's girlfriend. Again, wholly absent from defendant's motion is any indication that defendant's girlfriend was involved in any proceeding conducted by the D.C. Department of Parks and Recreation, nor is there any showing of the relevance of those proceedings to the case at bar. Yet another example that confirms the fishing expedition nature of defendant's request is that, with respect to 18 individuals that defendant notes *"could be"* government informant witnesses, defendant seeks any and all information related to any contracts they may have had with the D.C. Housing Authority, without providing any indication that any of these 18 individuals had any involvement with the D.C. Housing Authority or any indication that any such involvement is relevant to the case at bar. Even assuming that these 18 individuals might conceivably be government informant witnesses, this example further demonstrates the excessive breadth and lack of specificity of defendant's request.[4] It is pellucidly clear that defendant is engaged in an impermissible fishing expedition where, as here, plaintiff has failed to request specific documents or categories of documents, has failed to demonstrate the relevance of many categories of documents sought, and has not shown

---

[4]It is interesting to contrast the lack of specificity in this case with the specificity held to be adequate by the Supreme Court in *Nixon*. There, unlike here, the Supreme Court noted that:

> with respect to many of tapes, the Special Prosecutor offered the sworn testimony or statements of one or more of the participants in the conversations as to what was said at the time. As for the remainder of the tapes, the identity of the participants and the time and place of the conversations, taken in their total context, permit a rational inference that at least part of the conversations relate to the offenses charged in the indictment.

*Nixon*, 418 U.S. at 700.

12

that the requested documents are not otherwise procurable reasonably in advance of trial by the exercise of due diligence.[5]

In large part then, defendant's request must be denied as a blunderbuss, fishing expedition. Only the following groups of subpoenas pass muster under *Nixon*:

(i)     The Medical Examiner Group;

(ii)    The Law Enforcement Agency Group Subpoenas 23 through 31 and 33 through 46, with respect to defendant;

(iii)   The Court Group Subpoenas 49 through 50, with respect to defendant; and

(iv)    The Probations Group Subpoena 108, with respect to defendant.

It should be noted that, with respect to the Medical Examiner Group, the requested documents are adequately specified, and while there is some question as to whether *all* of the documents requested will be relevant and admissible under *Nixon*, it is reasonable to assume that they may be, given that the requested subpoenas relate to victims named in the Notice of Intent to Seek a Sentence of Death. Furthermore, with respect to the remaining subpoenas, while it remains doubtful whether all of the requested documents are relevant and admissible, these requests, reviewed charitably, will be granted more as a matter of grace than as a matter of right.

---

[5]Notably, despite defendant receiving Court authorization to retain a private investigative firm for approximately 300 hours, wholly absent from defendant's request is any indication that the requested documents cannot be obtained through his own efforts by the exercise of due diligence.

For purposes of organization and clarity, these rulings are set out in tabular form.

| Subpoena Group | Granted | Denied |
|---|---|---|
| Corrections Office Group | | Subpoenas 1 through 22 |
| Law Enforcement Agency Group | Subpoenas 23-31 and 33-46, with respect to defendant | Subpoenas 32, 47, and 48 in whole<br>Subpoenas 23-31 and 33-46, with respect to Individuals 2-41 |
| Court Group | Subpoenas 49-50, with respect to defendant | Subpoenas 51-81 in whole<br>Subpoenas 49-50, with respect to Individuals 2-41 |
| Social Services Group | | Subpoenas 82 through 96 |
| School Group | | Subpoenas 97-103 |
| Emergency Services Group | | Subpoenas 104-105 |
| Medical Examiner Group | Subpoena 106 | |
| Probations Group | Subpoena 108, with respect to defendant | Subpoena 107 in whole<br>Subpoena 108, with respect to Individuals 2-41 |
| Housing Authority Group | | Subpoena 109 |
| Employment Office Group | | Subpoenas 110-112 |
| IRS Group | | Subpoenas 113-114 |

An appropriate Order will issue.

The Clerk is directed to send a copy of this Order only to counsel for defendant.

Alexandria, Virginia
November 22, 2006

T. S. Ellis, III
United States District Judge

14