# EXHIBIT 7

13⁴

FILED

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

2007 JAN 12 P 3: 45

Alexandria Division

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

UNITED STATES OF AMERICA )
)
v. )  No. 1:05cr264
)
THOMAS MOROCCO HAGER )  Judge Ellis

## MOTION OF THE UNITED STATES
## TO QUASH SUBPOENAS AND OTHER RELIEF

The United States of America, through its attorney, Chuck Rosenberg, the United States

Attorney for the Eastern District of Virginia, and James L. Trump and Steven D. Mellin, Assistant

United States Attorneys, respectfully moves to quash the subpoenas *duces tecum* issued December

22, 2006, to the Federal Bureau of Investigation (FBI) and the Fairfax County Police Department

(FCPD) and for other relief as discussed below.[1]

## I.    MOTION TO QUASH FBI AND FCPD SUBPOENAS

The FBI and FCPD conducted the investigation that resulted in the indictment of the

defendant. During this investigation, which spanned over 13 years, the FBI and FCPD generated a

large number of investigative reports and other documents. They also collected documents from

other sources, including other law enforcement agencies. The subpoenas *decus tecum* at issue here

---

[1] On January 9, 2007, the United States moved to stay production of records pursuant to all of the trial subpoenas issued December 22, 2006, pending a subsequent hearing. At that time, the United States was not aware that FCPD had also received a Rule 17(c) subpoena. By order entered January 9, 2007, the Court denied the government's motion, stating that the subpoenas issued "have already passed muster under [*United States v.*] *Nixon*," 418 U.S. 683 (1974). This motion to quash thus also seeks reconsideration of that order.

commands the FBI and FCPD to produce "any and all information of any nature whatsoever related to any and all investigations of any nature whatsoever . . . pertaining to or involving . . . Thomas Morocco Hager . . . ."[2] It is difficult to imagine more broadly worded subpoenas.

Given the FBI's and FCPD's role in this case, compliance with these two subpoenas would require the government to produce practically all of its investigative files, including, for example, documents revealing the identity of witnesses and prospective witnesses, interview notes, internal memoranda, and debriefing reports, without regard to whether the information sought is relevant or admissible at trial and despite previous rulings by this Court that the defendant is not entitled to much of this same information. Indeed, the issuance of these trial subpoenas makes a mockery of the discovery process; ignores the procedures and requirements of Fed.R.Crim.P. 16, Fed.R.Crim.P. 26.2, *Jencks*, *Brady*, and *Giglio*; reverses the prior discovery rulings by this Court; and renders meaningless the discovery order entered November 9, 2006, and negotiated in good faith by the government. Those rulings and the discovery order previously entered followed motions by the defendant for the very same information sought by the Rule 17(c) subpoenas – the entire investigative files of the FBI and FCPD – and a decision by this Court that the defendant was not entitled to this information.[3] The end result is a discovery process governed by Rule 17(c)

---

[2] After commanding the production of "[a]ny and all information of any nature whatsoever relating to any and all investigations of any nature whatsoever . . . pertaining to or involving" the defendant, each of the Rule 17(c) subpoenas at issue here then provides "including, but not limited to . . . ." What follows is a verbatim recitation of aggravating factors from the government's death notice. Given the "including, but not limited to" language of the subpoenas, the recitation of these factors does not limit their scope.

[3] The defendants, for example, had asked for interview reports pertaining to individuals who would not be called as witnesses; for disclosure of confidential informants; for disclosure of impeachment information against witnesses not called by the government; for interview notes; for bills of particulars; for statements to be attributed to the defendant; for un-redacted discovery as to

subpoenas, which is squarely opposite the holdings of countless of cases that a Rule 17(c) subpoena does not provide a means of discovery for criminal cases. *See, e.g., United States v. Nixon*, 418 U.S. 683, 698 (1974); *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d 1980)("Courts must be careful that rule 17(c) is not turned into a broad discovery device."); *United States v. Caro*, 2006 WL 3358649 (W.D.Va. 2006)("[U]se of a Rule 17 subpoena duces tecum cannot substitute for limited discovery otherwise permitted in a criminal case and the hope of obtaining favorable evidence does not justify the issuance of such a subpoena.")[4]; *United States v. Fletcher*, – F.Supp.2d – , 2006 WL 3250837 (D.Ariz. 2006)("Subpoenas issued pursuant to Rule 17(c) are not discovery devices and may not be used to expand the scope of Rule 16."); *United States v. Fowler*, 932 F.2d 306, 311 (4th Cir. 1991)("Rule 17(c) . . . is not a discovery device.").

As the subpoenas were requested *ex parte* and under seal, the government obviously does not know what representations were made to the Court justifying the issuance of the FBI, FCPD or other Rule 17(c) subpoenas.[5] Yet, given the nature of the subpoenas, the United States cannot fathom how

---

aggravating factors, and for the identity of witnesses. If the subpoenaed information were turned over to the defendant, he would obtain this information despite the prior rulings of this Court denying those motions and the entry of an agreed upon discovery order – endorsed by defense counsel – spelling out the respective obligations of the parties regarding discovery in both the guilt and penalty phases of this case.

[4] *Caro* is a capital prosecution.

[5] The United States recognizes that there may be exceptional circumstances which justify the issuance of Rule 17(c) subpoenas based on *ex parte* motions. For example, disclosure to the government of a pre-trial subpoena requested by the defense might divulge trial strategy, the identity of a witness, or perhaps attorney work product such that *an ex parte* procedure is appropriate. *See, e.g., United States v. Daniels*, 95 F. Supp.2d 1160, 1163 (D.Kan. 2000). Here, however, a subpoena directed essentially to the government demanding production of any and all records concerning the defendant could hardly reveal anything confidential about the defendant or his trial strategy. As indicated in *United States v. Beckford*, 964 F.Supp. 1010, 1030 (E.D.Va.1997), *ex parte* procedures ordinarily are unnecessary and inappropriate. Judge Payne wrote: "For example, where one party

they meet the relevancy; admissibility; and specificity requirements of *Nixon*. The very language

of the subpoenas ("any and all information of any nature whatsoever"pertaining to the defendant)

certainly indicates that the subpoenas lack even a veneer of specificity and are precisely the

generalized fishing expeditions expressly prohibited by the courts. Requesting entire files instead

of specific documents indicates a fishing expedition. *United States v. Ruedlinger*, 172 F.R.D. 453,

456 (D.Kan. 1997)(granting government's motion to quash Rule 17(c) subpoena for any and all IRS

reports pertaining to defendant's business);*United States v. Modi*, 2002 WL 188327, *2 (W.D.Va.

2002)(denying Rule 17(c) subpoenas for "any and all documents, records, correspondence, emails

and data")[6]; *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984)(affirming district court's

quashing of subpoena for all records of arson investigation); *United States v. Morris*, 287 F.3d 985,

981 (10th Cir. 2002)(holding that requests for an entire file are evidence of an impermissible fishing

expedition and affirming district court's quashing of subpoena for all records of FBI investigation

for lack of specificity); *United States v. Noriega*, 764 F. Supp 1480, 1493 (S.D. Fla. 1991)(holding

that a prosecution trial subpoena for all recordings of the defendant's jailhouse telephone calls

---

subpoenas documents from the files of the opposing party, *ex parte* procedures would not be available. The same would obtain for defense subpoenas seeking documents from state law enforcement agencies officially involved in the federal investigation of the crimes on trial." 964 F. Supp. at 1030. That is precisely the situation in this case.

[6] The district judge in *Modi* reasoned that the broad nature of the requested subpoenas led to the conclusion that the defendants were using Rule 17 improperly as a discovery device: "It is clear that the defendants in this case are engaging in the type of fishing expedition that is prohibited in criminal cases. They are not seeking a particular document or specific set of materials that they know exists. Rather, they request 'any and all documents, records, correspondence, emails and data' relating to a series of broad subjects, with the hope of uncovering something useful to their defense .... However, the 'mere hope' of discovering favorable evidence is insufficient to support issuance of a subpoena duces tecum" (footnote omitted).

-4-

improper, as government did not know what was on the tapes)[7]; *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002)(affirming district court's denial of broadly worded subpoenas for all prison records because the information sought was nothing but a fishing expedition).[8]  Moreover, the specificity requirement of *Nixon* cannot be satisfied by simply naming the document or class of documents sought.  The moving party must specify why the materials are wanted, what information is contained in the documents, and why those documents would be relevant and admissible at trial. *See United States v. Arditti*, 955 F.2d 331, 345-46 (5th Cir. 1992); *United States v. Jackson*, 155 F.R.D. 664, 668 (D.Kan. 1994)("Conjecture and speculation will not provide the lift to carry a movant over the three hurdles."); *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996)("[A] Rule 17 subpoena cannot properly be issued upon a 'mere hope.'"); *United States v. Anderson*, 31 F.Supp.2d 933, 944-45 (D.Kan. 1998).  Given that, in at least two instances, the defendant obtained

---

[7] The district judge stated: "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused . . . .  The subpoena thus constituted a broad dragnet aimed at bringing in anything and everything contained in the recordings regardless of their identifiable or foreseeable significance to the charges at issue.  This is precisely the kind of unwarranted expedition which Rule 17(c) does not permit."  764 F.Supp. at 1493.

[8] On appeal, the defendants in *Tokash* (who were charged with possessing weapons in a federal prison) argued that the district court's denial of their Rule 17(c) subpoenas created a chicken or egg dilemma, *i.e.*, that they first needed to review all of the BOP records in order to make out their defense at trial.  In rejecting their argument, the court of appeals stated: "But Rule 17(c) is not a discovery device to allow criminal defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge. Instead, it allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial.  282 F.3d at 971, *citing Nixon*, 418 U.S. at 700, and *United States v. Ashman*, 979 F.2d 469, 495 (7th Cir. 1992).

subpoenas for documents that did not exist,[9] it is a fair assumption that the defendant relied on "conjecture and speculation" in obtaining the Court's authorization to issue the Rule 17(c) subpoenas to the FBI and FCPD.

The government similarly does not believe that the defendant can show that the subpoenas to the FBI and FCPD would result in evidence admissible at trial. The files of these agencies obviously contain documents relating to the defendant. The documents themselves (*e.g.*, interview reports, agents notes, police reports, and the like), however, generally would not be admissible. They most likely would be out of court statements and subject to hearsay and other objections. And even if the documents were to contain impeachment type information, that does not necessitate the issuance of a Rule 17(c) subpoena. The need for evidence to impeach witnesses is insufficient to require its production in advance of trial under Rule 17(c). *Nixon*, 418 U.S. at 701; *United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000); *United States v. Clark*, 2001 WL 759895, *2 (W.D.Va. 2001); *United States v. Dale*, 155 F.R.D. 149, 152 (S.D.Miss. 1994).[10]

---

[9] As discussed below, subpoenas were issued to Manassas City Police and ATF, but these agencies had no records pertaining to the defendant.

[10] Admissibility of the documents sought is a requirement of Rule 17(c). *United States v. Cherry*, 876 F.Supp. 547, 552-53 (S.D.N.Y.): "Rule 17(c) may be used to obtain only evidentiary materials. '[A]ny document or other materials, *admissible as evidence*, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena.' *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221, 71 S.Ct. 675, 679, 95 L.Ed. 879 (1951) (emphasis added). The weight of authority holds that in order to be procurable by means of a Rule 17(c) subpoena, materials must themselves be admissible evidence. *See United States v. Murray*, 297 F.2d 812, 821 (2d Cir.1962) (Rule 17(c) is a device solely for the obtaining of evidence for the use of the moving party, permitting him to examine the material obtained before trial only where it is necessary that he do so in order to make use of the material as evidence.), *cert. denied*, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962); *United States v. Reed*, 726 F.2d 570, 577 (9th Cir.1984) (court properly quashed subpoena seeking production of documents which would not have been admissible under the limitations of Federal Rules of Evidence 803(8)(B)); *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir.1981) (materials which were hearsay on their face and therefore not admissible as

Finally, even if the requested files contained arguably relevant and admissible evidence, the subpoenas nevertheless should be quashed because the subpoenas conflict with established discovery rules and procedures and the law of the case as established by this Court's prior rulings. As noted, Rule 17(c) cannot be used to obtain what would otherwise be denied under Rule 16 and other authorities, and the courts uniformly have rejected attempts at procuring additional or advance discovery through the use of Rule 17(c) subpoenas. Thus, to the extent that the subpoenas call for Rule 16 materials, the defendant will otherwise obtain (or has already obtained) that evidence as required by this Court's discovery order, and a Rule 17(c) subpoena to obtain discovery of that evidence is unnecessary.[11]   But, Rule 16 specifically prohibits the defendant from obtaining discovery or inspection of the investigatory files of the prosecution or its investigative agencies – information which is included within the scope of the Rule 17(c) subpoenas to the FBI and FCPD.

---

evidence at trial were not subject to Rule 17(c) subpoena), *cert. denied*, 454 U.S. 1056, 102 S.Ct. 604, 70 L.Ed.2d 594 (1981); *United States v. Rich*, No. 83 Cr. 579 (SWK), 1984 WL 845, at *3 (September 7, 1984) (Rule 17(c) requires a showing that the materials sought are currently admissible in evidence; it cannot be used as a device to gain understanding or explanation.); *United States v. Scarfo*, 711 F.Supp. 1315 (E.D.Pa.1989) (holding that court did not err in implicitly quashing Rule 17(c) subpoenas seeking documents which would not have been admitted into evidence), *aff'd* 910 F.2d 1084 (3d Cir.1990); *United States v. Vanegas*, 112 F.R.D. 235, 238 (D.N.J.1986) (handwriting exemplars were evidentiary materials the government could use at trial and therefore subject to subpoena under Rule 17(c)); *United States v. Walters*, 558 F.Supp. 726, 728 (D.Md.1980) (Rule 17(c) may be used only to obtain materials which may be used in evidence at trial); *United States v. Maloney*, 37 F.R.D. 441, 445 (W.D.Pa.1965) (A rule 17(c) subpoena applies only to evidentiary material admissible in evidence at trial; [t]his would exclude reports and memoranda of investigating officers, which have no evidentiary value, unless the officer is called as a witness, when they may become evidentiary for the purpose of impeachment.)."

[11] Once the defendant learns of evidence pursuant to Rule 16, the defendant could, of course, subpoena that evidence for trial pursuant to Rule 17 in the event the government was not seeking to introduce the evidence as part of its case.

*See* Fed.R.Crim.P. 16(a)(2).[12] Rule 17(c) subpoenas are not discovery devices and cannot be used to expand the scope of Rule 16. *United States v. Fletcher*, – F.Supp.2d – , 2006 WL 3250837, *1 (D.Az. 2006), *citing United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981), and *United States v. Murry*, 297 F.2d 812, 821 (2d Cir. 1962).[13]  Similarly, to the extent the Rule 17(c) subpoenas attempt to reach *Brady*, *Giglio*, or *Jencks* material, the subpoenas are improper and should be denied.  Those materials are subject only to limited discovery pursuant to *Brady*, *Giglio* and *Jencks*. Thus, none of that material can be said to be "not otherwise procurable reasonably in advance of trial." *Nixon*, 418 U.S. at 699; *Beckford*, 964 F.Supp. at 1031-32.[14] Likewise, pursuant to the parties' agreed upon discovery procedures and this Court's previous rulings, the government must produce all *Giglio* and *Jencks* not later than ten business days prior to trial, and a Rule 17(c) subpoena is unnecessary to obtain this information.[15] Moreover, Rule 17 itself prohibits procuring *Jencks* material through the use of a Rule 17(c) subpoena. Rule 17(h) states:

> (h) Information Not Subject to Subpoena. Statements made by witnesses or prospective witnesses may not be subpoenaed from the government or the defendant under this rule, but shall be subject to production only in accordance with the provisions of Rule 26.2.

---

[12]  This would include any state agencies (such as FCPD) regardless of whether the reports were generated as part of an independent investigation or during the course of a joint federal operation. *United States v. Cherry*, 876 F.Supp. at 551.

[13]  The prohibitions of Rule 16(a)(2) obviously would be meaningless if the same materials were obtainable through Rule 17(c).

[14]  *Beckford* was a capital prosecution as well.

[15]  As indicated by the government during the hearings on the defendant's discovery motions, particularly the defendant's attempt to obtain early disclosure of *Jencks* materials and the identity of witnesses, the United States has already made considerable disclosure of such information. For example, the United States provided early disclosure of *Jencks* information as it relates to the allegations in the death notice but has redacted the names of the witnesses from those materials.

Fed.R.Crim.P. 17(h). Rule 26.2, in turn, follows the restrictions set forth in the Jencks Act.

In sum, the United States submits that the trial subpoenas directed at the FBI and FCPD should be quashed. The subpoenas constitute an inappropriate means of discovery; they cannot meet the requirements of *Nixon*; and they render meaningless the good faith efforts of the government to meet its discovery obligations as well as its equally important efforts to protect its witnesses from harassment and danger and preserve the confidentiality of its investigative files..

## II.    MOTION TO QUASH DEA SUBPOENA

Rule 17(c) subpoenas were also served on DEA, ATF and the City of Manassas Police Department.[16] ATF and the City of Manassas have informed counsel for the government that they have no responsive documents. As such, any issues as to those two subpoenas are moot. The mere fact, however, that subpoenas were issued to agencies with no records is further proof that the subpoenas were improper fishing expeditions.[17] As to the DEA subpoena, counsel for the government does not know whether any responsive documents exist, as DEA was not actively involved in the investigation that gave rise to the indictment in this case. But, for the same reasons stated above with regard to the FBI and FCPD, the Rule 17(c) subpoena to DEA should also be quashed.

---

[16] These subpoenas were nearly identical to those served on the FBI and FCPD.

[17] Because these agencies had no documents regarding the defendant, it is apparent that the defendant did not know, prior to requesting the Rule 17(c) subpoenas, whether any such documents existed. That the requesting party does not know whether responsive documents exist "points persuasively to the conclusion that this trial subpoena is an impermissible 'fishing expedition,' not a proper request for production of specifically identified documents." *United States v. Crosland*, 821 F. Supp. 1123, 1129 (E.D.Va. 1993)(quashing subpoena sought by prosecution for attorney fee records where government did not know who paid attorney fees).

The defendant also served the Court Services and Offender Supervision Agency for the District of Columbia (CSOSA, the Washington, D.C. pretrial services, probation and parole office) with a Rule 17(c) subpoena. The United States does not object to that subpoena except to the extent that agency has in its files investigative reports of law enforcement agencies or grand jury materials. CSOSA has copied those documents, and the United States is in the process of reviewing them to determine whether to object to the production of any law enforcement or grand jury materials that may be contained within these records.

## III.    EX PARTE PROCEDURES

As discussed at footnote 5, above, the United States understands that *ex parte* procedures may, at times, be appropriate when requesting Rule 17(c) subpoenas returnable in advance of trial. Given the broad and sweeping nature of the contested subpoenas, however, the government submits that there is no need for secrecy in this instance. The defendant is seeking information from the government. The defendant should be required to reveal why he needs the requested information and, in particular, why the agreed upon discovery procedures are not adequate in procuring that information. The government, therefore, moves to unseal the motion(s) filed by the defendant requesting the Rule 17(c) subpoenas. The government also requests that it be provided with a list of the agencies or other entities to whom such subpoenas were issued. An open process could, perhaps, expedite resolution of this matter if the United States were made aware specifically of what the defendant wanted from its files or the files of its investigative agencies.

## IV.    TOUHY REGULATIONS

The Department of Justice agencies (FBI, ATF and DEA) to whom the Rule 17(c) subpoenas have been directed have not been accorded an opportunity to review these requests because the requesting party, *i.e.* defense counsel, has not complied with the applicable *Touhy* regulations.[18] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1952).  DOJ regulations require a party, or the attorney for a party, seeking information by subpoena to take certain steps prior to issuing a subpoena for the information.  The attorney must provide DOJ (or the AUSA handling the case) an affidavit or other statement setting forth a summary of the information sought so that DOJ can determine whether to authorize disclosure or production of the information sought. *See* 28 C.F.R. § 16.23.  The agencies then must make a determination whether to disclose the material, and, if DOJ does not agree to produce the information subject to the subpoena, the Court will rule on the request and the agencies' objections. *See United States v. Moussaoui*, 2002 WL 1987909, *1 (E.D. Va. 2002). These procedures are necessary so that the affected agencies are given an opportunity to assert objections to the requests on the grounds that the information sought is subject to a law enforcement/investigatory privilege and/or improperly reveals confidential sources and methods. Indeed, the agencies are generally required to decline informal requests for information that seek to disclose confidential source or informant identities or information that reveals investigatory records compiled for law enforcement purposes. *See* 28 CFR § 16.26(b)(5)-(6).  The United States submits that the Court should require that these procedures in this instance.

---

[18] There may be others, but these are the agencies counsel for the government knows have be issued subpoenas.

## CONCLUSION

The United States respectfully requests that the Court quash the Rule 17(c) subpoenas issued December 22, 2006, to the FBI, FCPD and DEA; that the Court reconsider its order denying the government's January 9, 2007 motion and stay compliance with all of the Rule 17(c) subpoenas issued at the request of the defendant; that the Court unseal the motion(s) filed by the defendant for issuance of the Rule 17(c) subpoenas; and that the Court order the defendant to comply with the applicable *Touhy* regulations.

Respectfully submitted,

CHUCK ROSENBERG
UNITED STATES ATTORNEY

By: _____
James L. Trump
Steven D. Mellin
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of January, 2007, a copy of the foregoing motion was sent by mail, postage prepaid, and by fax to:

Joseph J. McCarthy
510 King Street, Suite 400
Alexandria, Virginia 22314

John C. Kiyonaga
526 King Street, Suite 213
Alexandria, Virginia 22314

James L. Trump
Steven D. Mellin
Assistant United States Attorneys

-13-